John P. Melko
713-276-5727 (*direct dial*)
713-276-6727 (*direct fax*)
jmelko@gardere.com
Michael K. Riordan
713-276-5178 *(direct dial)*
713-276-6178 *(direct fax)*
mriordan@gardere.com
**GARDERE WYNNE SEWELL LLP**
1000 Louisiana, Suite 2000
Houston, Texas 77002-5011

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GMI USA MANAGEMENT, INC., *et al*[1] | § | Case No. 15-12552 |
| | § | |
| Debtors, | § | Jointly Administered |
| | § | |

### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ISSUANCE OF AN ORDER TO SHOW CAUSE

GMI USA Management, Inc., Global Maritime Investments Holdings Cyprus Limited, Global Maritime Investments Vessel Holdings Pte. Limited, Global Maritime Investments Cyprus Limited, and Global Maritime Investments Resources (Singapore) Pte. Limited (collectively, the "**Debtors**" and each a "**Debtor**"), file this *Application for an Order to Show Cause and Temporary Restraining Order* supported by the *Declaration of Thomas Oliphant* and the *Affidavit of John P. Melko*. In support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors in these Chapter 11 cases consists of GMI USA Management, Inc., Global Maritime Investments Holdings Cyprus Limited, Global Maritime Investments Vessel Holdings Pte. Limited, Global Maritime Investments Cyprus Limited and Global Maritime Investments Resources (Singapore) Pte. Limited (the "**Debtors**").

## JURISDICTION

This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## BACKGROUND

### A. General Case Background

1. On September 15, 2015 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York, Manhattan Division (the "**Court**").

2. The Debtors continue to operate and to manage their businesses as "debtors in possession" pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases (the "Chapter 11 Cases") pursuant to § 1104 of the Bankruptcy Code. No official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

### B. Factual Background

1. The following statements of fact are supported by the *Declaration of Thomas Oliphant* and the *Affidavit of John P. Melko* made in support of this Application and Debtors' *Motion to Enforce the Automatic Stay Pursuant to 11 U.S.C. §362*.

2. Debtor Global Maritime Investments Cyprus Limited ("**GMIC**") is the long-term charterer of *M/V* Jia Foison (the "**Vessel**").  The Vessel's owner is Jia Foison Shipping Co., Ltd (the "**Owner**"), with whom GMIC usually communicates through the manager of the Vessel, HTM Shipping Co., Ltd. (the "**Manager**").  GMIC has sub-chartered the Vessel to Caravel

Shipping Limited or one or more affiliates thereof (the "**Sub-Charterer**").  Under the Sub-Charter, the Sub-Charterer is indebted to GMIC for, among other things, charter hire.  On information and belief, the Sub-Charterer has further sub-chartered the Vessel to and an as yet unidentified third-party (who is assumed to be, and is referred to herein, as the "**Ultimate Charterer**").

3. The Vessel was docked in the Port of Rouen, France where it picked up cargo for transport.  The Vessel is now proceeding to a second load port, La Pallice, France.

4. Late afternoon on Monday, September 21, 2015, proposed counsel for the debtors ("**Proposed Counsel**") learned that a counterparty to a swap agreement unrelated to the Vessel had caused the Vessel to be arrested in the Port.  By email dated Tuesday, September 22, 2015, domestic counsel for the Sub-Charterer informed Proposed Counsel that the Owner and Manager were interfering with the carriage of cargo to the Vessel by ordering the Vessel's captain not to sign bills of lading for the cargo on behalf of the chartering parties.  Counsel's email also informed Proposed Counsel that the Manager, on behalf of the Owner, is claiming that it has a lien on sub-charter hire funds that are properly payable to GMIC, as well as on freight carried by the Vessel.  In connection with these alleged liens, the Manager and Owner have demanded that the Sub-Charterer and, it is assumed, the Ultimate Charterer, remit any amounts properly payable to GMIC to the Manager and Owner instead.  On information and belief, the majority of the obligations for which the Owner and Manager are attempting to collect such funds and impose such liens are pre-petition obligations.

