**Return Date: November 17, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date: November 10, 2015 at 5:00 p.m. (Prevailing Eastern Time)**

John P. Melko
713-276-5727 (*direct dial*)
713-276-6727 (*direct fax*)
jmelko@gardere.com
Michael K. Riordan
713-276-5178 *(direct dial)*
713-276-6178 *(direct fax)*
mriordan@gardere.com
**GARDERE WYNNE SEWELL LLP**
1000 Louisiana, Suite 2000
Houston, Texas  77002-5011

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GMI USA MANAGEMENT, INC., *et al*[1] | § | Case No. 15-12552-SMB |
| | § | |
| Debtors, | § | Jointly Administered |
| | § | |

**AMENDED MOTION TO ENFORCE THE AUTOMATIC STAY**
**PURSUANT TO 11 U.S.C. §362**

The Debtors, by and through undersigned proposed counsel, hereby submit this *Emergency Motion to Enforce the Automatic Stay Pursuant to 11 U.S.C. §362* (the "**Motion**") and in support thereof, respectfully represent as follows:

### I.    SUMMARY OF RELIEF REQUESTED

1.    Pursuant to Sections 105 and 362 of the Bankruptcy Code[2] and the inherent contempt powers of this Court, and in accordance with the *Order, Pursuant to Section 105 of the*

---

[1]    The Debtors in these Chapter 11 cases comprise GMI USA Management, Inc., Global Maritime Investments Holdings Cyprus Limited, Global Maritime Investments Vessel Holdings Pte. Limited, Global Maritime Investments Cyprus Limited and Global Maritime Investments Resources (Singapore) Pte. Limited (the "**Debtors**").

[2]    All references herein to "Section __ of the Bankruptcy Code" refer to the corresponding provisions of title 11 of the United States Code.

*Bankruptcy Code, Enforcing and Restating the Automatic Stay, Ipso Facto and Anti-Discrimination Provisions of Sections 362, 365 and 525 of the Bankruptcy Code* [Dkt. No. 41] (the "**Stay Order**") Debtors hereby seek entry of an order:

(i) permanently enjoining Mardinik Shipping Co. Ltd. (the "**Owner**") from any further acts to violate the automatic stay, including, without limitation, acting to attach or perfect any liens relating to prepetition amounts allegedly owed by the Debtors;

(ii) determining that the Owner is in contempt of court for its violation of the automatic stay and Stay Order (as defined below), and for the assessment of actual and punitive damages against them; and

(iii) granting such other and further relief as may be just and proper.

## II.    BACKGROUND

### A. General Case Background

2. On September 15, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**").

3. The Debtors continue to operate and to manage their businesses as "debtors in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases (the "**Chapter 11 Cases**") pursuant to section 1104 of the Bankruptcy Code. A committee of unsecured creditors (the "**Committee**") has been appointed in these Chapter 11 Cases.

4. The background of the Debtors is set forth in the *First Day Declaration of Justin Knowles* [Dkt. No. 2] and the *Supplemental First Day Declaration of Justin Knowles* [Dkt. No. 61].

### B. Factual Background

5.      Debtor Global Maritime Investments Cyprus Limited ("**GMIC**") is the long-term charterer of *M/V* Athinoula (the "**Vessel**"), which is owned by the Owner. Under the charter agreement between GMIC and the Owner (the "**Charter Agreement**"), among other obligations, GMIC is obligated to pay the Owner charter hire and the Owner is obligated to pay GMIC for excess bunkers onboard the Vessel when it is redelivered.

6.      GMIC has sub-chartered the Vessel to Louis Dreyfus Commodities or one or more affiliates thereof (the "**Sub-Charterer**"). Under the sub-charter agreement, the Sub-Charterer is indebted to GMIC for, among other things, sub-charter hire and freight. GMIC, in return is obligated to pay the Sub-Charterer for excess bunkers on the Vessel upon redelivery. As a result, there is a chain of obligations going both ways under the Charter Agreement and the sub-charter agreement. On one side, the Sub-Charterer is to pay GMIC sub-charter hire, and GMIC in turn is to pay charter hire to the Owner. On the other side, the Owner is to pay GMIC for excess bunkers on redelivery, and GMIC will have a similar obligation to the Sub-Charterer at that time.

7.      The Owner is a member of the Official Committee of Unsecured Creditors (the "**Committee**") in these chapter 11 cases. [Dkt. No. 69].[3]

8.      On October 26, 2015, the Debtors received an email from counsel for the Owners, with an attached notice of lien (the "**Notice of Lien**"), filed herewith as Exhibit A, that the Owner had sent to the Sub-Charter. The Notice of Lien attempts to assert a lien on sub-charter hire and freight properly payable to the Debtors, and directs the Sub-Charterer to pay all such amounts over to the Owner's account instead of the Debtors.

