Hearing Date: November 19, 2015, at 10:00 a.m. (Prevailing Eastern Time)
Objection Date: November 12, 2015, at 4:00 p.m. (Prevailing Eastern Time)

John P. Melko
713-276-5727 (*direct dial*)
713-276-6727 (*direct fax*)
jmelko@gardere.com
Michael K. Riordan
713-276-5178 (*direct dial*)
713-276-6178 (*direct fax*)
mriordan@gardere.com
**GARDERE WYNNE SEWELL LLP**
1000 Louisiana, Suite 2000
Houston, Texas 77002-5011

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | § | Chapter 11 |
|---|---|---|
| | § | |
| GMI USA MANAGEMENT, INC., *et al*[1] | § | Case No. 15-12552-smb |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

**DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. § 327(A), FED. R. BANKR. P. 2014 AND BANKRUPTCY LOCAL RULE 2014-1 FOR AUTHORIZATION TO RETAIN AMA CAPITAL PARTNERS AS THE DEBTORS' FINANCIAL ADVISORS**

The Debtors file this Application (the "**Application**") for entry of an order authorizing the Debtors to employ and retain Ken Becker of AMA Capital Partners ("**AMA**"), as financial advisor for the Debtors *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the Declaration of Ken Becker (the "**Becker Declaration**"), a

---

[1] The Debtors in these Chapter 11 cases, and the last four digits of the relevant Debtor's Tax Identification number (if applicable), comprise GMI USA Management, Inc. (1208), Global Maritime Investments Holdings Cyprus Limited, Global Maritime Investments Vessel Holdings Pte. Limited, Global Maritime Investments Cyprus Limited and Global Maritime Investments Resources (Singapore) Pte. Limited.

**PAGE** 1

copy of which is attached as Exhibit A and incorporated by reference herein. In further support of this Application, the Debtors respectfully represent as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1408(1) and (2).

## II.
## BACKGROUND

3. The above captioned bankruptcy cases were each filed on September 15, 2015 (collectively "**Petition Date**") under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 *et seq*. (the "**Bankruptcy Code**"). A Motion seeking joint administration of these cases was filed on September 15, 2015 and was granted by this Court on September 21, 2015.

4. The Debtors continue to operate and manage their business as "Debtors-in-possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' bankruptcy cases. An official committee of unsecured creditors (the "**Committee**") has been established.

5. A detailed factual background of the Debtors' business and operations, as well as the commencement of these Chapter 11 cases, is more fully set forth in *Affidavit of Justin Knowles in Support of Original Petitions, First Day Pleadings and in Accordance with Local Bankruptcy 1007-2* [Dkt. No. 2] and in the *Supplemental Declaration of Justin Knowles in Support of First Day Motions, Petitions, and in Accordance with Local Bankruptcy Rule 1007-2* [Dkt. No. 61].

## III.
## RELIEF REQUESTED

6. By this Application, the Debtors seek to employ and retain AMA pursuant to § 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and BLR 2014-1 to perform financial advisory services for the Debtors in these Chapter 11 Cases upon the terms and conditions contained in the engagement letter between AMA and the Debtors (the "**Engagement Letter**"), a copy of which is attached as **Exhibit B** and incorporated by reference herein. Each of the Debtors hereby affirms and acknowledges that they are bound by the Engagement Letter, including, without limitation, the fee and expense provisions and each of its terms and conditions.

## IV.
## AMA CAPITAL PARTNERS' QUALIFICATIONS

7. The Debtors are familiar with the professional standing and reputation of AMA. The Debtors understand that AMA has a wealth of experience in financial analysis services, and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

8. AMA professionals have assisted and advised, and provided strategic advice to, debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' Chapter 11 cases. Since its inception in 1987, AMA has provided financial analysis and crisis management services in numerous large cases, including most recently *In re Windsor Petroleum Transport Corporation*, Case No. 14-11708 (Bankr. D. Del.) and *In re TMT Procurement Corp., et al*, Case No. 13-33740 (Bankr. S.D. Tex.).

9. The Debtors have selected AMA as their financial advisor because of AMA's experience and reputation for providing financial analysis for businesses in the maritime

PAGE 3

shipping industry and in large, complex chapter 11 cases such as those listed above. Furthermore, as a result of the prepetition work performed on behalf of the Debtors, AMA acquired significant knowledge of the Debtors and their businesses and is now intimately familiar with the Debtors' financial affairs, debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, AMA professionals have worked closely with the Debtors' management and their other advisors. Accordingly, AMA has experience and expertise, and specifically relevant knowledge regarding the Debtors that will assist AMA in providing effective and efficient services in these Chapter 11 cases.