5. The arrest or attachment of the Vessel had been effected by a creditor entirely unrelated to the Owner. That issue has been resolved, at least insofar as the creditor has withdrawn its arrest petition, but GMIC has reserved all rights against the creditor.  Further,

3

GMIC neither posted bond nor paid anything to secure the release. Upon release of the ship, GMIC believed that the Manager would withdraw its instructions to the ship master, Sub-Charterer, and Ultimate Charterer.

6. However, the next morning, Tuesday, September 22, 2015, counsel to the Sub-Charterer advised Proposed Counsel via email that the situation with the Owner had gone from "bad to worse", and that attempts by the Sub-Charterer to reason with the Manager had not been successful.

7. In the early evening hours (prevailing U.S. Central Time) of September 22nd, 2015, Proposed Counsel wrote to the Manager's representative, Mr. Jack Lee of HTM Shipping Co., Ltd., providing him a copy of the *Order, Pursuant to Section 105 of the Bankruptcy Code, Enforcing and Restating the Automatic Stay, Ipso Facto and Anti-Discrimination Provisions of Sections 362, 365 and 525 of the Bankruptcy Code* [Dkt. No. 41] (the "**Stay Order**"). Proposed Counsel also advised him that GMIC disagrees with his interpretation of the charter, that the Manager and Owner were interfering with GMIC's contract rights, and that the Manager and Owner's actions violated the automatic stay the Stay Order. Proposed Counsel further informed him that if his instructions were not withdrawn, suit would be filed.

8. On the morning of Wed., September 23, 2015, Proposed Counsel received an email response from Mr. Lee, essentially refusing to comply with any of the requested actions to comply with or observe the automatic stay. It can be seen from Mr. Lee's email that the basis interfering with GMIC's operations and violating the automatic stay comprises almost exclusively pre-petition claims.

9. The Owner's and the Manager's efforts to inject themselves into the relationships between GMIC and the Sub-Charterer, and, it is assumed, further between the Sub-Charterer and

4

the Ultimate Charterer, will have the effect of causing claims among the chain of the charter. Further, the Owner's claim to a lien on freight of the Sub-Charterer and, it is assumed, the Ultimate Charterer creates a risk that hire and / or freight payments may have to be made twice by the entity receiving notification of the lien where it pays the wrong party.

3. If the Vessel is not permitted to load at the second load port and complete its voyage, GMIC will be irreparably damaged, and claims against it will be multiplied. If the Owner or its Manager are permitted to interfere with future voyages, not only will rights of third parties not in privity with GMIC, the Owner, or its Manager be infringed upon, but claims against the estate will also multiply.

4. Further, if other ship owners or agents or managers believe they can cancel or take steps in violation of the automatic stay with impunity, then other post-petition claims to operate ships will arise. The Debtors' bankruptcy estates will lose much of the profits and revenue of those post-petition voyages. It is the profit from such voyages, among other things, that will fund the distribution to unsecured creditors in these cases.

5. As a direct result of Owner's and Manager's actions, the Vessel is at risk of not being able to complete its voyage due to the non-issuance of bills of lading, and is accruing additional post-petition liabilities under the Sub-Charter, such as off-hire for delay and bunker wastage,. On information and belief, under applicable charter agreements, GMIC will not receive payment from counterparties for the time the Vessel is idle in any load port it attends under the current voyage. These are lost funds that could otherwise be used to pay creditors and fund the orderly wind-down of GMIC. Moreover, on information and belief, if the Vessel is unable to timely fulfill its commitments under the relevant charter agreements, counterparties may have the right

5

to terminate all or part of these agreements and potentially seek damages from GMIC for the delay.