---

[3] Proposed Counsel (as defined below) has informed Committee counsel of the Owner's actions described herein.

3

9. On October 27, 2015, proposed counsel for the Debtors ("**Proposed Counsel**") sent an email to the Sub-Charterer informing it of the automatic stay and that transferring funds properly payable to the Debtors to the Owner would constitute a violation of the automatic stay. On October 28, 2015, counsel for the Owner contacted Proposed Counsel by email, demanding that the Debtors pay amounts owed to the Owner and noting that the Owner had served a notice of suspension of the charter to the Debtors.

10. Multiple emails ensued between Proposed Counsel and the Owner and counsel for the Owner, in which Proposed Counsel informed the Owner of the automatic stay, and sought confirmation from the Owner that it would compensate the Debtors for excess bunkers on the Vessel upon redelivery of the Vessel at the end of its current voyage, as provided in the governing time charter agreement. The Debtors anticipate that there will be significant excess bunkers at this time and sought to reach a settlement where post-petition amounts owed could be offset against the Owner's bunker obligations. To date, the Owner has refused to say that it will honor its bunker obligations upon redelivery, and has not relented in seeking to assert liens on sub-charter hire and freight properly payable from the Sub-Charterer to the Debtors. All this, despite being made aware of the automatic stay and participating in these chapter 11 cases as one of only three members of the Committee.

11. The Owner's efforts to interject itself into the relationships between GMIC and the Sub-Charterer will have the effect of disrupting the claims among the chain of the charter, which could leave the Debtors subject to "double-dip" obligations to the Owner and the Sub-Charterer. Also, the Owner's claim to a lien on freight of the Sub-Charterer also creates a risk that hire and / or freight payments may have to be made twice by the entity receiving notification of the lien where it pays the wrong party.

4

12. Further, if other ship owners or agents or managers believe they can cancel or take steps in violation of the automatic stay with impunity, then other post-petition claims against operating ships will arise. The Debtors' bankruptcy estates will lose much of the profits and revenue of those post-petition voyages. It is the profit from such voyages, among other things, that will fund the distribution to unsecured creditors in these cases.

### III.    JURISDICTION

13. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested in this Motion are Sections 105(a) and 362 of the Bankruptcy Code and the inherent contempt powers of this Court.

### IV.    BASIS FOR RELIEF

**A. The Debtors Meet The Requirements for a Permanent Injunction**

14. A party seeking a permanent injunction must demonstrate that: (1) it has suffered an irreparable injury; (2) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the hardships between the parties, a remedy in equity is warranted; and (4) the public interest will not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

**Irreperable Injury and No Remedy Available at Law**

15. As discussed *supra*, the Debtors' business relies on the operation of chartered vessels such as the Vessel. The Owner's acts to control property of the Debtors' estates interferes with the operation of the Debtors' business and the Debtors' ability to bring in revenue. Injury resulting from violation of the automatic stay is irreparable. *See United States Lines, Inc. v. GAC*

5

*Marine Fuels Ltd. (In re McLean Indus., Inc.)*, 68 B.R. 690, 694 (Bankr. S.D.N.Y. 1986) (issuing preliminary injunction ordering defendant to release seized vessels of the debtor).

16. Monetary damages are inadequate to remedy the injury to the Debtors because the potential economic loss threatens the Debtors' future operations. *See John B. Hull, Inc. v. Waterbury Petroleum,* 588 F.2d 24 (2nd Cir.1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979) (possibility of going out of business is irreparable harm).

17. If the Owner is not prevented from interfering with and attempting to appropriate payments properly due from the Sub-Charterer to GMIC, GMIC will be will be irreparably damaged and claims against it will be duplicated.

18. Further, if other ship owners or agents or managers believe they can cancel obligations under a charter agreement or take steps in violation of the automatic stay with impunity, then post-petition claims against other vessels chartered by the Debtors' will arise. The Debtors' bankruptcy estates will lose much of the profits and revenue of those post-petition voyages. It is the profit from such voyages, among other things, that will fund the distribution to unsecured creditors in these cases.

**Balance of Hardships**

19. While the Debtors will be substantially harmed without a permanent injunction, the issuance of the injunction will protect estate property and the Debtors' orderly wind-down process, resulting in little to no harm to the Owner who may avail themselves of their rights in the Chapter 11 Cases.