## V.
## SCOPE OF SERVICES

10. The Debtors anticipate that during these Chapter 11 cases AMA will render financial analysis and advisory services as AMA and the Debtors deem appropriate and feasible, including, without limitation, the following:

- Review and analyze the financial situation and the assets of the Debtors and (insofar as necessary relating to the Debtors' bankruptcy proceedings or other potential restructuring initiatives) non-Debtors;

- Review, analyze and advise proposed Debtors' counsel ("**Gardere**") in connection with its representation of the Debtors on the budgets, payment requests and cash expenditures of the Debtors and liaise with any such other financial adviser as the Debtors may from time to time appoint in connection thereto

- Prepare and testify in relation to the Debtors' potential bankruptcy proceedings. Such expert testimony shall be provided by Mr. Paul M. Leand, Jr., Managing Director & Chief Executive Officer of AMA, or Mr. James Dolphin, Managing Director of AMA, or such other person consented by the Debtors in advance in writing

- Evaluate and advise Gardere in connection with its representation of the Debtors on the Debtors' pleadings, motions and requests as well as options and restructuring strategy with a view to maximize the recovery of the estate

- Render advice to Gardere in connection with its representation of the Debtors and participate in meetings or negotiations with the Debtors, other financial advisers

as the Debtors may from time to time appoint and other stakeholders in connection with any restructuring, modification, or amendment of the existing obligations of the Company

- Provide other assistance as may be deemed necessary by Gardere in connection with its representation of the Debtors.

## VI.
## PROFESSIONAL COMPENSATION

11. AMA's compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 cases, will be made pursuant to Section 328 and consistent with the proposed terms of compensation set forth in the Engagement Letter (all such proposed terms, the "**Fee Structure**") to which the Debtors respectfully refer this Court for a full recitation.

12. Pursuant to the Engagement Letter, AMA has agreed to a flat monthly fee of US$95,000, payable at the beginning of each month during the term of its engagement.

13. In addition to compensation for professional services rendered by AMA personnel, AMA will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 cases, including, but not be limited to, travel expenses, research charges, document reproduction costs, messenger services and long-distance telephone calls incurred by AMA in connection with the services to be provided.

14. The Debtors believe that the Fee Structure is in fact reasonable, market-based, and designed to fairly compensate AMA for its work and to cover fixed and routine overhead costs.

15. The terms and conditions of the Engagement Letter were negotiated by the Debtors and AMA at arm's-length and in good faith. The Debtors and AMA respectfully submit that such terms and conditions are customary and reasonable for financial advisory engagements, both out of court and within chapter 11 cases. Accordingly, as part of this Application, the Debtors request that this Court approve the terms of the Engagement Letter.

# VII.
# NO DUPLICATION OF SERVICES

16. The Debtors intend that the services of AMA will complement the services of any other professional retained in these Chapter 11 cases. The Debtors and AMA intend that all of the services that AMA will provide to the Debtors will be appropriately directed by the Debtors so as to avoid duplicative efforts among the other professionals retained in these Chapter 11 cases. AMA understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals and with the Debtors to integrate any respective work conducted by the professionals on behalf of the Debtors.

# VIII.
# AMA'S DISINTERESTEDNESS

17. AMA has reviewed its client records and, to the best of its knowledge and except to the extent disclosed in the Becker Declaration and exhibits thereto, AMA (a) is a "disinterested person" within the meaning of section 101(4) of the Bankruptcy Code, (b) does not hold or represent an interest adverse to the Debtors' estates, and (c) has no connection to the Debtors, their creditors, or their related parties that would negatively impact AMA's disinterestedness.

18. During the 90 days prior to commencement of this Chapter 11 case, Debtors paid AMA a total of US$103,414, incurred in respect to providing services to the Debtors in contemplation of, and in connection with, prepetition restructuring activities. US$8,414 of such amount comprises expense reimbursements from the Debtors to AMA. To the extent any pre-petition fees and expenses remain outstanding, AMA will waive such fees and expenses.

19. AMA will periodically review its files during the pendency of these Chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent

that AMA discovers any new relevant facts or relationship bearing on the matters described herein during the period of AMA's retention, AMA will use reasonable efforts to file promptly a supplemental declaration.

20. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> May employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11. U.S.C. § 327(a).

Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for the compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

## IX.
## NUNC PRO TUNC RETENTION

21. The Debtors required the immediate assistance of AMA from the Petition Date on, to, among other things, prepare financial statements and assist in the restructuring analysis of the Debtors' business in these Chapter 11 Cases. Consequently, the Debtors respectfully request that the retention of AMA be effective *nunc pro tunc* to September 15, 2015, the Petition Date.

## X.
## NOTICE

22. No trustee or examiner has been appointed in these chapter 11 cases. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the Southern District

of New York; (b) counsel for Francolin; (c) Activity S.A., Libra Financiere; (d) the fifty (50) largest unsecured creditors of these bankruptcy estates (on a consolidated basis) or members of any unsecured creditors' committee; (e) those persons who have formally appeared and requested notice in this case pursuant to Bankruptcy Rule 2002; and (f) the Internal Revenue Service and other governmental agencies required to receive notice under the Bankruptcy Rules or Local Rules. The Debtors submit that no other or further notice need be provided.

## XI.
## NO PRIOR REQUEST

23. No prior application for the relief requested has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an order (a) approving the employment and retention of AMA as financial advisors for the Debtors as of the petition date and (b) granting such other and further relief as the Court deems appropriate.

[*remainder of page intentionally blank*]

Dated: November 3, 2015
Edinburgh, United Kingdom

Respectfully submitted,

/s/ *[signature]*
Justin Knowles
Chief Restructuring Officer for the Debtors