## RELIEF REQUESTED

6. This is an application by the Debtors for the issuance of an Order to Show Cause and temporary restraining order filed in connection with Debtors' *Emergency Motion to Enforce the Automatic Stay Pursuant to 11 U.S.C. §362* (the "**Underlying Motion**"). In the Underlying Motion, the Debtors request that this Court enter an order: (i) permanently enjoining the Owner and Manager from any further acts to (a) interfere with property of the estate; (b) collect any prepetition amounts owed by the Debtors; (c) to attach or perfect any liens relating to prepetition amounts allegedly owed by GMIC; (d) attach or perfect any liens on third-party property to collect prepetition amounts owed by the Debtors; or (e) otherwise violate the automatic stay of Section 362 of the Bankruptcy Code and related provisions thereof; (ii) determining that the Owner and Manager are in contempt of court for their violation of the automatic stay, and for the assessment of actual and punitive damages against them; and (iii) granting such other and further relief as may be just and proper.

7. For the reasons set forth herein and in the Underlying Motion and the Affidavits of John P. Melko and Tom Oliphant, filed contemporaneously herewith, it is respectfully submitted that the Owner and Manager have violated the automatic stay of Section 362 of the Bankruptcy Code in seeking to: (i) interfere with the operation of the Vessel; (ii) attach or perfect liens on property of GMIC's estate; (iii) attach or perfect liens on the property of third-parties to collect on prepetition obligations of the Debtors; and (iv) obtain possession of funds rightfully belonging to the Debtors.

8. This matter is brought by Order to Show Cause instead of the usual Notice of Motion because it is a priority that the Court determine at least the permanent injunctive relief request

before irreversible actions are taken. The Debtors urge that service of this notice by facsimile or electronic mail upon the Owner, Manager, Sub-Charterer (as defined below), and Ultimate Charterer (as defined below, and if identified), will be sufficient notice. The Debtors will also serve the United States Trustee of Region 2 in a similar fashion.

9. No prior application for this or similar relief has heretofore been made.

## BASIS FOR RELIEF

10. Entry of an order to show cause and temporary restraining order is appropriate because: (1) Debtors have a high likelihood of succeeding on the merits; (2) will suffer irreparable injury unless the actions of the Owner and Manager are stopped; (3) the balance of hardships favors the Debtors; (4) the relief requested is in the public interest; and (5) immediate relief is necessary.

A. **Likelihood of Success on the Merits**

11. The Debtors have a high likelihood of success on the merits because the Owner and Manager are openly, knowingly, and willfully violating the automatic stay. The filing of a bankruptcy petition operates to stay of, among other things, any act to: (1) obtain possession of property of or from the estate; (2) to exercise control over property of the estate; (3) collect payment on a prepetition claim; and (4) attach or perfect liens based on a prepetition cliam . 11 U.S.C. §362.

12. Property of the bankruptcy estate is "comprised of all the following property, wherever located: . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *U.S. v Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983). The scope of section 541(a)(1) is broad. *U.S. v. Whiting Pools, Inc.*, 462 U.S. at 205 (citing H.R. Rep. No. 95-595, p. 367 (1977)). Although GMIC does not have possession of the Vessel, it still has a

legal and/or equitable interest in the Arrested Vessel as a long-term charterer. Therefore, the Arrested Vessel is property of GMIC's and/or Debtors' bankruptcy estate(s). GMIC also has rights to payment of sub-charter hire from the Sub-Charterer and the Ultimate Charterer, and the rights to those funds are property of GMIC's estate.

13. Here, the Owner and Manager did not seek relief from the automatic stay, and the Manager's own email correspondence indicates that the Manager and Owner's basis for interfering with the signing of bills of lading for the Vessel (and thus GMIC's charter rights in the vessel), seeking to attach or perfect liens on funds properly payable to GMIC, and seeking to attach or perfect liens on third party property to collect on claims against GMIC, is ***almost exclusively*** prepetition claims against the Debtors. The Manager has been expressly informed by Proposed Counsel that the Chapter 11 Cases have commenced and the Manager and Owner's actions are violative of the automatic stay and the Stay Order. The Manager has disregarded this information and indicated that the Manager and Owner will not cease their violative activities until they are paid. As a result, the Manager and Owner are knowingly, willfully, and openly violating the automatic stay.