**Public Interest**

20. Last, the public interest will not be disserved by the issuance of a permanent injunction because an injunction will preserve going-concern values of the business and ensure

6

the equal treatment of any payment of creditors. Courts generally find that injunctions that facilitate reorganizations serve the public interest. *In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 190 (Bankr. N.D. Tex. 2012) (citing *Lazarus Burman Assocs. v. Nat'l Westminster Bank U.S.A. (In re Lazarus Burman Assocs.)*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); *SAS Overseas Consultants v. Benoit,* No. Civ.A. 99–1663, 2000 WL 140611, at *5 (E.D. La. Feb. 7, 2000) *Venzke Steel Corp. v. LLA, Inc. (In re Venzke Steel Corp.),* 142 B.R. 183, 185 (Bankr. N.D. Ohio 1992)).

21. While the Debtors intend to pursue an orderly wind-down process rather than a reorganization, the same policy considerations apply. As stated by one court with respect to an injunction protecting a chapter 11 case: "[c]hapter 11 expresses the public interest of preserving the going-concern values of businesses, protecting jobs, ensuring the equal treatment of and payment of creditors, and if possible saving something for the equity holders." *In re Hunt*, 93 B.R. 484, 497 (Bankr. N.D. Tex. 1988) (citing H.R. Rep. No. 595, 95th Cong., 2nd Sess. 340, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 6296).

22. Here, the Debtors' chance for successful wind-down will be greatly jeopardized if the Owner continue to interfere with payments from GMIC's Sub-Charterer.

**B. Actual Damages, Attorneys' Fees, and Costs**

23. The Court may award damages for violation of the automatic stay to a corporate debtor pursuant to its equitable powers and in enforcement of the Court's civil contempt power under Section 105 of the Bankruptcy Code. *See* 11 U.S.C. §105; *In re A.C.E. Elevator Co., Inc.*, 2009 WL 3255381, at *6 (Bankr. S.D.N.Y. Oct. 7, 2009) (noting that corporate debtors may seek damages under a Bankruptcy Court's "general contempt power to punish violations of the automatic stay."). The threshold for imposing such contempt damages "is not particularly high, .

. . . it merely must be shown that the alleged violator had knowledge of the bankruptcy case and the existence of the automatic stay." *In re A.C.E. Elevator Co., Inc.*, 2009 WL 3255381, at *6.

24. As a member of the Committee, the Owner has chosen to actively participate in these Chapter 11 Cases and is well aware of the automatic stay. Despite this, the Owner continues to violate the automatic stay by attempting to assert liens against, and divert payment to itself, of sub-charter hire and freight properly payable to the Debtors. Therefore, the Owner continues to engage in a willful violation of the Bankruptcy Court's court-ordered automatic stay injunction, and the Debtors are entitled to actual damages, attorneys' fees, and costs.

25. As such the Debtors, reserve their rights to seek actual damages against the Owner, and request that the Court award it its reasonable attorneys' fees and costs incurred in bringing the Motion to enforce the provisions of the Bankruptcy Code.

## V.    NOTICE

26. No trustee or examiner has been appointed in these Chapter 11 Cases. The Debtors will provide notice of this Motion to: (a) the United States Trustee for Region 2; (b) counsel for Francolin; (c) Activity S.A., Libra Financiere; (d) the fifty (50) largest unsecured creditors of these bankruptcy estates (on a consolidated basis) and counsel to the Committee; (e) those persons who have formally appeared and requested notice in this case pursuant to Bankruptcy Rule 2002; and (f) the Internal Revenue Service and other governmental agencies required to receive notice under the Bankruptcy Rules or Local Rules. The Debtors submit that no other or further notice need be provided.

## VI.    NO PRIOR REQUEST

27. No prior request for the relief sought in this Motion has been made to this or any other court.

[*remainder of page intentionally blank*]

WHEREFORE, the Debtors respectfully request that the Court (a) enter an Order substantially in the form attached hereto granting the relief requested herein; and (b) grant such other and further relief to the Debtors as the Court deems proper.

Dated November 3, 2015

    Houston, Texas

        Respectfully submitted,

        /s/   *John P. Melko*
        John P. Melko
        Texas State Bar No. 13919600
        713-276-5727 (*direct dial*)
        713-276-6727 (*direct fax*)
        jmelko@gardere.com
        Michael K. Riordan
        Texas State Bar No. 24070502
        713-276-5178 *(direct dial)*
        713-276-6178 *(direct fax)*
        mriordan@gardere.com
        GARDERE WYNNE SEWELL LLP
        1000 Louisiana, Suite 2000
        Houston, Texas  77002-5011

        PROPOSED COUNSEL FOR THE DEBTORS

7288240v.5