**B. Irreparable Injury**

14. A party is likely to suffer irreparable harm where there is no adequate remedy at law for the harm. *See Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (Citing *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). The Second Circuit has traditionally "presumed that a plaintiff likely to prevail on the merits of a copyright claim is also likely to suffer irreparable harm if an injunction does not issue." *Salinger v. Colting*, 607 F.3d 68, 75 (2d Cir. 2010) (citing *Richard Feiner & Co., Inc. v.*

8

*Turner Entm't Co.,* 98 F.3d 33, 34 (2d Cir.1996); *ABKCO Music,* 96 F.3d at 64; *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985)).

15. For example, "injury to a party's operations, reputation and good will is considered irreparable." *In re Alert Holdings, Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992). Moreover, injury resulting from violation of the automatic stay is irreparable. *See United States Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus., Inc.)*, 68 B.R. 690, 694 (Bankr. S.D.N.Y. 1986) (issuing preliminary injunction ordering defendant to release seized vessels of the debtor).

16. Here, the Debtors' business relies on the operation of its vessels. The Manager and Owner's interference with the Vessel prevents the Debtors from operating in the ordinary course of business and their acts to attach or perfect liens on funds payable to the Debtors interrupts the cash flow the Debtors need for an orderly wind-up. The Owner's and the Manager's efforts to inject themselves into the relationships between GMIC and the Sub-Charterer, and, it is assumed, further between the Sub-Charterer and the Ultimate Charterer, will have the effect of causing claims among the chain of the charter. Further, the Owner's claim to a lien on freight of the Sub-Charterer and, it is assumed, the Ultimate Charterer creates a risk that hire and / or freight payments may have to be made twice by the entity receiving notification of the lien where it pays the wrong party.

17. If the Vessel is not permitted to load at the second load port and complete its voyage, GMIC will be irreparably damaged, and claims against it will be multiplied. If the Owner or its Manager are permitted to interfere with future voyages, not only will rights of third parties not in privity with GMIC, the Owner, or its Manager be infringed upon, but claims against the estate will also multiply.

9

18. Further, if other ship owners or agents or managers believe they can cancel or take steps in violation of the automatic stay with impunity, then other post-petition claims to operate ships will arise. The Debtors' bankruptcy estates will lose much of the profits and revenue of those post-petition voyages. It is the profit from such voyages, among other things, that will fund the distribution to unsecured creditors in these cases.

19. As a direct result of Owner's and Manager's actions, the Vessel is at risk of not being able to complete its voyage due to the non-issuance of bills of lading, and is accruing additional post-petition liabilities under the Sub-Charter, such as off-hire for delay and bunker wastage,. On information and belief, under applicable charter agreements, GMIC will not receive payment from counterparties for the time the Vessel is idle in any load port it attends under the current voyage. These are lost funds that could otherwise be used to pay creditors and fund the orderly wind-down of GMIC. Moreover, on information and belief, if the Vessel is unable to timely fulfill its commitments under the relevant charter agreements, counterparties may have the right to terminate all or part of these agreements and potentially seek damages from GMIC for the delay.

**C. Balance of Hardships**

20. A balance of the hardships weighs in the favor of the Debtors. The issuance of a temporary restraining order merely protects estate property and the Debtors' orderly wind-down process. Without this Order to Show Cause and Temporary Restraining Order restraining the Manager and Owner continuing to violate the automatic the Debtors ability to effect an orderly wind down will be harmed which will result in less value to be distributed to its credtors.

21. On the other hand, the Manager and Owner will not be harmed by a temporary restraining order. Their claims and any rights they might have against the Debtors will be

preserved through the bankruptcy process. Likewise, as the Vessel is put back to work, it will generate significant income that will benefit both the Debtors and the Manager and Owner.

### D.  Public Interest

22.     Last, granting the Debtors a temporary restraining order serves the public interest because it will facilitate the orderly wind-down of the Debtors' business and preservation of value for creditors. Courts generally find that injunctions that facilitate reorganizations serve the public interest. *In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 190 (Bankr. N.D. Tex. 2012) (citing *Lazarus Burman Assocs. v. Nat'l Westminster Bank U.S.A. (In re Lazarus Burman Assocs.)*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); *SAS Overseas Consultants v. Benoit,* No. Civ.A. 99–1663, 2000 WL 140611, at *5 (E.D. La. Feb. 7, 2000) *Venzke Steel Corp. v. LLA, Inc. (In re Venzke Steel Corp.),* 142 B.R. 183, 185 (Bankr. N.D. Ohio 1992)).  While the Debtors intend to pursue an orderly wind-down process in the Chapter 11 Cases, rather than a reorganization, the same policy considerations apply.  As stated by one court with respect to an injunction to protect a chapter 11 case: "[c]hapter 11 expresses the public interest of preserving the going-concern values of businesses, protecting jobs, ensuring the equal treatment of and payment of creditors, and if possible saving something for the equity holders." *In re Hunt*, 93 B.R. 484, 497 (Bankr. N.D. Tex. 1988) (citing H.R.Rep. No. 595, 95th Cong., 2nd Sess. 340, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 6296).

23.     Here, the Debtors' chance for successful wind-down will be greatly jeopardized if the Owner and Manager continue to interfere with the operation of the Vessel and seek payment of prepetition obligations outside of these Chapter 11 Cases. Further, the Owner and Manager's interference with the purpose of collecting on prepetition obligations goes against the underlying purpose of the Bankruptcy Code, which attempts to ensure the equal treatment of creditors.

11

E. **Immediate Relief is Necessary**

24. Plaintiff seeks a temporary restraining order preventing the Owner and Manager from any further acts to (a) interfere with property of the estate; (b) collect any prepetition amounts owed by the Debtors; (c) to attach or perfect any liens relating to prepetition amounts allegedly owed by GMIC; (d) attach or perfect any liens on third-party property to collect prepetition amounts owed by the Debtors; or (e) otherwise violate the automatic stay of Section 362 of the Bankruptcy Code and related provisions thereof. Without such immediate relief, the Debtors will suffer immediate and irreparable injury and loss.

25. The Owner and Manager's demands upon the Sub-Charterer and other parties will disrupt the Debtors' cash flows and are harming the Debtors' reputation with these parties. Furthermore, the Vessel is at risk of not being able to finish its voyage bills of lading are not issued at the next load port is accruing additional post-petition liabilities under the Sub-Charter, such as off-hire for delay and bunker wastage. If it appears Vessel cannot timely deliver its cargo, counter-parties may attempt to terminate their agreements with the Debtors relating to the Vessel and seek damages against the Debtors. Moreover, the Owner and Manager's interference will harm the Debtors' goodwill and reputation in the industry. Therefore, the Debtors are irreparably harmed by the Owner and Manager's continuing violations of the automatic stay and require an immediate temporary restraining order and an order to show cause setting a hearing for final relief on the Underlying Motion.

WHEREFORE, it is respectfully requested that this Court sign the annexed Order to Show Cause and Temporary Restraining Order and grant such other and further relief as this Court may deem just and proper.

Dated: September 24, 2015
Houston, Texas

        Respectfully submitted,

/s/ *John P. Melko* _____
John P. Melko
Texas State Bar No. 13919600
713-276-5727 (*direct dial*)
713-276-6727 (*direct fax*)
jmelko@gardere.com
Michael K. Riordan
Texas State Bar No. 24070502
713-276-5178 *(direct dial)*
713-276-6178 *(direct fax)*
mriordan@gardere.com
GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 2000
Houston, Texas  77002-5011

PROPOSED COUNSEL FOR THE DEBTORS

7117549v.5