**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| GMI USA MANAGEMENT, INC., *et al*[1] | ) Case No. 15-12552-SMB |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

# DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

**GARDERE WYNNE SEWELL LLP**

John P. Melko
713-276-5727 (*direct dial*)
713-276-6727 (*direct fax*)
jmelko@gardere.com
Sharon M. Beausoleil
sbeausoleil@gardere.com
713-276-5086 (*direct dial*)
713-276-5086 (*direct fax*)
Michael K. Riordan
713-276-5178 (*direct dial*)
713-276-6178 (*direct fax*)
mriordan@gardere.com
1000 Louisiana, Suite 2000
Houston, Texas 77002-5011

*Counsel for the Debtors*

Dated: August __, 2016

---

[1] The Debtors in these chapter 11 cases comprise GMI USA Management, Inc. (1208), Global Maritime Investments Holdings Cyprus Limited, Global Maritime Investments Vessel Holdings Pte. Limited, Global Maritime Investments Cyprus Limited and Global Maritime Investments Resources (Singapore) Pte. Limited.

9329706v.7

## INTRODUCTORY DISCLOSURES

THIS DISCLOSURE STATEMENT, WHICH HAS BEEN FILED BY THE DEBTORS, IN THEIR CAPACITY AS DEBTORS AND DEBTORS-IN-POSSESSION, CONTAINS A SUMMARY OF MATERIAL PROVISIONS OF THE DEBTORS' PROPOSED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, INCLUDING PROVISIONS RELATING TO THE TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS AND THE MEANS OF IMPLEMENTATION OF THE PLAN.

THIS DISCLOSURE STATEMENT ALSO SUMMARIZES CERTAIN FINANCIAL INFORMATION CONCERNING THE DEBTORS AND THE CLAIMS ASSERTED AGAINST THE DEBTORS IN THESE JOINTLY ADMINISTERED CASES. WHILE THE DEBTORS BELIEVE THAT THIS DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION WITH RESPECT TO THE DOCUMENTS AND INFORMATION SUMMARIZED, HOLDERS OF CLAIMS AND INTERESTS SHOULD CAREFULLY REVIEW THE ENTIRE PLAN AND EACH OF THE DOCUMENTS REFERENCED IN THIS DISCLOSURE STATEMENT AND SHOULD SEEK THE ADVICE OF THEIR OWN LEGAL COUNSEL AND OTHER ADVISORS BEFORE CASTING THEIR BALLOTS ON THE PLAN.

EXCEPT FOR THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE EXHIBITS ATTACHED HERETO, NO REPRESENTATIONS CONCERNING THE DEBTORS, THE DEBTORS' ASSETS AND LIABILITIES, THE PAST OPERATIONS OF THE DEBTORS, THE PLAN AND ITS TERMS, OR ALTERNATIVES TO THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY INFORMATION WITH RESPECT TO SUCH TOPIC AREAS THAT IS PROVIDED TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN, WHICH IS NOT CONTAINED IN THESE SOLICITATION MATERIALS, IS UNAUTHORIZED AND SHOULD BE REPORTED IMMEDIATELY TO THE DEBTORS' LEGAL COUNSEL.

UNLESS INDICATED OTHERWISE, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF OR THE DATE OTHERWISE INDICATED HEREIN, AND NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY RECOVERY MADE IN CONNECTION WITH THE PLAN WILL, UNDER ANY CIRCUMSTANCES, CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT SINCE THE DATE THIS DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARING THIS DISCLOSURE STATEMENT WERE COMPILED.

THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE

9329706v.7

**BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.**

**NOTHING CONTAINED IN THIS DISCLOSURE STATEMENT, EXPRESS OR IMPLIED, IS INTENDED TO GIVE RISE TO ANY COMMITMENT OR OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY, NOR WILL IT BE CONSTRUED AS CONFERRING UPON ANY PERSON ANY RIGHTS, BENEFITS, OR REMEDIES OF ANY NATURE WHATSOEVER. THIS DISCLOSURE STATEMENT IS INFORMATIONAL ONLY. ADDITIONALLY, HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH CREDITOR AND INTEREST HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY MATTER CONCERNING THE PLAN, THE EFFECTS OF IMPLEMENTATION OF THE PLAN, AND THE VOTING PROCEDURES APPLICABLE TO THE PLAN.**

9329706v.7

LIST OF ATTACHMENTS

Exhibit A       Proposed Joint Plan of Liquidation
Exhibit B       List of Rejected Contracts
Exhibit C       List of Preserved Causes of Action
Exhibit D       Liquidating Trust Agreement

9329706v.7

TABLE OF CONTENTS

*ARTICLE I - INTRODUCTION*                                                                                     *1*
*ARTICLE II BACKGROUND*                                                                                        *3*
   2.1   The Debtors' Businesses**.** .......................................................................................................... 3
   2.2   Events Leading to the Chapter 11 Cases .................................................................. 4
   2.3   Debtors' Capital Structure and Prepetition Indebtedness ........................................ 5
*ARTICLE III KEY EVENTS DURING THE CHAPTER 11 CASES*                                                           *9*
   3.1   First Day Pleadings ................................................................................................. 9
   3.2   Post-Petition Financing .......................................................................................... 9
   3.3   Retention of Professionals .................................................................................... 10
   3.4   Appointment of the Official Committee of Unsecured Creditors ......................... 10
   3.5   Bankruptcy Schedules and Statements of Financial Affairs ................................ 11
   3.6   Contract Rejections .............................................................................................. 11
   3.7   Claims Bar Date .................................................................................................... 11
   3.8   Asset Sales ............................................................................................................ 11
   3.9   Tri-Partite Settlement Among Debtors, Committee, and the DIP Lenders ........... 12
   3.10  Litigation ............................................................................................................. 13
   3.11  Singapore Liquidations ......................................................................................... 13
*ARTICLE IV SUMMARY OF THE PLAN*                                                                               *14*
   4.1   Introduction .......................................................................................................... 14
   4.2   Overview of the Plan ............................................................................................ 14
   4.3   Administrative Expenses, Professional Fees, and Priority Tax Claims ................ 15
   4.4   Treatment of Allowed DIP Claims. ...................................................................... 16
   4.5   Classification and Treatment of Claims and Interests .......................................... 17
   4.6   Means For Implementation Of The Plan ............................................................... 19
   4.7   Treatment of Rejected Contracts. ......................................................................... 20
   4.8   Release of Liens and Perfection of Liens. ............................................................ 20
   4.9   Claim Objections. ................................................................................................. 20
   4.10  Set-offs. ................................................................................................................. 20
   4.11  Retention of Rights to Pursue Causes of Action. ................................................. 21
   4.12  **Releases, Indemnification, Injunction, and Exclupation** ................................... 21
   4.13  Modification of the Plan; Revocation. .................................................................. 23
   4.14  Conditions Precedent to Occurrence of the Effective Date; Waiver. .................... 23
   4.15  Effects of Plan Confirmation. ............................................................................... 23
*ARTICLE V CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND*
           *SECURITIES LAW CONSIDERATIONS*                                                  *23*
   5.1   Generally .............................................................................................................. 23
   5.2   Certain U.S. Federal Income Tax Consequences to the Debtors. .......................... 25
   5.3   Tax Consequences to Creditors ............................................................................ 25
   5.4   Tax Consequences of the Liquidating Trust .......................................................... 27
   5.5   Securities Laws Considerations. ............................................................................ 30
   6.1   Confirmation Standards. ........................................................................................ 31
   6.2   Vote Required for Acceptance by a Class .............................................................. 32
   6.3   Alternatives to Confirmation Is Chapter 7 Liquidation ........................................ 33
*ARTICLE VII CERTAIN FACTORS TO BE CONSIDERED*                                                                 *34*
   7.1   Certain Bankruptcy Law Considerations. .............................................................. 34
   7.2   Certain Tax Considerations, Risks and Uncertainties .......................................... 35
*ARTICLE VIII VOTING PROCEDURES AND REQUIREMENTS*                                                              *36*

9329706v.7

8.1    Introduction ..................................................................................................... 36
8.2    Voting.............................................................................................................. 36
8.3    Reservation of Rights ...................................................................................... 36
8.4    Waivers of Defects, Irregularities, etc............................................................ 36
*ARTICLE IX CONCLUSION*                                                                 *37*

9329706v.7

## ARTICLE I - INTRODUCTION

GMI USA Management, Inc. and its four debtor affiliates,[2] as debtors and debtors in possession (collectively, the "**Debtors**") submit this disclosure statement (the "**Disclosure Statement**") pursuant to section 1125 of title 11 of the Bankruptcy Code in connection with the solicitation of votes on the *Debtors' Proposed Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated August _____, 2016 (the "**Plan**," attached hereto as **Exhibit A**). To the extent any inconsistencies exist between this Disclosure Statement and the Plan, the Plan governs.

Capitalized terms used but not defined herein have the meanings assigned to them in Section 2.1 of the Plan. Unless otherwise stated herein, section ("§") references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

**WHO IS ENTITLED TO VOTE**: Under the Bankruptcy Code, only holders of claims or interests in "impaired" classes are entitled to vote on the Plan (unless, for reasons discussed in more detail below, such holders are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code). Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under the Plan unless (i) the Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the Plan, among other things, cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

The following table summarizes: (i) the treatment of Claims and Interests under the Plan, (ii) which Classes are impaired by the Plan, (iii) which Classes are entitled to vote on the Plan, and (iv) the estimated recoveries for holders of Claims. The table is qualified in its entirety by reference to the full text of the Plan. For a more detailed summary of the terms and provisions of the Plan, *see Article IV—Summary of the Plan* below.

---

[2] The Debtors in these chapter 11 cases comprise GMI USA Management, Inc. (1208), Global Maritime Investments Holdings Cyprus Limited, Global Maritime Investments Vessel Holdings Pte. Limited, Global Maritime Investments Cyprus Limited and Global Maritime Investments Resources (Singapore) Pte. Limited.

Page 1

9329706v.7

| Class | Designation | Treatment | Status | Voting Rights | Est. Amount of Claims | Est. % Recovery |
|---|---|---|---|---|---|---|
| N/A | Administrative Expenses | Unless otherwise agreed by the holder and the Debtors, payment in full in Cash | N/A | None | | 100% |
| N/A | Priority Tax Claims | Payment in full in Cash | N/A | None | | 100% |
| N/A | DIP Claim | Payment in full in Cash | N/A | None | | 100% |
| 1 | Priority Non-Tax Claims | Unless otherwise agreed by the holder and the Debtors, payment in full in Cash | Unimpaired | Deemed to Accept | TBD | 100% |
| 2 | Miscellaneous Secured Claims | Shall receive one of the following alternatives at the option of the Liquidating Trust: (1) payment in full in Cash; or (2) Distribution of the Collateral securing such Claim and File a proof of Claim for any deficiency as a Claim in Class 3. | Impaired | Entitled to Vote | TBD | TBD |
| 3 | General Unsecured Claims | Ratable Proportion of distributions as follows: (1) one-half of the distributions on account of all Allowed General Unsecured Claims, excluding the Francolin Prepetition Claim, and (2) one-half of the distributions on account of all Allowed General Unsecured Claims, including the Francolin Prepetition Claim. | Impaired | Entitled to Vote | TBD | TBD |
| 4 | Interests | Extinguished | Impaired | Deemed to Reject | N/A | N/A |

**DECIDING HOW TO VOTE ON THE PLAN**: All holders of Claims are encouraged to read

9329706v.7

this Disclosure Statement, its exhibits, and the Plan carefully and in their entirety before, if applicable, deciding to vote either to accept or to reject the Plan. This Disclosure Statement contains important information about the Plan, considerations pertinent to acceptance or rejection of the Plan, and developments concerning the Chapter 11 Cases.

IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE VOTING AGENT AT THE ADDRESS SET FORTH BELOW ON OR BEFORE THE **VOTING DEADLINE OF [__:__]P.M., PREVAILING CENTRAL TIME, ON [____], 2016**, UNLESS EXTENDED BY THE DEBTORS.

**EACH BALLOT ADVISES THAT CREDITORS WHO (A) VOTE TO ACCEPT THE PLAN OR (B) DO NOT VOTE OR VOTE TO REJECT THE PLAN AND DO NOT ELECT TO OPT OUT OF THE RELEASE PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS SET FORTH IN ARTICLES VIII, IX, AND X OF THE PLAN AND UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE RELEASED PARTIES FROM ANY AND ALL CAUSES OF ACTION.**

ARTICLE VIII OF THIS DISCLOSURE STATEMENT PROVIDES ADDITIONAL DETAILS AND IMPORTANT INFORMATION REGARDING VOTING PROCEDURES AND REQUIREMENTS. PLEASE READ ARTICLE VIII OF THIS DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**THE DEBTORS [AND THE CREDITORS' COMMITTEE] STRONGLY RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN. THE DEBTORS BELIEVE THAT THE PLAN MAXIMIZES THE VALUE OF THE DEBTORS' ESTATES AND REPRESENTS THE BEST AVAILABLE ALTERNATIVE FOR COMPLETING THESE CHAPTER 11 CASES.**

## ARTICLE II
## BACKGROUND

### 2.1    *The Debtors' Businesses.*

The Debtors formed their business in 2011 through the purchase by Debtor Global Maritime Investments Cyprus Limited ("**GMI Tradeco**") of non-Debtor Global Maritime Investments Limited ("**GMI Cayman**"), a physical and futures maritime freight fund formed in 2006 and managed through a management company by Stuart Rae and Stephen Rodley (together with Paul Barbour, the business's chief financial officer, the "**UK Principals**"). The Debtors' business operated as a joint venture (the "**Joint Venture**") among the UK Principals and certain investors. The Joint Venture is governed by a joint venture agreement (as supplemented and amended from time to time, the "**JVA**").

The Debtors' core business was chartering shipping vessels from owners under a variety

9329706v.7

of long term charter agreements. Some charter agreements were for long term time charters (roughly analogous to a long-term lease), whereas other charter agreements functioned more like a form of secured financing. The chartered shipping vessels would then be sub-chartered out to the Debtors' customers, generally on the spot market. These short term charters were either time charters themselves or contracts of affreightment. Shipping companies can usually charter-in ships at lower rates than are available on the spot market for a short term, and the Debtors' business model sought to capitalize on this difference. The Debtors also initially engaged in trading of freight futures, but had wound up that side of the business some time prior to commencement of the Chapter 11 Cases.

The shipping industry is highly cyclical, with associated volatility in charter hire rates and profitability. Although charter rates were at record levels in 2007 and 2008, charter rates in recent years in many sectors of the shipping industry plummeted to decade-low levels due to an excess supply of ships. Under the pressure of these extremely low charter rates for its vessels, the Debtors faced difficulty in servicing their debt and funding operating expenses

### 2.2   *Events Leading to the Chapter 11 Cases*

In 2011 and 2012, the Debtors' chartered fleet comprised in excess of 60 vessels. In each of fiscal years 2012, 2013, and 2014, the Debtors experienced net losses of approximately $93.3 million, $7.0 million, and $47.8 million, respectively. In response to ongoing losses and other considerations, in June 2013, the parties to the JVA agreed to restructure the Joint Venture and certain debt and equity instruments of the Debtors. Again, in November 2014, the parties to the JVA agreed to further restructure certain debt and equity instruments of the Debtors and entered into an addendum to the JVA (the "**JVA Addendum**") to document the restructuring. In connection with that restructuring, the parties to the JVA and the UK Principals agreed to effectuate a controlled wind-down of the Debtors' trading book. In addition, Francolin, a limited company incorporated under the laws of the Cayman Islands and one of the investors in the Joint Venture, and Debtor Global Maritime Investments Holdings Cyprus Limited ("**Slipway**") entered into a credit agreement (the "**Slipway Credit Agreement**").

Pursuant to the JVA Addendum and the Slipway Credit Agreement, Francolin could make advances to Slipway under the Slipway Credit Agreement. The terms of the Slipway Credit Agreement required that such advances were to be used by Debtor Global Maritime Investments Vessel Holdings PTE. Limited ("**Singapore Vessel Holdings**") to fund the acquisition and operation of dry bulk shipping vessels by subsidiaries of Singapore Vessel Holdings in furtherance of the Joint Venture. Francolin subsequently funded a series of advances to Slipway under the Slipway Credit Agreement.

Despite these restructuring efforts, for the fiscal year ending on June 30, 3015, the Debtors experienced a net loss of approximately $67,570,939. The dry bulk shipping market in which the Debtors operated was especially hard hit by the economic downturn. In June 2015, in an effort to increase revenue, the Debtors formed non-Debtor GMI Panamax Pool Limited ("**Poolco**"), a pooling entity into which the Joint Venture and other third-parties would contribute their vessels in a vessel pool structure. Despite the formation of Poolco, the Debtors' business continued to suffer losses.

9329706v.7

In light of the Debtors' failed restructuring efforts and substantial operating losses, among other things, Francolin declared numerous defaults and events of default under the Slipway Credit Agreement.  Following these declarations of numerous and continuing defaults and events of default, in August 2015 Francolin informed Slipway that Francolin would no longer advance funds to the Debtors under the Slipway Credit Agreement.  Following extensive discussions between the Debtors and Francolin, the parties agreed that the Debtors would file the Chapter 11 Cases and Francolin would provide post-petition financing under the terms of the DIP Credit Agreement to support an orderly wind-down of the Debtors.

By the Petition Date, the Debtors' fleet had dwindled to fifteen (15) operating vessels and thirteen (13) "new build" vessels – vessels that were either under construction or contracted to be built ("**New Build Vessels**"). The Debtors' obligations under its various charter agreements exceeded the value of the Debtors' interests in the chartered vessels.

### 2.3    *Debtors' Capital Structure and Prepetition Indebtedness*

(a)    Credit Facilities.

As of the Petition Date, the substantial majority of the Debtors' liabilities—in excess of $168 million in principal amount—consisted of funded debt (i.e., not trade debt or derivative liability) composed of the following: (a) the Tradeco Credit Facility (as defined below); (b) the Slipway Credit Facility (defined below); (c) the VIR Credit Facility (defined below); and (d) the ADM Credit Facility (defined below).  These liabilities are unsecured obligations.

(b)    The Tradeco Credit Facility.

On August 17, 2011, GMI Tradeco, as borrower, Francolin as lender, and Slipway, as guarantor, entered into that certain amended and restated credit agreement (as entered on June 28, 2013 and as further amended on November 1, 2014, the "**Tradeco Credit Agreement**"). The Tradeco Credit Agreement provided for a $90 million unsecured credit facility maturing on December 31, 2017 (the "**Initial Tradeco Credit Facility**").  The Initial Tradeco Credit Facility was divided into two tranches—a $60 million Credit Line Commitment (as defined in the Tradeco Credit Agreement) and a $30 million Additional Credit Line Commitment (as defined in the Tradeco Credit Agreement).  As of the beginning of 2015, the entire $90 million available under the Initial Tradeco Credit Facility (the entire amount of the Credit Line Commitment and the Additional Credit Line Commitment) had been fully advanced and remains outstanding.

In early 2015, Francolin agreed to increase the amount available to GMI Tradeco under the Tradeco Credit Agreement by a total of $10 million through two $5 million advances, the first on January 15, 2015 (the "**First Excess Funding Advance**") and the second on February 26, 2015 (the "**Second Excess Funding Advance**," and together with First Excess Funding Advance and the Initial Tradeco Credit Facility, the "**Increased Tradeco Credit Facility**"). These advances, which were documented by an "Acknowledgement" executed by GMI Tradeco, as borrower, and Slipway, as guarantor, were subject to individually specified interest rates and maturity dates but were otherwise subject to the terms and conditions set forth in the Tradeco

9329706v.7

Credit Agreement.  The First Excess Funding Advance matured on March 15, 2015, and the Second Excess Funding Advance matured on May 27, 2015.  Slipway has not made any payments in respect of the First Excess Funding Advance or the Second Excess Funding Advance.

On the Petition Date, the full $100 million advanced to Slipway pursuant to the Increased Tradeco Credit Facility was outstanding plus accrued and unpaid interest.  The rate of interest on the Credit Line Commitment was LIBOR plus 4% per annum on the first $50 million borrowed and LIBOR plus 5% per annum on the additional $10M borrowed.  The rate of interest on the Additional Credit Line Commitment was LIBOR plus 6% per annum on the first $10 million borrowed, LIBOR plus 7% per annum on the second $10 million borrowed, and LIBOR plus 8% per annum on the third $10 million borrowed.  The rate of interest on the First Excess Funding Advance and the Second Excess Funding Advance was LIBOR plus 8% per annum.

(c)      The Slipway Credit Facility.

On November 1, 2014, Slipway entered into the Slipway Credit Agreement, which provided for a discretionary $135.77 million unsecured credit facility maturing on November 1, 2024 (the "**Slipway Credit Facility**").  The Slipway Credit Facility was divided into two tranches— a $55.5 million Time-Charter Commitment (as defined in the Slipway Credit Agreement) and an approximately $80.27 million Vessel Holdings Commitment (as defined in the Slipway Credit Agreement).  Advances made under the Slipway Credit Facility accrued interest at a rate of either 12.5% or 15% per annum, depending on how the funds advanced were used by the Debtors.  In addition, certain undrawn amounts under the Time-Charter Commitment accrued interest at a rate of 1% per annum.

In August 2015, Francolin notified Slipway of its decision not to provide further funding to Slipway under the Slipway Credit Facility based on a number of factors, including the existence of events of default under the Slipway Credit Agreement.  As of the date hereof, $30,120,223 principal amount is outstanding under the Slipway Credit Facility plus accrued and unpaid interest.

(d)      The Variable Interest Rate Debt.

On June 28, 2013, Slipway, as borrower, and Activity SA, a limited company incorporated under the laws of Panama ("**Activity**"), and Francolin, as lenders, entered into that certain variable interest rate credit agreement (as amended on November 1, 2014, the "**VIR Credit Agreement**").  The VIR Credit Agreement provided for a $36.825 million unsecured credit facility maturing on December 31, 2022 (the "**VIR Credit Facility**").  On June 28, 2013, as evidenced by two promissory notes issued by Slipway, Francolin and Activity advanced to Slipway the entire amount available under the VIR Credit Facility, of which Francolin advanced $31,675,000 and Activity advanced $5,150,000.  As of the date hereof, $36,825,000 principal amount remains outstanding under the VIR Credit Agreement.

(e)      The ADM Credit Facility.

On April 16, 2013, GMI Tradeco, as borrower, and ADM Investor Services International

Page 6

9329706v.7

Limited ("**ADM**"), as lender, entered into that certain letter agreement ("**ADM Facility Agreement 1**"). ADM Facility Agreement 1 provides for a $3 million unsecured credit facility ("**ADM Credit Facility 1**"), which is payable on demand. In addition, on October 22, 2013, GMI Tradeco, as borrower, and ADM, as lender, entered into that certain letter agreement ("**ADM Facility Agreement 2**"). The ADM Facility Agreement 2 provides for a $6 million unsecured credit facility ("**ADM Credit Facility 2**," and together with ADM Credit Facility 1, the "**ADM Credit Facilities**"), which is payable on demand. Interest under the ADM Credit Facilities is charged on existing margin deficit at 2% above ADM's overnight cost of funds rate. The current balance of the ADM Credit Facilities is $1,890,347. The ADM Credit Facilities have been used to close out exposure on the FFA trading book.

(f)    Trade Debt.

In the ordinary course of business, the Debtors routinely transacted business with a variety of counterparties and vendors who extended trade credit to the Debtors on varying terms. The Debtors are not aware of any liens on the Debtors' property connected to trade debt as of the Petition Date.

(g)    Interests.

Slipway currently has 5,075,044 interests outstanding, split into three classes that rank *pari passu* in almost all respects. The members of Slipway consist of Francolin (approximately 48%), Activity (approximately 10%), and GMI Ventures LLP, a UK limited liability partnership (approximately 42%).

Slipway is a holding company that owns 100% of the outstanding shares or interests of each of (i) Debtor GMI USA Management, Inc. ("**GMI USA**"), (ii) Debtor GMI Tradeco, (ii) Debtor Singapore Vessel Holdings, and (iv) non-Debtor Poolco. GMI Tradeco owns 100% of the outstanding shares of Debtor Global Maritime Investments Resources (Singapore) Pte. Limited ("**Singapore Tradeco**") and non-Debtor GMI Cayman. An organizational chart showing Slipway and its subsidiaries is shown in the following chart:

9329706v.7

**CURRENT ORGANIZATION OF DEBTORS AND KEY NON-DEBTORS**



(h)    Assets.

The Debtors' significant assets as of the Petition Date—ownership interests in Poolco and numerous Executory Contracts, including those granting the Debtors interests or rights in the shipping vessels used to carry out the Debtors' business, have been sold, rejected, or otherwise disposed of during these Chapter 11 Cases.[3]  The remaining assets of the Debtors comprise cash in the Debtors' accounts, investments in subsidiaries, overdue or disputed accounts receivable, or

---

[3] GMI Tradeco currently retains equity ownership of non-Debtor GMI Cayman, but the Plan provides for GMI Cayman to be merged into GMI USA in connection with the substantive consolidation of the Debtors.  GMI Cayman has no known non-Debtor creditors.

Page 8

9329706v.7

litigation Claims or Causes of Action.

## ARTICLE III
## KEY EVENTS DURING THE CHAPTER 11 CASES

Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The following is a general summary of these Chapter 11 Cases.

### 3.1    First Day Pleadings

To facilitate the commencement of these Chapter 11 Cases and minimize disruption to the Debtors' operations, the Debtors filed certain motions and applications with the Bankruptcy Court on the Petition Date or shortly thereafter seeking certain relief summarized below. The relief sought in the "first day" pleadings facilitated the Debtors' transition into chapter 11 and aided in the preservation of the Debtors' value. The final orders entered by this Court on Debtors' first day pleadings include the following:

- *Order Directing Procedural Joint Administration of Affiliated Debtors Pursuant to Federal Rule of Bankruptcy Procedure 1015* [Dkt. No. 33];

- *Order Authorizing Debtors to (A) File Consolidated List of Creditors in Lieu of Matrix, (B) File Consolidated List of the Debtors' Largest Unsecured Creditors* [Dkt. No. 36];

- *Order Pursuant to Section 105 of the Bankruptcy Code, Enforcing and Restating Automatic Stay, Ipso Facto, and Anti-Discrimination Provisions of Section 362, 365, and 525 of the Bankruptcy Code* [Dkt. No. 41];

- *Order Denying Motion to Extend Time to File Schedules and Statements of Financial Affairs as Moot* [Dkt. No. 72]; and

- *Final Order Authorizing Debtors to Enter into Post-Petition Financing Agreement with Francolin* [Dkt. No. 100] (the "**Final DIP Financing Order**").

### 3.2    Post-Petition Financing

On September 21, 2015, the Court entered its *Interim Order Authorizing Debtors to Enter into Post-Petition Financing Agreement With Francolin* [Dkt. No. 37] and on October 27, 2015, the Court entered the Final DIP Financing Order. The Final DIP Financing Order authorizes the Debtors to borrow up to $2,000,000 from the DIP Lender and granted the DIP Lender superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, first liens on substantially all of the Debtors' unencumbered property, and junior liens on substantially all of the Debtors' encumbered property.

9329706v.7

On December 23, 2015, the Court entered an order [Dkt. No. 206] approving the Debtors' *Assented-To Motion to Approve Amendments to Post-Petition Financing Agreement and Amending Final DIP Financing Order* [Dkt. No. 152], seeking approval of an agreed amendment among the Debtors and DIP Lender, in connection with those parties discussions with the Committee, extending the Committee's investigation period for potential causes of action against the DIP Lender and other parties receiving releases under the Final DIP Financing Order.

### 3.3    Retention of Professionals

The Debtors also filed several applications and obtained authority to retain various professionals to assist the Debtors in carrying out their duties under the Bankruptcy Code as debtors-in-possession in these Chapter 11 Cases. The Bankruptcy Court approved the retention and employment of the following advisors:

- Halperin Battaglia Benzija, LLP ("**HBB**") as Conflicts and Efficiency Counsel, [Dkt. No. 146];

- Gardere Wynne Sewell, LLP ("**Gardere**") as Counsel to the Debtors [Dkt No. 147];

- AMA Capital Partners ("**AMA**"), as Financial Advisor to the Debtors [Docket No. 148]; and

- Justin Knowles ("**CRO**"), as Chief Restructuring Officer to the Debtors pursuant to Bankruptcy Code Section 363 [Docket No. 211].

On December 21, 2015, the Bankruptcy Court entered the Order Pursuant to 11 U.S.C. 105(a) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 202].

In the ordinary course of business, the Debtors also retained various attorneys and other ordinary course professionals who rendered a wide range of services to the Debtors in a variety of matters unrelated to these Chapter 11 Cases, including litigation, regulatory, labor and employment, intellectual property, general corporate, franchise, and other matters that have a direct impact on the Debtors' day-to-day operations. To prevent disruption to these services, on the December 8, 2015 the Debtors filed their *Motion for Authorization to Employ Professionals Used in the Ordinary Course of the Debtors' Business, Nunc Pro Tunc to September 15, 2015* [Docket No. 163]. On December 30, 2015, the Bankruptcy Court granted the relief requested [Docket No. 212].

### 3.4    Appointment of the Official Committee of Unsecured Creditors

On October 8, 2015, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Committee**"), which included representatives from Southport Agencies, Mardinik Shipping Co. Ltd., and ADM Investor Services International Limited. On December 7, 2015 the Court approved the Committee's retention of Faegre Baker

9329706v.7

Daniels as counsel [Dkt. No. 161], and on December 29, 2015, the Court approved the Committee's retention of CBIZ Accounting, Tax and Advisory of New York, LLC and CBIZ, Inc. [Dkt. No. 209] as financial advisor.

### 3.5   *Bankruptcy Schedules and Statements of Financial Affairs*

On October 13, 2015, the Debtors each timely filed their Schedules of Assets (A and B), Exempt Property (C), Creditors Holding Secured Claims (D), Creditors Holding Unsecured Priority Claims (E), Creditors Holding Unsecured Nonpriority Claims (F), Executory Contracts and Unexpired Leases (G), and Codebtors (H) [Lead Case Docket No. 70].[4]

### 3.6   *Contract Rejections*

Before and after the Petition Date and in connection with their restructuring efforts, the Debtors evaluated the necessity and cost-efficiency of their Executory Contracts, particularly the charter agreements comprising the core of the Debtors' business.

The Debtors determined, with respect to charter agreements for vessels in operation, that their ongoing obligations exceeded the value of the Debtors interests in such contracts and these Executory Contracts should all be rejected upon the completion of each vessel's then current voyage. Accordingly, the Debtors requested, and the Court entered, several orders authorizing rejection of charter agreements on operating vessels. *See* Exhibit B for the list of rejected charter agreements.

### 3.7   *Claims Bar Date*

On May 18, 2016 the Court entered its *Amended Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Dkt. No. 331] setting the deadline for filing proofs of claim, including the bar date for governmental units to file proofs of claim, as of June 24, 2016 (the "**Claims Bar Date**") in these Chapter 11 Cases, and establishing procedures for the filing of proofs of claim and the provision of appropriate notice of the Claims Bar Dates to potential claimants. The Claim Bar Date also applies to claims asserted under Bankruptcy Code § 503(b)(9).

### 3.8   *Asset Sales*

(a)   Marketing and Proposed Sale of "New Build Vessels"

On the Petition Date, Debtor GMI Tradeco was a party to thirteen New Build Contracts. Most of the New Build Contracts were long-term time charter agreements or bareboat charter agreements that functioned similar to secured financing. In connection with the Debtors' evaluation of their charter agreements, the Debtors initially determined that the New Build Contracts could yield value if sold or assigned. As a result, the Debtors established a data room,

---

[4]   Schedules A-H for the other Debtors can be found at Dkt. No. 15, respectively, in Case No. 15-12553 – Case No. 15-12556.

9329706v.7

began marketing the New Build Contracts, and filed the Debtors' *Motion for Orders (1) Approving Bidding Procedures in Advance of Auction, (2) Authorizing the Assumption, Assignment, and Sale of Certain Executory Contracts and Associated Property Rights Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, (3) Setting Related Deadlines and Hearings, and (4) Granting Related Relief* [Dkt. No. 73].

The Debtors received some expressions of interest from potential purchasers, but did not receive any economically feasible offers for any of the New Build Contracts. As a result, the Debtors terminated the marketing and sale process. As a result, the Debtors later requested, and the Court entered, orders authorizing rejection of the New Build Contracts. *See* Exhibit B for the list of contracts rejected related to the New Build Contracts.

(b)    <u>Sale of Equity in Poolco and Assignment of Management Contract</u>

On December 15, 2015, the Debtors filed their Motion for Order Authorizing (I) the Sale of Interests in Bulk Panamax Pool Limited Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; and (II) the Assumption and Assignment of Related Commercial Management Contract [Dkt. No. 181] (the "**Poolco Sale Motion**") seeking authority to sell GMI Tradeco's Interest in Poolco, and to assume and assign GMI Tradeco's commercial management contract with Poolco (collectively, the "**Poolco Assets**"), to M2M Shipping Co. Ltd. ("**M2M**"), subject to a higher and better offer.

On December 28, 2015, the Debtors filed a notice stating that the sale hearing for the Poolco Assets would be adjourned from December 30, 2015 to January 12, 2016. The purpose of this adjournment was to permit other potential purchasers additional time to perform due diligence. Notwithstanding the additional time, the Debtors did not receive any complying offers for the Poolco Assets, and on February 16, 2016, the Court entered an order approving the sale and assignment of the Poolco assets to M2M Shipping Co. Ltd. [Dkt. No. 275].

3.9    *Tri-Partite Settlement Among Debtors, Committee, and the DIP Lenders*

The Creditors' Committee, acting on behalf of the Debtors' estates, investigated the Debtors' Claims and Causes of Action against Francolin. On February 16, 2016, the Court entered its *Order Approving Settlement Agreement Among the Debtors, the Official Committee of Unsecured Creditors, and Francolin* [Docket No. 274], which order is a Final Order and no longer subject to appeal. The Settlement Agreement and the Settlement Releases were executed and effective as of March 2, 2016. The Settlement Agreement and the other Settlement Documents fully resolved the Claims and Causes of Action between Francolin, affiliates of Francolin, and the Debtors' Estates and are incorporated into and made a part of the Plan in their entirety.

Pursuant to the Settlement Agreement and the other Settlement Documents, (i) Francolin made a settlement payment of $730,000 to the Debtors, (ii) except for Francolin's obligations to fund the DIP Loan, the Debtors and their subsidiaries released all Claims and Causes of Action against Francolin and certain of its related entities and individuals, including, without limitation, any Chapter 5 Causes of Action against Francolin arising under the Debtors' prepetition credit

facilities; and (iii) Francolin is entitled to an allowed general unsecured non-priority claim in the amount of $105,383,865.34 (as defined in the Plan, the "Francolin Prepetition Claim").

In addition, the Settlement Agreement prescribes the treatment of the Francolin Prepetition Claim and other General Unsecured Claims in these Chapter 11 Cases. Pursuant to the Settlement Agreement, Francolin has agreed that (1) one-half of the distributions from the Liquidating Trust shall be distributed ratably on account of all Allowed General Unsecured Claims, excluding the Francolin Prepetition Claim, and (2) one-half of the distributions from the Liquidating Trust shall be distributed ratably on account of all Allowed General Unsecured Claims, including the Francolin Prepetition Claim.

### 3.10    Litigation

The Debtors engaged in litigation with both owners of vessels and subcharterers under various charter agreements. These disputes ranged from violations of the automatic stay, including third parties' improperly exercising control over property of the Estates to disputes over final charter hire statements. The Debtors settled several matters, but there are still pending disputes that will be transferred to the Liquidating Trust. In addition, there are pending arbitration claims or awards awaiting collection that till be transferred to the Liquidating Trust. *See* Exhibit C for the list of pending arbitrations.

### 3.11    Singapore Liquidations

Two Debtors, Singapore Tradeco and Singapore Vessel Holdings, and six non-Debtor subsidiaries (collectively, the "**Singapore Entities**") were all based in Singapore and incorporated under Singapore law. Aside from intercompany debts to other Debtors, all of the Singapore Entities' creditors were based on Singapore. Applicable Singapore law required the Singapore Entities to be wound up through local proceedings.

The Debtors retained RSM Corporate Advisory Pte Ltd under the Court's Order Authorizing the Retention of Professionals Used in the Ordinary Course of the Debtors' Business [Dkt. No. 212 & 309] to provide liquidation services for the Singapore Debtors and was separately retained by the six non-Debtors subsidiaries for the same services. In its role as liquidator, RSM initiated wind-down proceedings required under Singapore law for the Singapore Entities on May 30, 2016. In connection with these proceedings, RSM has taken legal control of the Singapore Entities and replaced the prior resident director for Singapore Vessel Holdings. All of the Singapore Entities assets were spent on the costs of the liquidation proceedings so no assets remain to be distributed under the Plan. The Singapore Entities were dissolved at the completion of the liquidation proceedings.

9329706v.7

**ARTICLE IV**
**SUMMARY OF THE PLAN**

*4.1    Introduction*

While chapter 11 is principally recognized as the "business reorganization" chapter of the Bankruptcy Code, it has long been recognized that a debtor may liquidate under chapter 11 as well. The purpose of the Plan is to provide for the orderly wind-down of the Debtors' operations, the remaining liquidation of the Debtors' assets, and the orderly distribution of the Debtors' remaining assets to creditors.

THE FOLLOWING SUMMARY IS INTENDED TO PROVIDE AN OVERVIEW OF THE DEBTORS' PLAN.  ANY PARTY IN INTEREST CONSIDERING WHETHER TO VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING SUCH DETERMINATION.  IF THERE IS ANY DISPUTE BETWEEN THIS SUMMARY AND THE PLAN, THE PLAN CONTROLS.

*4.2    Overview of the Plan*

(a)    Compromise of Controversies

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of any such compromise or settlement, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Liquidating Debtor and the Estates.

(b)    Substantive Consolidation; Merger

The Plan constitutes a request, pursuant to § 1123(a)(5)(C), for approval of the merger of GMI Cayman into GMI USA.  After the merger, GMI USA shall become the Liquidating Debtor at the Effective Date.  The Debtors also are requesting that the Court approve the substantive consolidation of the Debtors and their Estates.  If approved by the Court, under substantive consolidation, all assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of GMI USA.  All Intercompany Claims and Administrative Expenses by and between the Debtors shall not be entitled to any Distributions.  Also, any guarantee by any Debtor as well as any joint and several liability of any Debtor shall be treated as one obligation of the consolidated Debtors.

Even if the Bankruptcy Court does not approve the substantive consolidation of the Debtors, the Plan still provides that there will be no Distributions made on account of any Intercompany Claims and Administrative Expenses between and among any of the Debtors.  In addition, the Plan provides that no Distributions shall be made under the Plan on account of any

9329706v.7

Intercompany Claim of the Debtors and a non-Debtor affiliate regardless of whether the substantive consolidation and merger are approved.

For all purposes associated with Confirmation, including without limitation, for purposes of tallying acceptances and rejections of the Plan all guarantees or Claims for contribution or subrogation between the Debtors, individually or collectively, and their affiliates will be eliminated. Holders of Intercompany Claims also will not be entitled to vote to accept or reject the Plan. The Debtors also reserve the right to proceed with Confirmation, even if the Bankruptcy Court does not approve substantive consolidation for all Debtors or for some of the Debtors.

#### (c)    Creation of the Liquidating Trust

The Plan provides that a Liquidating Trust is to be created as of the Effective Date, or as soon as reasonably practical thereafter. All property of the Estates constituting the Liquidating Trust Assets are to be conveyed and transferred by the Debtors or Liquidating Debtor to the Liquidating Trust on the Effective Date, free and clear of all interests, Claims, Liens and encumbrances. The proceeds of the Liquidating Trust Assets will then be shared with holders of Allowed Claims as set forth in the Plan, the Liquidating Trust Agreement, and Settlement Agreement. *See* the Liquidating Trust Agreement attached hereto as Exhibit D.

#### (d)    Wind-Down and Dissolution of the Liquidating Debtor

On or soon after the Effective Date, the Liquidating Trustee shall be elected to act in the stead of the Board of Directors to ensure that the Liquidating Debtor winds-down its operations in the most effective and efficient manner and complies with its obligations and duties under the Plan. To the extent that GMI Tradeco or any other Debtor organized under a foreign jurisdiction requires a formal wind-down under the laws of Cyprus or such other foreign jurisdiction, the Liquidating Debtor will do so. Once the Liquidating Debtor has completed the wind-down of its business, the Liquidating Trustee will dissolve the Liquidating Debtor under applicable non-bankruptcy law.

#### (e)    Termination of the Creditors' Committee

Upon the Effective Date, the Creditors' Committee will dissolve, and its members will be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases. The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date. The Professionals of the Creditors' Committee, however, may be retained by the Liquidating Trust.

### 4.3    *Administrative Expenses, Professional Fees, and Priority Tax Claims*

#### (a)    Administrative Expenses.

Each holder of an Allowed Administrative Expense against a Debtor is to receive Cash equal to the unpaid portion of such Allowed Administrative Expense on or as soon as reasonably

9329706v.7

practicable after the later of: (i) the Effective Date; and (ii) the date on which such Administrative Expense becomes Allowed; *provided*, *however*, that, holders of Administrative Expenses pursuant to section 503(b)(9) of the Bankruptcy Code must have filed an application for such expenses by the Bar Date, as provided in the *Amended Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Dkt. No. 331]. All Allowed Administrative Expense may be paid on such other terms and conditions as are agreed to between the Liquidating Debtor or Liquidating Trust and the holder of such Allowed Administrative Expense. Except for Professional Fee Claims and Statutory Fees, requests for payment of Administrative Expenses must be Filed no later than sixty (60) days after the Effective Date (the "Administrative Expense Bar Date"). Holders of Administrative Expenses that do not File such requests by the Administrative Expense Bar Date shall be forever barred from asserting such Administrative Expenses against the Debtors, the Liquidating Debtor, and the Liquidating Trust.

        (b)       Professional Fee Claims.

Each Professional who holds or asserts an Administrative Expense that is a Professional Fee Claim shall be required to file with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Professional Fee Bar Date. The failure to timely file the Fee Application shall result in the Professional Fee Claim being forever barred and discharged. All Professional Fee Claims shall be paid solely from the Creditors' Committee Professional Fee Reserve or the Debtor Professional Fee Reserve, as applicable, and in accordance with the Plan.

        (c)       Statutory Fees.

All fees payable on or before the Effective Date (i) pursuant to 28 U.S.C. § 1930, and (ii) to the United States Trustee, shall be paid by the Debtors on or before the Effective Date. All such fees payable after the Effective Date shall be paid by the Liquidating Trust.

        (d)       Allowed Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim payment in full in Cash of such Allowed Priority Tax Claim on or as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (ii) such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtors, Liquidating Debtor, or Liquidating Trust, as applicable. To the extent interest is required to be paid on any Allowed Priority Tax Claim, the rate of such interest shall be the rate determined under applicable non-bankruptcy law.

     *4.4*    *Treatment of Allowed DIP Claims.*

The DIP Claims are Allowed in full; *provided, that*, pursuant to the Settlement Agreement, the DIP Lender has agreed to waive any claim under the DIP Credit Agreement for reimbursement of attorneys' fees, expenses or costs incurred through the date of the Settlement Agreement in connection with the negotiation, documentation, and administration of the DIP

9329706v.7

Credit Agreement.  The DIP Lender has further agreed that if, as of the Effective Date, no request has been made for the DIP Loan to be advanced and no claims have been made against the DIP Lender, the amount of the DIP Claims shall be zero.  On or about the Effective Date, unless otherwise agreed by the DIP Lender, the DIP Lender is to receive on account of such Allowed DIP Claims payment in full in Cash of its Allowed DIP Claims.

*4.5      Classification and Treatment of Claims and Interests*

(a)      <u>Summary of Classification of Claims and Interests</u>

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are: (i) Impaired and Unimpaired under the Plan; (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Plan.

| Class | Designation | Status | Voting |
|---|---|---|---|
| **1** | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| **2** | Miscellaneous Secured Claims | Impaired | Entitled to Vote |
| **3** | General Unsecured Claims | Impaired | Entitled to Vote |
| **4** | Interests | Impaired | Deemed to Reject |

(b)      <u>Treatment of Classes and Interests</u>

(i)      Class 1:  Allowed Priority Non-Tax Claims

<u>Treatment</u>:  Unless otherwise agreed by the holder of an Allowed Priority Non-Tax Claim and the Debtors or, following the Effective Date, the Liquidating Trust, each holder of an Allowed Priority Non-Tax Claim shall receive an amount in Cash equal to 100% of the Allowed amount of such Allowed Priority Non-Tax Claims on or as soon as practicable after the later of: (a) the Effective Date or (b) the date on which such Priority Non-Tax Claims becomes an Allowed Priority Non-Tax Claims.

<u>Voting</u>:  Class 1 is Unimpaired, and holders of Allowed Priority Non-Tax Claim shall be deemed to have accepted the Plan

(ii)      Class 2:  Allowed Miscellaneous Secured Claims

9329706v.7

Treatment:  On or as soon as practical after the later of (i) the Effective Date, or (ii) the date on which such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, each holder of an Allowed Miscellaneous Secured Claim shall receive on account of its Allowed Miscellaneous Secured Claim one of the following alternatives at the option of the Liquidating Trustee:

(1) payment in full in Cash of its Allowed Miscellaneous Secured Claim;

(2) the Distribution of the Collateral securing such Allowed Miscellaneous Secured Claim, in which event such holder shall be entitled within thirty (30) days of such election to File a proof of Claim for any deficiency entitled to treatment as a Deficiency Claim in Class 3 or be forever barred from thereafter asserting a Deficiency Claim; or

(3) such other treatment, including deferred Cash payments, as shall be consistent with § 1129(b).

Voting:   Class 2 is Impaired, and holders of Allowed Miscellaneous Secured Claims shall be entitled to vote to accept or reject the Plan.  Also, each Allowed Miscellaneous Secured Claim shall be deemed to be in a separate Class for classification, voting and Distribution purposes.

(iii)    Class 3:  Allowed General Unsecured Claims

Treatment:  On the Effective Date, unless otherwise agreed by a holder of an Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall become entitled to receive, on account of such Allowed General Unsecured Claim, its Ratable Proportion of distributions from the Liquidating Trust as provided by this Plan, the Liquidating Trust Agreement, and the Settlement Agreement.  Pursuant to the Settlement Agreement, Francolin has agreed that (1) one-half of the distributions from the Liquidating Trust shall be distributed ratably on account of all Allowed General Unsecured Claims, excluding the Francolin Prepetition Claim, and (2) one-half of the distributions from the Liquidating Trust shall be distributed ratably on account of all Allowed General Unsecured Claims, including the Francolin Prepetition Claim.

Voting:   Class 3 is Impaired under the Plan, and holders of Allowed General Unsecured Claims shall be entitled to vote to accept or reject the Plan.

(iv)    Class 4:  Allowed Interests.

Treatment:  Each holder of an Interest shall receive no Distributions of any kind under the Plan in respect of those Interests.  The Interests in each of

Page 18

the Debtors shall be deemed cancelled and extinguished on the Effective Date.

Voting:  Class 4 is Impaired under the Plan, and holders of Interests shall be deemed to have rejected the Plan.

### 4.6     *Means For Implementation Of The Plan*

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means for implementation of this Plan.

#### (a)     The Liquidating Debtor

Except as otherwise provide in the Plan, the Liquidating Debtor will exist after the Effective Date as a consolidated entity, with all of the powers of a corporation or other business form under applicable law in the jurisdiction in which the Liquidating Debtor is incorporated or otherwise formed and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect before the Effective Date.

#### (b)     Transfer of Liquidating Trust Assets

All property of the Estates constituting the Liquidating Trust Assets shall be conveyed and transferred by the Debtors or Liquidating Debtor to the Liquidating Trust on the Effective Date, free and clear of all interests, Claims, Liens and encumbrances.

#### (c)     Professional Fee Reserve

The Professional Fee Reserve will be in an amount not to exceed $960,000, of which $680,000 shall be allocated to the Debtor Professional Fee Reserve and $280,000 shall be allocated to the Creditors' Committee Professional Fee Reserve, as applicable; provided, however, that the foregoing amounts funded in the Professional Fee Reserve shall each be reduced by any amounts paid to such professionals during the pendency of the Chapter 11 Cases under any interim compensation orders of the Court or otherwise, and in addition to amounts funded by the Debtors held in retainer by such professionals.

#### (d)     Liquidating Trust Administrative Expenses Reserve

The Liquidating Trustee shall establish the Liquidating Trust Administrative Expenses Reserve in an amount, with adjustment from time to time, in the Liquidating Trustee's discretion, with the consent of the Liquidating Trust Advisory Committee.  If not all of the Creditors' Committee Professional Fee Reserve or Debtor Professional Fee Reserve is utilized, any unused portions of the Creditors' Committee Professional Fee Reserve or Debtor Professional Fee Reserve shall be transferred to the Liquidating Trust Administrative Expenses Reserve; provided, further, that if not all of the Liquidating Trust Administrative Expenses Reserve is utilized, any unused portions of the Liquidating Trust Administrative Expenses Reserve shall be distributed to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan, the Liquidating Trust Agreement, and the Settlement Agreement.

9329706v.7

4.7     *Treatment of Rejected Contracts.*

(a)     Rejection of All Executory Contracts

All Executory Contracts (other than those previously rejected pursuant to an order of the Bankruptcy Court) shall be deemed rejected on the Effective Date. Rejected Contract counterparties who do not oppose this proposed treatment by opposing confirmation of the Debtors' Plan by filing and serving a written objection with the Bankruptcy Court in accordance with the Bankruptcy Code, Bankruptcy Rules and local rules and/or orders of the Bankruptcy Court shall be deemed to have consented to rejection of such Executory Contract.

(b)     Bar Date for Rejection Damages

If the rejection of a Rejected Contract gives rise to a Claim by the counterparty to such contract or lease, such Claim shall be classified as a Class 3 Claim; provided, however, that any Claim arising from the rejection of a Rejected Contract shall be forever barred and shall not be enforceable against the Debtors, the Liquidating Debtor, and the Liquidating Trust unless a proof of Claim is Filed by the Rejection Claims Bar Date in accordance with the Plan.

4.8     *Release of Liens and Perfection of Liens.*

Except as otherwise provided in the Plan, any Plan Document or the Confirmation Order, each holder of a DIP Claim Lien, a Miscellaneous Secured Claim Lien or any other Secured Claim Lien or judgment Lien shall be deemed to release such Liens and shall execute such documents and instruments as the Liquidating Debtor or Liquidating Trustee reasonably requests to evidence such Claim holder's release of such property or Lien; provided, that the Liquidating Debtor or the Liquidating Trust shall bear all out-of-pocket fees, costs, and expenses, including all filing and recording fees and fees of local counsel, related to the release of such property or Lien.

4.9     *Claim Objections.*

Objections, if any, to the allowance of Claims (excluding objections to the allowance of Administrative Expenses), other than Claims that have been previously Allowed or are Allowed pursuant to this Plan may be Filed by the Liquidating Debtor or the Liquidating Trust, at any time on or before the Claim Objection Deadline. The "**Claim Objection Deadline**" shall be the later of (a) the 120th day following the Effective Date, unless such period is extended by order of the Bankruptcy Court, (b) thirty (30) days after the Filing of the proof of such Claim to which the objection is directed or (c) such other date set by order of the Bankruptcy Court (the application for which may be made on an ex parte basis). Any such objection shall be filed and served in accordance with the Bankruptcy Code, the Bankruptcy Rules and the local rules of the Bankruptcy Court.

4.10    *Set-offs.*

Except as otherwise provided in the Plan, agreements entered into in connection with the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the

Bankruptcy Court, the Debtors, the Liquidating Debtor, or Liquidating Trust may, but will not be required to, offset against any Claim and the Distributions made with respect to the Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights and Causes of Action of any nature that the Debtors or the Liquidating Debtor may hold against the holder of such Claim; *provided*, *however*, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtors, Liquidating Debtor, or Liquidating Trust, nor shall any provision of the Plan, constitute a waiver or release by the Debtors, Liquidating Debtor, or Liquidating Trust of any such claims, rights and Causes of Action that the Debtors, Liquidating Debtor, or Liquidating Trust may possess against such holder.

### 4.11    *Retention of Rights to Pursue Causes of Action.*

The Plan preserves all Causes of Action, except for the Causes of Action released in the Settlement Documents, the Confirmation Order, or the Plan or otherwise expressly released or assigned by an order of this Court, and provides for them to be transferred to the Liquidating Trust on the Effective Date of the Plan.

Pursuant to § 1123(b)(3), except as otherwise provided in the Settlement Documents, the Plan, or the Confirmation Order, the Liquidating Trust (as successor to the Debtors' and Liquidating Debtor's Estates) shall retain and have the exclusive right to enforce against any Entity any and all Causes of Action of the Debtors or their Estates (**including, without limitation, all Chapter 5 Causes of Action under the Bankruptcy Code, all avoidance actions under applicable non-Bankruptcy law and all Causes of Action under foreign law (i.e., non-United States)) that arose before the Effective Date.  The Causes of Action retained by the Liquidating Debtor include, without limitation, all Causes of Action listed on Exhibit C to this Disclosure Statement.**

**PLEASE TAKE NOTICE THAT, WITH THE EXCEPTION OF THOSE CAUSES OF ACTION THAT ARE RELEASED OR WAIVED UNDER THE TERMS OF THE PLAN, THE SETTLEMENT DOCUMENTS, OR OTHER ORDER OF THE BANKRUPTCY COURT, ALL CAUSES OF ACTION OF THE DEBTORS AND THEIR ESTATES, WHETHER OR NOT SPECIFIED HEREIN, WILL BE PRESERVED AND TRANSFERRED TO THE LIQUIDATING TRUST PURSUANT TO THE PLAN.**

**THE LACK OF DISCLOSURE OF ANY PARTICULAR CAUSE OF ACTION SHALL NOT CONSTITUTE, NOR BE DEEMED TO CONSTITUTE, A RELEASE OR WAIVER OF SUCH CAUSE OF ACTION, AS THE DEBTORS INTEND FOR THE PLAN TO PRESERVE AND TRANSFER TO THE LIQUIDATING TRUST ANY AND ALL CAUSES OF ACTION HELD BY THE DEBTORS AND THEIR ESTATES AS OF THE EFFECTIVE DATE OF THE PLAN.**

### 4.12    ***Releases, Indemnification, Injunction, and Exclupation***

(a)    **Releases**.

9329706v.7

*The Plan provides for certain releases of the Debtors and their respective officers, directors, employees, consultants, financial advisors, crisis and turnaround managers, attorneys, accountants and other representatives; the Committee and its consultants, attorneys, accountants or other representatives or members; and the DIP Lender and Escrow Agent and their respective current and former officers, directors, trustees, partners, employees, members, agents, advisors, managers, affiliates, attorneys, shareholders, controlling persons, underwriters or investment bankers, accountants, consultants, or other professional persons or representatives;* **provided, however, that that this release provision shall have no effect if the acts or omissions of such Released Party are due to criminal misconduct or intentional fraud as determined by Final Order of a court of competent jurisdiction.**

The release provisions are an integral part of this Plan and are essential to the Plan's implementation.  If and to the extent that the Bankruptcy Court concludes that the Plan cannot be confirmed with any portion of the foregoing releases, the Debtors, with the consent of the Creditors' Committee and Francolin, reserve the right to amend the Plan so as to give effect as much as possible to the releases, or to delete them.

(b)   **Indemnification.**

*The Plan provides that the Debtors and their Estates shall indemnify the Debtors' managers, officers, agents, representatives, attorneys, crisis and turnaround managers, professionals, and employees regarding the implementation of the Plan;* **provided, however, that that this provision shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.**

(c)   **Injunction**.

*Except as provided in the Plan, the Confirmation Order shall enjoin Entities (i) that hold Claims against or Interests in the Debtors from taking any actions with respect to such Claims or Interests against Debtors, the Liquidating Debtor, the Liquidating Trust, the Creditors' Committee, any member of the Creditors' Committee, the DIP Lender, the Escrow Agent, and any of their respective professionals or (ii) that hold claims released pursuant to the Plan and Settlement Documents from taking any actions with respect to such claims.* **If an Entity takes any action that has been enjoined, the Bankruptcy Court shall retain jurisdiction to enforce this injunction.**

(d)   **Exculpation**.

*The Plan provides that Debtors, the Creditors' Committee, Francolin, the Escrow Agent, nor any of their respective current and former officers, directors, trustees, partners, employees, members, agents, advisors, managers, affiliates, attorneys, shareholders, controlling persons, underwriters or investment bankers, accountants, consultants, nor any other professional persons or representatives employed by any of them shall have or incur any liability to any Entity for any act taken or omission made*

Page 22

9329706v.7

*in connection with or related to the Chapter 11 Cases, the Plan, the Disclosure Statement, the Confirmation Order, any Plan Document, the DIP Loan Documents, the Settlement Documents, or the Escrow Agreement;* <u>*provided*, *however*, **that that this provision shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct**</u>.

4.13    *Modification of the Plan; Revocation.*

(a)    <u>Modification</u>

The Debtors reserve the right to alter, amend or modify the Plan with the consent of the Creditors' Committee and Francolin prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, with the consent of the Creditors' Committee and Francolin, the Debtors may, upon order of the Bankruptcy Court, alter, amend or modify the Plan in accordance with § 1127(b), or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

(b)    <u>Revocation</u>

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan is revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no force or effect.

4.14    *Conditions Precedent to Occurrence of the Effective Date; Waiver.*

The Plan also lists certain conditions precedent for the occurrence of the Effective Date. The Debtors or the Liquidating Debtor may waive one or more of the conditions to the occurrence of the Effective Date with the consent of the Creditors' Committee and Francolin.

4.15    *Effects of Plan Confirmation*

Upon Confirmation and pursuant to § 1141(a), the provisions of the Plan shall bind the Debtors, Liquidating Debtor, the Creditors' Committee, Francolin, and all Creditors and Interest holders, including their successors and assigns, whether or not they vote to accept the Plan.  The Claims and Distributions under the Plan are in full and complete settlement of all Claims and Interests.

**ARTICLE V**
**CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND SECURITIES LAW CONSIDERATIONS**

5.1    *Generally*

**The following discussion summarizes certain U.S. federal income tax consequences to the Debtors and certain holders of Claims of the implementation of the Plan and the formation**

9329706v.7

**of and conveyances to the Liquidating Trust. This summary is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to any particular Debtor or holder of a Claim. This discussion does not purport to be a complete analysis or listing of all potential tax considerations.**

The discussion is based upon the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service ("**IRS**"), all as in effect on the date hereof. Legislative, judicial or administrative changes or new interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the U.S. federal income tax consequences of the Plan. Any such changes or new interpretations may have retroactive effect and could significantly affect the U.S. federal income tax consequences of the Plan described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtors have not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan or the formation of and conveyances to the Liquidating Trust. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this discussion does not address any U.S. federal estate or gift tax considerations, the Medicare tax on net investment income, or any foreign, state or local tax consequences of the Plan or the formation of and conveyances to the Liquidating Trust, nor does it purport to address the U.S. federal income tax consequences of the Plan or the formation of and conveyances to the Liquidating Trust to: (i) special classes of taxpayers (such as Persons who are related to the Debtors within the meaning of the Tax Code, non-U.S. persons, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, and investors in pass-through entities and holders of Claims or Interests who are themselves in bankruptcy); or (b) holders not entitled to vote on the Plan, including holders whose Claims or Interests are to be extinguished without any Distribution. To the extent that the following discussion relates to the U.S. federal income tax consequences to holders of Claims or Interests, it is limited to holders that are "United States" persons."

For purposes of the following discussion, you are a "United States person" if, for U.S. federal income tax purposes, you are:

- an individual who is a U.S. citizen or U.S. resident alien;

- a corporation that was created or organized in or under the laws of the United States, any state thereof or the District of Columbia;

- an estate whose income is subject to U.S. federal income taxation regardless of its source; or

- a trust (1) if a court within the United States is able to exercise primary supervision over

9329706v.7

the administration of the trust and one or more United States persons have the authority to control all substantial decisions of the trust, or (2) that has a valid election in effect under applicable U.S. Treasury Regulations to be treated as a United States person.

This discussion assumes that holders of Claims or Interests hold only Claims or Interests in a single Class. Holders of multiple Classes of Claims or Interests should consult their own tax advisors as to the effect such ownership may have on the U.S. federal income tax consequences described below. This discussion further assumes that the various debt and other arrangements to which the Debtors are a party will be respected for U.S. federal income tax purposes in accordance with their form.

### 5.2     Certain U.S. Federal Income Tax Consequences to the Debtors

The Debtors will generally realize gain or loss on the sale, or transfer to the Liquidating Trust, of substantially all of their assets equal to the difference between (i) the amount realized on the sale and the fair market value of the assets sold or transferred to the Liquidating Trust, and (ii) their adjusted tax basis in the assets sold or transferred. The character of any gain or loss as capital or ordinary, and in the case of capital gain or loss, as short term or long term, will depend upon the nature of assets sold or transferred and the Debtors' holding period for the assets.

The discharge of a recourse debt obligation by a debtor for an amount of Cash and/or fair market value of property that is less than the adjusted issue price of the debt obligation (as determined for U.S. federal income tax purposes) gives rise to cancellation of indebtedness ("**COD**") income, which must be included in the debtor's income, subject to certain statutory or judicial exceptions that can apply to limit the amount of COD income (such as where the payment of the canceled debt would have given rise to a tax deduction). A specific statutory exception applies to certain debtors if the discharge of indebtedness is granted in a case under Title 11 of the United States Code (relating to bankruptcy) and pursuant to a plan approved by a bankruptcy court in such case. A separate exception applies to taxpayers if the discharge occurs when the taxpayer is insolvent. To the extent that the consideration issued to holders of Claims pursuant to the Plan is attributable to accrued but unpaid interest, the Debtors should be entitled to interest deductions in the amount of such accrued interest, but only to the extent the Debtors have not already deducted such amount. The Debtors should not have COD income from the discharge of any accrued but unpaid interest pursuant to the Plan to the extent that the payment of such interest would have given rise to a deduction pursuant to Section 108(e)(2) of the Tax Code.

For the foregoing reasons, the precise amount of taxable gain or loss, COD income, or both, which the Debtors will realize as a result of effectuation of the Plan cannot be determined until the date of the transfer to the Liquidating Trust.

### 5.3     Tax Consequences to Creditors

The tax consequences of the implementation of the Plan and formation of the Liquidating Trust to a creditor of the Debtors (a "**Creditor**") will depend on a number of factors, including the type of consideration received by the Creditor in exchange for its Claim, whether the Creditor reports income on the accrual or cash basis, whether the Creditor receives consideration in more than

9329706v.7

one tax year of the Creditor, whether the Creditor is a resident of the United States and whether all consideration received by the Creditor is deemed to be received by that Creditor in an integrated transaction. The tax consequences of the receipt of Cash or property that is allocable to accrued interest are discussed below in the section entitled "Receipt of Interest."

(a)      Receipt of Cash and Other Property

A Creditor who receives Cash and/or other property (including Liquidating Trust Assets deemed received as discussed below) in satisfaction of its Claim generally will recognize gain (or loss) on the exchange equal to the difference between the amount of any Cash and the fair market value of any property received (not allocable to interest) and the Creditor's tax basis in its Claim. The character of any gain or loss as capital or ordinary income or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including (i) the nature and origin of the Claim (e.g., Claims arising in the ordinary course of a trade or business or made for investment purposes); (ii) the tax status of the holder of the Claim; (iii) whether the Claim is a capital asset in the hands of the holder; (iv) whether the Claim has been held by the holder for more than one year; (v) the extent to which the holder previously claimed a loss or a bad debt deduction with respect to the Claim; and (vi) the extent to which the holder acquired the Claim at a market discount. Creditors should consult their own tax advisors regarding the amount and character of gain or loss, if any, to be recognized by them under the Plan.

(b)      Receipt of Interest

Consideration received by a Creditor that is attributable to accrued interest not previously included in taxable income should be treated as ordinary income, regardless of whether the Creditor's existing Claims are capital. Conversely, a holder of a Claim may be able to recognize a deductible loss (or possibly a write-off against a reserve for worthless debts) to the extent that any accrued interest on the Claim was previously included in the holder's gross income but was not paid in full by the Debtors. The extent to which the consideration received by a holder of a Claim will be attributable to accrued interest is unclear.

(c)      Market Discount

The Tax Code generally requires holders of debt instruments with "market discount" to treat as ordinary income any gain realized on the disposition of such debt instruments to the extent of the market discount accrued during the holder's period of ownership. "Market discount" generally means the amount by which the "adjusted issue price" of a debt instrument (i.e., the sum of its issue price plus any accrued original issue discount) exceeds the holder's adjusted tax basis in such debt instrument. Holders should consult their own tax advisors as to the potential application of the market discount rules to them in light of their individual circumstances.

(d)      Backup Withholding

Page 26

9329706v.7

Under the Tax Code, interest, dividends and other "reportable payments" may, under certain circumstances, be subject to "backup withholding," currently at a 28% rate. Backup withholding may apply to payments made pursuant to the Plan, unless you provide to the applicable withholding agent your taxpayer identification number, certified under penalties of perjury, as well as certain other information, or otherwise establish an exemption from backup withholding. Backup withholding is not an additional tax. Any amount withheld under the backup withholding rules is allowable as a credit against your U.S. federal income tax liability, if any, and a refund may be obtained from the IRS if the amounts withheld exceed your actual U.S. federal income tax liability and you timely provide the required information or appropriate claim form to the IRS.

### 5.4    Tax Consequences of the Liquidating Trust

(a)    Purpose and Intent of Liquidating Trust.

The primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets in an expeditious and prudent manner, and all activities of the Liquidating Trustee will be limited to those activities reasonably necessary to, and consistent with, the accomplishment of that purpose.

(b)    Tax Characterization.

The Liquidating Trustee shall take or cause to be taken all reasonable and necessary actions, including without limitation, timely preparation and filing of required tax returns, to carry into effect the intent that the Liquidating Trust created by the Plan qualifies as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations and to treat the Liquidating Trust Beneficiaries of the Liquidating Trust as the grantor-owners of the Liquidating Trust within the meaning of sections 671 through 678 of the Internal Revenue Code. In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the Liquidating Trustee shall take such action as deemed appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Internal Revenue Code Section 7704), including, if necessary, creating or converting it into a [Delaware] limited liability partnership or limited liability company. All of the Liquidating Trust's income is intended to be subject to taxation on a current basis.

For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (a) a deemed transfer by each Debtor of the Liquidating Trust Assets directly to the Liquidating Trust Beneficiaries in full satisfaction of the Liquidating Trust Beneficiaries' Claims against and Interests in the Debtors and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Disputed Claim Reserve, followed by (b) the deemed transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed Claim Reserve) in exchange for interests in the Liquidating Trust. Accordingly, the Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as

the grantors and owners of their respective share of the Liquidating Trust Assets (other than Liquidating Trust Assets allocable to the Disputed Claim Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes.

   (c)  <u>Tax Reporting</u>.

   The Liquidating Trustee shall prepare and provide to, or file with, the appropriate taxing authorities and other parties such notices, tax returns and other filings, including all federal, state and local tax returns for the Liquidating Trust, as may be required under the Internal Revenue Code, the Plan or as may be required by applicable law of other jurisdictions including, if required under applicable law, notices required to report interest or dividend income (the **"Tax Reports"**).  The Liquidating Trustee shall treat the Liquidating Trust as a grantor trust for U.S. federal income tax purposes pursuant to Treasury Regulation section 1.671-4(a) and in accordance with the Plan.  The Liquidating Trustee also will annually send to each Liquidating Trust Beneficiary a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for all U.S. federal income tax purposes and will instruct all such Liquidating Trust Beneficiaries to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such Liquidating Trust Beneficiary's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.  If additional tax information is provided at the specific request of a Liquidating Trust Beneficiary (and not as required by applicable law), then such Liquidating Trust Beneficiary shall pay a reasonable fee to the Liquidating Trustee, in an amount to be then determined by the Liquidating Trustee, together with all costs and expenses incurred by the Liquidating Trustee in providing such tax information to such Liquidating Trust Beneficiary. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental units in the U.S. and elsewhere.

   The Liquidating Trustee may require any Liquidating Trust Beneficiary to furnish to the Liquidating Trustee its employer or taxpayer identification number as assigned by the Internal Revenue Service, together with such other information, returns or forms as the Liquidating Trustee may determine are required, and the Liquidating Trustee may condition any Distribution of Liquidating Trust Assets to any Liquidating Trust Beneficiary upon such receipt of such identification number, any other information and returns and forms as are required for the Liquidating Trustee to comply with Internal Revenue Service requirements.

   The Liquidating Trustee will in good faith value all Liquidating Trust Assets, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) for all U.S. federal income tax purposes.

   Allocations of Liquidating Trust taxable income among the Liquidating Trust Beneficiaries (other than taxable income allocable to the Disputed Claim Reserve) shall be determined by reference to the manner in which an amount of cash representing such taxable

Page 28

9329706v.7

income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of the Liquidating Trust Assets (valued at their tax book value, and other than assets allocable to the Disputed Claim Reserve) to the holders of the interests in the Liquidating Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (a) timely elect to treat any Disputed Claim Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the Liquidating Trustee, the Debtors and the Liquidating Trust Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any U.S., local or foreign taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Disputed Claim Reserve.  In the event, and to the extent, any cash retained on account of Disputed Claims in the Disputed Claim Reserve is insufficient to pay the portion of any such U.S., local or foreign taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such U.S., local or foreign taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Disputed Claim Reserve, or the Debtors under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Liquidating Trust or the Debtors for all taxable periods through the dissolution of the Liquidating Trust.

(e) <u>Compliance with Tax Withholding Requirements</u>.

In connection with making distributions under the Plan, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Any property so withheld will then be paid by the Liquidating Trust to the appropriate authority. The Liquidating Trustee shall withhold the entire distribution due any

9329706v.7

Liquidating Trust Beneficiary until such time as such Liquidating Trust Beneficiary provides the necessary information to comply with any withholding requirements of any governmental unit, including an IRS Form W-9 containing its, his or her employer or taxpayer identification number as assigned by the Internal Revenue Service, or (ii) in the case of Liquidating Trust Beneficiaries that are not U.S. persons for federal income tax purposes, certification of foreign status on IRS Form W-8BEN, W-81MY or W-8ECI. If the Liquidating Trustee does not receive notice of a Liquidating Trust Beneficiary's necessary tax information within six (6) months after the date of the initial request, then all distributions to such Liquidating Beneficiary may be treated as an unclaimed distribution.

### 5.5    *Securities Laws Considerations*

The Liquidating Trust Interests may not be transferred, sold, pledged or otherwise disposed of, or offered for sale, except for transfers by operation of law. The offer and issuance of the Liquidating Trust Interests will be made without registration under the 1933 Act, or under any state securities laws. To the extent the Liquidating Trust Interests constitute securities, the offer and issuance of the Liquidating Trust Interests will be made in reliance upon the exemption from registration afforded by sections 1125 and 1145 of the Bankruptcy Code. The Confirmation Order will include provisions to the effect that such exemptions are applicable to the offer and issuance of the Liquidating Trust Interests and that the Liquidating Trust is a "successor" to Debtors within the meaning of section 1145 of the Bankruptcy Code. No indenture will be qualified under the Trust Indenture Act of 1939, as amended (the "1939 Act"), with respect to the Liquidating Trust in reliance on the exemption provided by section 304(a)(1) of the 1939 Act.

Section 1145(a)(1) of the Bankruptcy Code exempts the offer or sale of securities pursuant to a plan of reorganization or liquidation from the registration requirements of the 1933 Act and from registration under state securities laws if the following conditions are satisfied: (i) the securities are offered and sold by a debtor or a successor of the debtor under a plan of reorganization or liquidation; (ii) the recipients of the securities hold a claim against, an interest in, or a claim for an administrative expense against, the debtor; and (iii) the securities are issued in exchange for the recipients' claims against or interests in the debtor, or principally in such exchange and partly for cash or property. In general, offers and sales of securities made in reliance on the exemption afforded under section 1145(a) of the Bankruptcy Code are deemed to be made in a public offering, so that the recipients thereof, other than underwriters (as defined in section 1145(b) of the Bankruptcy Code), are free to resell such securities without registration under the 1933 Act. In addition, such securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states. However, as noted above, the Liquidating Trust Interests may not be transferred, sold, pledged or otherwise disposed of, or offered for sale, except for transfers upon death or by operation of law.

**THIS SUMMARY DISCUSSION IS GENERAL IN NATURE AND HAS BEEN INCLUDED IN THIS DISCLOSURE STATEMENT SOLELY FOR INFORMATIONAL PURPOSES PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE. THE**

**DEBTORS MAKE NO REPRESENTATIONS CONCERNING, AND DO NOT HEREBY PROVIDE, ANY OPINIONS OR ADVICE WITH RESPECT TO THE SECURITIES AND BANKRUPTCY MATTERS DESCRIBED HEREIN.**

**IN LIGHT OF THE UNCERTAINTY CONCERNING THE AVAILABILITY OF EXEMPTIONS FROM THE RELEVANT PROVISIONS OF FEDERAL AND STATE SECURITIES LAWS, THE DEBTORS ENCOURAGE EACH CREDITOR, INTEREST HOLDER, LIQUIDATING TRUST INTEREST HOLDER, AND PARTY IN INTEREST TO CONSIDER CAREFULLY AND CONSULT WITH ITS OWN LEGAL AND TAX ADVISORS WITH RESPECT TO ALL SUCH MATTERS.**

**FOREIGN (*i.e.*, NON-UNITED STATES) CREDITORS ALSO ARE STRONGLY URGED TO CHECK WITH THEIR OWN LEGAL AND TAX ADVISORS**

## ARTICLE VI
## VOTING; CONFIRMATION; ALTERNATIVE TO PLAN

### 6.1    *Confirmation Standards*

(a)    <u>Best Interests Test</u>

The Bankruptcy Code requires that the Bankruptcy Court find that the Plan is in the best interest of all holders of Claims and Interests that are Impaired by the Plan and that have not accepted the Plan as a requirement to confirm the Plan. The "best interests" test, as set forth in section 1129(a)(11) of the Bankruptcy Code, requires the Bankruptcy Court to find either that all members of an Impaired Class of Claims or Interests have accepted the Plan or that the Plan will provide a member who has not accepted the Plan with a recovery of property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

In chapter 7 liquidation, no junior class of Claims or Interests may be paid unless all classes of Claims or Interests senior to such junior class are paid in full. Section 510(a) of the Bankruptcy Code provides that subordination agreements are enforceable in a bankruptcy case to the same extent that such subordination is enforceable under applicable nonbankruptcy law. Therefore, no class of Claims or Interests that is contractually subordinated to another class would receive any payment on account of its Claims or Interests, unless and until such senior classes were paid in full. Once the Bankruptcy Court ascertains the recoveries in liquidation of the Debtors' secured and priority creditors, it would then determine the probable distribution to unsecured creditors from the remaining available proceeds of the liquidation. If this probable distribution has a value greater than the value of distributions to be received by the unsecured creditors under the Plan, then the Plan is not in the best interests of creditors and cannot be confirmed by the Bankruptcy Court.

The Debtors believe that the Plan affords holders of Claims the potential for the greatest realization on the Debtors' assets and, therefore, is in the best interests of such holders.

9329706v.7

(b)    Feasibility

The Bankruptcy Code requires as a condition to Confirmation that the Confirmation is not likely to be followed by liquidation or the need for further financial reorganization, unless such liquidation or reorganization is proposed in the Plan.  Since the Plan contemplates liquidation under chapter 11, the Plan meets the feasibility requirement under the Bankruptcy Code.

(c)    Cram Down.

If all of the applicable requirements for Confirmation of the Plan are met as set forth in § 1129(a) except for subsection (8) thereof, the Debtors may request the Bankruptcy Court to confirm the Plan pursuant to § 1129(b), notwithstanding the requirements of § 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any Impaired Class that does not vote to accept this Plan as described in the Disclosure Statement.

*6.2    Vote Required for Acceptance by a Class*

The Bankruptcy Code defines acceptance of a plan by a class of Claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed Claims of that class held by creditors, other than any entity designated under Bankruptcy Code § 1129(e), who cast ballots for acceptance or rejection of the Plan.

(a)    Acceptance by Impaired Classes. Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

(b)    Voting Presumptions. Claims in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. Claims and Interests in Classes that do not entitle the holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

(c)    Tabulation of Votes.

(i)    If Substantively Consolidated.  If the Debtors are substantively consolidated, the Debtors will tabulate votes on the Plan on a consolidated basis by Class for the purpose of determining whether the Plan satisfies §§ 1129(a)(8) or (10), as applicable, for the consolidated Debtor.  In that event, the Claims against the Debtors shall be voted in single consolidated Class (*e.g.*, holders of Class 3 Claims) against any consolidated Debtor and shall be

Page 32

deemed to have voted in a single, consolidated class for purposes of determining whether the Plan satisfies §§ 1129(a)(8) or (10), as applicable, with respect to each consolidated Debtor.

(ii)     <u>If Not Substantively Consolidated</u>.  If the Debtors are not substantively consolidated, the Debtors will tabulate all votes on the Plan on a non-consolidated basis by Class for the purpose of determining whether the Plan satisfies §§ 1129(a)(8) or (10), as applicable, with respect to each Debtor.  For each Debtor that satisfies §§ 1129(a)(8) or (10), as applicable, and provided that all other requirements to Confirmation of the Plan are met, the Confirmation of this Plan as to such Debtor shall be deemed to occur by operation of the Plan.

(d)     Reservation of Rights.

In the event that the Bankruptcy Court does not order substantive consolidation of the Debtors, then except as specifically set forth in the Plan: (a) nothing in the Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that one of the Debtors is subject to or liable for any Claim against any other Debtor; (b) Claims against multiple Debtors shall be treated as separate Claims with respect to each Debtor's Estate for all purposes (including, without limitation, Distributions and voting), and such Claims shall be administered as provided in the Plan; and (c) the Debtors shall not, nor shall they be required to, resolicit votes with respect to the Plan, nor will the failure of the Bankruptcy Court to approve substantive consolidation of the Debtors alter the Distributions set forth in the Plan.  In the event that the Bankruptcy Court does not order substantive consolidation, the Plan comprises a separate plan for each Debtor and the Confirmation requirements of § 1129 must be satisfied separately for each Debtor under the Plan.

### 6.3     *Alternatives to Confirmation Is Chapter 7 Liquidation*

If the Debtors fail to obtain enough acceptances from either Class 2 or Class 3 to confirm the Plan, or the Plan is not subsequently confirmed and consummated, the alternative is liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

Proceeding under chapter 7 would impose significant additional monetary and time costs on the Debtors' Estates. Under chapter 7, one or more trustees would be elected or appointed to administer the Estates, to resolve pending controversies, including Disputed Claims against the Debtors and Claims of the various estates against other parties, and to make distributions to holders of Claims. A chapter 7 trustee would be entitled to compensation in accordance with the scale set forth in section 326 of the Bankruptcy Code, and the trustee would also incur significant administrative expenses.  The chapter 7 administrative expenses also take priority over any chapter 11 administrative expenses.

There is a strong probability that a chapter 7 trustee in these cases would not possess any particular knowledge about the Debtors. Additionally, a trustee would probably seek the assistance of professionals who may not have any significant background or familiarity with these Chapter Cases. The trustee and any professionals retained by the trustee likely would expend significant time familiarizing themselves with these Chapter 11 Cases. This would result in duplication of effort, increased expenses, and delay in payments to creditors, time and money

are inevitable. In addition to these time and monetary costs, there are other problems in a chapter 7 liquidation that would result in a substantially smaller recovery for holders of Claims than under the Plan, including a chapter 7 trustee's lack of background with or ability to pursue the arbitration awards.

Further, distributions under the Plan probably would be made earlier than would distributions in a chapter 7 case. Distributions of the proceeds in a chapter 7 liquidation might not occur until one or more years after the completion of the liquidation in order to afford the trustee the opportunity to resolve claims and prepare for distributions.

THE DEBTORS BELIEVE THAT THE PLAN AFFORDS SUBSTANTIALLY GREATER RECOVERY TO HOLDERS OF CLAIMS THAN SUCH HOLDERS WOULD RECEIVE IF THE DEBTORS WERE LIQUIDATED UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.

## ARTICLE VII
## CERTAIN FACTORS TO BE CONSIDERED

**Prior to voting to accept or reject the plan, all holders of Claims should read and carefully consider the risk factors set forth below, as well as all other information set forth or otherwise referenced in this disclosure statement. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation. Additional risks and uncertainties not presently known to the Debtors or that they currently deem immaterial may also harm their Estates.**

7.1    *Certain Bankruptcy Law Considerations*

(a)    Objections to the Plan and Confirmation

Section 1129 of the Bankruptcy Code provides certain requirements for a chapter 11 plan to be confirmed. Parties-in-interest may object to confirmation of the Plan based on an alleged failure to fulfill these requirements or other reasons.

(b)    Objections to the Debtors' Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each class of Claims and Interests encompass Claims or Interests that are substantially similar to the other Claims or Interests in each such class.

(c)    Failure to Obtain Confirmation of the Plan

The Debtors cannot ensure they will receive enough acceptances to confirm the Plan. But, even if the Debtors do receive enough acceptances, there can be no assurance that the

Page 34

9329706v.7

Bankruptcy Court will confirm the Plan. Even if enough acceptances are received and, with respect to those Classes deemed to have rejected the Plan, the requirements for "cramdown" are met, the Bankruptcy Court, which as a court of equity may exercise substantial discretion, may choose not to confirm the Plan or may require additional solicitations or consents prior to confirming the Plan. Section 1129 of the Bankruptcy Code requires, among other things, that the value of distributions to dissenting holders of Claims and Interests may not be less than the value such holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Although the Debtors believe that the Plan will meet such tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

The Debtors' ability to propose and confirm an alternative plan is uncertain. Confirmation of any alternative plan under chapter 11 of the Bankruptcy Code would likely take significantly more time and result in delays in the ultimate distributions to the holders of Claims. If confirmation of an alternative plan is not possible, the Debtors would likely be liquidated under chapter 7. Based upon the Debtors' analysis, liquidation under chapter 7 would result in distributions of reduced value, if any, to holders of Claims and Interests.

(d)      Failure to Consummate or Effectuate the Plan

Consummation of the Plan is conditioned upon, among other things, entry of the Confirmation Order approving any transactions contemplated thereunder. As of the date of this Disclosure Statement, there can be no assurance that any or all of the foregoing conditions will be met or that the other conditions to consummation, if any, will be satisfied. Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated and effectuated and the liquidation completed.

(e)      Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date may occur within a reasonable time following the Confirmation Date, there can be no assurance as to such timing.

(f)      Claims Estimation

There can be no assurance that the estimated amount of Claims is correct, and the actual Allowed amounts of Claims may differ from estimates. The estimated amounts are subject to certain risks, uncertainties and assumptions. Should one or more of these risks or uncertainties materialize or should underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated therein.

7.2      *Certain Tax Considerations, Risks and Uncertainties*

THERE ARE A NUMBER OF MATERIAL INCOME TAX CONSIDERATIONS, RISKS AND UNCERTAINTIES ASSOCIATED WITH CONSUMMATION OF THE PLAN. INTERESTED PARTIES SHOULD READ CAREFULLY THE DISCUSSION SET FORTH IN THIS DISCLOSURE STATEMENT FOR A DISCUSSION OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES BOTH TO THE DEBTORS AND TO HOLDERS OF

9329706v.7

CLAIMS THAT ARE IMPAIRED UNDER THE PLAN.

## ARTICLE VIII
## VOTING PROCEDURES AND REQUIREMENTS

### 8.1     *Introduction*

Detailed instructions for voting on the Plan are provided with the Ballots accompanying this Disclosure Statement. For purposes of the Plan, only holders of record of Claims in the following Classes, as of the Voting Record Date, are entitled to vote: Class 2 and Class 3.

If your Claim is not in Class 2 or Class 3, you are not entitled to vote on the Plan.   All Interests are not entitled to vote.

If your Claim is in Class 2 or Class 3, you should read your ballot and follow the listed instructions carefully. Please use only the ballot that accompanies this Disclosure Statement.

### 8.2     *Voting*

In order for your vote to be counted, your signed ballot must be actually received at the following address before the Voting Deadline of _____, 2016, at [_____] p.m. (prevailing Central time):

By Hand Delivery, Certified, Registered, or Regular Mail, or Overnight Carrier:
Gardere Wynne Sewell, LLP
Attn: John P. Melko
1000 Louisiana, Ste. 2000
Houston, TX 77002

UNLESS THE BALLOT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT ON OR PRIOR TO THE VOTING DEADLINE, SUCH BALLOT WILL BE REJECTED AS INVALID AND WILL NOT BE COUNTED AS AN ACCEPTANCE OR REJECTION OF THE PLAN.

### 8.3     *Reservation of Rights*

THE DEBTORS RESERVE THE RIGHT, AT THEIR SOLE DISCRETION, AND WITHOUT NOTICE EXCEPT AS MAY BE REQUIRED UNDER APPLICABLE LAW, TO EXTEND THE SOLICITATION PERIOD OR TERMINATE THEIR SOLICITATION OF VOTES ON THE PLAN.

### 8.4     *Waivers of Defects, Irregularities, etc.*

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of ballots will be determined by the Debtors in their sole discretion, which determination will be final and binding. The Debtors reserve the right to reject any and all ballots submitted by any creditors not

Page 36

in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be unlawful. The Debtors further reserve their rights to waive any defects or irregularities or conditions of delivery as to any particular ballot by any of their creditors. The interpretation (including the ballot and the respective instructions thereto) by the Debtors, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determine. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

## ARTICLE IX
## CONCLUSION

The Debtors recommend that holders of Claims in Class 2 and Class 3 to vote to accept the Plan and to evidence such acceptance by returning their signed ballots so that they will be received before the Voting Deadline of _____, 2016, at [_____] p.m. (prevailing Central time).

By: _____
    Name:  Justin Knowles
    Title:  Chief Restructuring Officer

9329706v.7

EXHIBIT A – Proposed Plan of Liquidation

9329706v.7

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GMI USA MANAGEMENT, INC., *et al*[1] | ) | Case No. 15-12552-SMB |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' JOINT PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**GARDERE WYNNE SEWELL LLP**

John P. Melko
713-276-5727 (*direct dial*)
713-276-6727 (*direct fax*)
jmelko@gardere.com
Sharon M. Beausoleil
sbeausoleil@gardere.com
713-276-5086 *(direct dial)*
713-276-5086 *(direct fax)*
Michael K. Riordan
713-276-5178 *(direct dial)*
713-276-6178 *(direct fax)*
mriordan@gardere.com
1000 Louisiana, Suite 2000
Houston, Texas 77002-5011

*Counsel for the Debtors*

Dated: August __, 2016

---

[1] The Debtors in these chapter 11 cases comprise GMI USA Management, Inc. (1208), Global Maritime Investments Holdings Cyprus Limited, Global Maritime Investments Vessel Holdings Pte. Limited, Global Maritime Investments Cyprus Limited and Global Maritime Investments Resources (Singapore) Pte. Limited.

TABLE OF CONTENTS

*ARTICLE I*     *1*
*ARTICLE II DEFINITIONS*                                                                          *1*
    2.1    Definitions**.** .................................................................................................... 1
*ARTICLE III TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS*            *12*
    3.1    Treatment of Allowed Administrative Expenses. ................................................ 12
    3.2    Treatment of Other Allowed Priority Claims. .................................................... 14
    3.3    Treatment of Allowed DIP Claims. .................................................................... 14
*ARTICLE IV VOTING AND SUBSTANTIVE CONSOLIDATION*                   *15*
    4.1    Voting; Presumptions. ......................................................................................... 15
    4.2    Substantive Consolidation; Merger. .................................................................... 15
    4.3    Request for Substantive Consolidation; Merger. ................................................ 15
    4.4    Intercompany Claims and Interests Among Debtors. .......................................... 16
    4.5    Claims Between Debtors and Non Debtors. ........................................................ 16
    4.6    Tabulation of Votes. ............................................................................................ 16
    4.7    Reservation of Rights. ......................................................................................... 17
*ARTICLE V TREATMENT OF CLASSES OF CLAIMS AND INTERESTS*          *17*
    5.1    Treatment of Allowed Class 1 Claims (Priority Non-Tax Claims). .................... 17
    5.2    Treatment of Allowed Class 2 Claims (Miscellaneous Secured Claims). ........... 18
    5.3    Treatment of Allowed Class 3 Claims (General Unsecured Claims). .................. 18
    5.4    Treatment of Allowed Class 4 Interests. ............................................................. 19
*ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN INCLUDING TREATMENT*
         *OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES*          *19*
    6.1    The Liquidating Debtor ....................................................................................... 19
    6.2    Matters Relating to the Liquidating Trust ........................................................... 20
    6.3    Execution and Ratification of Trust Agreement .................................................. 20
    6.4    Transfer of Liquidating Trust Assets ................................................................... 20
    6.5    Execution of Documents and Corporate Action .................................................. 21
    6.6    Amendment of the Debtors' Governance Documents .......................................... 21
    6.7    Termination of the Creditors' Committee ............................................................ 21
    6.8    Implementation of Settlement Agreement; Rejected Contracts. .......................... 21
    6.9    Approval of Agreements. ..................................................................................... 22
    6.10   Distributions. ....................................................................................................... 22
    6.11   Cancellation and Surrender of Existing Debt Instruments, Interests and other
         Securities. ............................................................................................................ 23
    6.12   Release of Liens and Perfection of Liens. ........................................................... 23
    6.13   Objections. ........................................................................................................... 24
    6.14   Amendments to Claims; Claims Filed After the Confirmation Date. .................. 24
    6.15   Reserves and Estimations. ................................................................................... 24
    6.16   Undeliverable or Unclaimed Distributions. ......................................................... 25
    6.17   Transmittal of Distributions and Notices. ........................................................... 25
    6.18   Withholding Taxes. .............................................................................................. 26
    6.19   Retention of Rights to Pursue Causes of Action. ................................................ 26
*ARTICLE VII THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE*         *26*
    7.1    The Liquidating Trust .......................................................................................... 26
    7.2    Funding of Res of Trust ....................................................................................... 26
    7.3    Execution and Ratification of Trust Agreement .................................................. 27
    7.4    The Liquidating Trustee ....................................................................................... 28
    7.5    Liquidating Trust Advisory Committee ............................................................... 28

7.6 Retention of Professionals ...................................................................................... 28
7.7 Compensation of the Liquidating Trustee ............................................................. 28
7.8 Liquidating Trust Expenses ................................................................................... 29
7.9 Liability; Indemnification ...................................................................................... 29
7.10 Preparation of Final Tax Returns .......................................................................... 29
7.11 Termination ............................................................................................................ 29
7.12 Register of Liquidating Trust Interest ................................................................... 30
7.13 Transferability of Interests in Liquidating Trust .................................................. 30
7.14 Exclusive Jurisdiction of the Bankruptcy Court to Hear Matters Relating to the
Liquidating Trust ................................................................................................... 30

*ARTICLE VIII RELEASES AND INDEMNIFICATION*      *30*
8.1 **Releases**. ............................................................................................................... 30
8.2 Indemnification. ..................................................................................................... 32

*ARTICLE IX CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE*      *32*
9.1 Conditions to Occurrence of the Effective Date.................................................... 32
9.2 Waiver of Conditions to Occurrence of the Effective Date................................... 32

*ARTICLE X EFFECTS OF PLAN CONFIRMATION*      *33*
10.1 Binding Effect. ....................................................................................................... 33
10.2 **Injunction**. ............................................................................................................. 33

*ARTICLE XI ADMINISTRATIVE PROVISIONS*      *34*
11.1 Retention of Jurisdiction. ....................................................................................... 34
11.2 Standing.................................................................................................................. 36
11.3 Cram Down. ........................................................................................................... 36
11.4 Modification of the Plan. ....................................................................................... 36
11.5 Set-offs. .................................................................................................................. 36
11.6 Compromise of Controversies. .............................................................................. 37
11.7 Acceptance by Secretary of State. ......................................................................... 37
11.8 Withdrawal or Revocation of the Plan. ................................................................. 37
11.9 Successors and Assigns. ......................................................................................... 37
11.10 Governing Law....................................................................................................... 37
11.11 Notices.................................................................................................................... 37
11.12 No Admissions. ...................................................................................................... 38
11.13 **Exculpation**. .......................................................................................................... 38

## ARTICLE I

This Joint Plan of Liquidation (the "Plan") is proposed by and on behalf of each Debtor under Chapter 11 of the Bankruptcy Code. Reference is made to the Disclosure Statement (the "Disclosure Statement") accompanying the Plan for a discussion of the Debtors' history, results of operations, historical financial information and properties, and for a summary and analysis of the Plan.

Capitalized terms used but not defined herein have the meanings assigned to them in Section 2.1 of the Plan. Unless otherwise stated herein, section ("§") references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Claims against, and Interests in, the Debtors will be treated as set forth herein. There may also be other agreements and documents, which will be filed with the Bankruptcy Court (as defined below), that are referenced in the Plan or the Disclosure Statement as exhibits and schedules. All such exhibits and schedules are incorporated into and are a part of the Plan as if set forth in full herein.

**ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN A DEBTOR ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE II
## DEFINITIONS

The following terms used herein shall have the respective meanings defined below:

2.1     *Definitions.*

*Administrative Expense* means expenses against one or more of the Debtors for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including, but not limited to, the U.S. Trustee Fees; and (c) Professional Fee Claims.

*Administrative Expense Bar Date* shall have the meaning set forth in Section 3.1(d).

*Allowed* means with respect to Claims (a) any Claim against a Debtor, proof of which is timely Filed or by order of the Bankruptcy Court is not or will not be required to be Filed, (b) any Claim that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely Filed proof of Claim has been Filed, or (c) any Claim allowed pursuant to this Plan and, in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof has been Filed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such an

objection is so Filed and the Claim shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

*Ballot Deadline* means the date set by the Bankruptcy Court as the last date on which Ballots may be submitted.

*Ballots* means the form of ballot that accompanies the Plan and the Disclosure Statement upon which holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan.

*Bankruptcy Code* means Title 11, United States Code, as amended from time to time, in the form applicable to this Chapter 11 Case.

*Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York, Manhattan Division, having jurisdiction over the Chapter 11 Cases or such other court of competent jurisdiction as may obtain such jurisdiction in the future.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as amended from time to time, in the form applicable to this Chapter 11 Case, and any local rules of the Bankruptcy Court.

*Bar Date* means the applicable deadline to File Claims or Expenses in these Chapter 11 Cases, including the Administrative Expense Bar Date, the Claims Bar Date, the Professional Fee Bar Date, and the Rejection Claims Bar Date.

*Board of Directors* means the board of directors of each Debtor.

*Business Day* means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

*Cash* means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

*Cause of Action* means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any equitable remedy, including, without limitation, any claim for equitable subordination, equitable disallowance, or unjust enrichment; (e) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any

cause of action or claim arising under any state or foreign law fraudulent transfer or similar claim.

*Chapter 5* means chapter 5 of the Bankruptcy Code.

*Chapter 5 Causes of Action* means any and all Causes of Action arising under §§ 510, 544 through 551 and 553 or otherwise arising under chapter 5 of the Bankruptcy Code.

*Chapter 7* means chapter 7 of the Bankruptcy Code.

*Chapter 11* means chapter 11 of the Bankruptcy Code.

*Chapter 11 Cases* means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Court and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

*Claim* means any right to (a) payment from any Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown, or (b) an equitable remedy for breach of performance if such breach gives rise to a right of payment from any Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, known or unknown.

*Claim Objection Deadline* shall have the meaning set forth in Section 6.13.

*Claims Bar Date* means (i) the general claims bar date, which occurred on June 24, 2016, requiring creditors to File proofs of Claim in the Chapter 11 Cases and (ii) the governmental units claims bar date, which also occurred on June 24, 2016.

*Class* means any group of substantially similar Claims or Interests classified by the Plan pursuant to § 1122.

*Collateral* means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code.

*Creditors' Committee Professional Fee Reserve* means a reserve, in an amount not to exceed $280,000, applied in accordance with Section 6.4(b) of the Plan, to be held by the Liquidating Trust from which Professional Fee Claims of the Committee will be paid and satisfied as provided in section 3.1 of the Plan.

*Confirmation* means the entry of the Confirmation Order on the docket maintained by the Bankruptcy Court with respect to the Chapter 11 Cases.

*Confirmation Date* means the date on which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court with respect to the Chapter 11 Cases.

*Confirmation Hearing* means the hearing held by the Bankruptcy Court regarding Confirmation of the Plan pursuant to § 1129, as such hearing may be adjourned or continued from time to time.

*Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to § 1129.

*Creditor* means any Entity that is the holder of a Claim that arose on or before the Petition Date or a Claim of the kind specified in §§ 502(g), 502(h) or 502(i).

*Creditors' Committee* means the Official Creditors' Committee of Unsecured Creditors in the Chapter 11 Cases, as appointed by the Office of the United States Trustee and reconstituted from time to time, which members are identified in the Disclosure Statement.

*Debtor Professional Fee Reserve* means a reserve in and amount not to exceed $680,000, applied in accordance with Section 6.4 of the Plan, to be held by the Liquidating Trustee from which Professional Fee Claims of the Debtors' or Liquidating Debtor's Professionals will be paid and satisfied as provided in section 3.1 of the Plan.

*Debtors* means, collectively, GMI USA Management, Inc., Global Maritime Investments Holding Cyprus Limited, Global Maritime Investments Cyprus Limited, Global Maritime Investments Vessel Holdings PTE Limited, and Global Maritime Investments Resources (Singapore) Pte. Limited.

*Deficiency Claim* means with respect to a Claim that is partially secured by Collateral, the amount by which the Allowed amount of such Claim exceeds the value of the Collateral.

*DIP Claims* means all Claims payable under the DIP Loan Documents, including, without limitation, all "Obligations" (as defined in the DIP Credit Agreement) and all fees and expenses payable to the DIP Lender and their retained legal and other professionals as contemplated by the DIP Order.

*DIP Credit Agreement* means the Post-Petition Financing Agreement, dated as of October 5, 2015, by and among the Debtors, as borrowers, and Francolin, as lender (as amended, restated, supplemented, or otherwise modified from time to time).

*DIP Loan* means the postpetition loans and other financial accommodations provided by the DIP Lender pursuant to the DIP Loan Documents.

*DIP Loan Documents* means the "Financing Documents" as defined in the DIP Credit Agreement.

*DIP Lender* means Francolin and any successors or assigns to Francolin's rights or obligations under the DIP Loan Documents or DIP Loan.

*DIP Order* means the *Final Order Authorizing Debtors to Enter Into Post-Petition Financing Agreement With Francolin* entered on the Bankruptcy Court's docket on October 27, 2015 (Docket No. 100) (as amended from time to time).

*Disallowed* means, when used with respect to a Claim or an Interest, a Claim or an Interest that has been disallowed pursuant to a Final Order.

*Disclosure Statement* means the *Disclosure Statement in Support of Debtors' Joint Plan of Liquidation*, including all exhibits, schedules, amendments, supplements and modifications thereto.

*"Disputed Claim"* means, in reference to a Claim, any Claim, or any portion thereof, Disallowed, not paid pursuant to either the Plan or Final Order of the Bankruptcy Court, and (a) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court, (b) proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed, (c) proof of which was timely and properly filed and which has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, (d) proof of which has been timely and properly filed but such Claim has been designated on the proof of Claim as unliquidated, contingent, or disputed, or in zero or unknown amount and has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (e) that is disputed in accordance with the provisions of the Plan, or (f) as to which the Debtors, the Liquidating Debtor or the Liquidating Trustee, as applicable, have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtors, the Liquidating Debtor or the Liquidating Trustee, as applicable, in accordance with applicable non-bankruptcy law including any action or proceeding pending in a non-bankruptcy forum, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; *provided, however*, that for purposes of determining whether a particular Claim is a Disputed Claim prior to the expiration of any period of limitation fixed for the interposition by the Debtors or the Liquidating Trustee, as applicable, of objections to the allowance of Claims, any Claim that is not an Allowed Claim shall be deemed a Disputed Claim.

*Disputed Claims Reserve* means the reserve established by the Liquidating Trustee for the benefit of holders of Disputed Claims.

*Distribution* means the payment or distribution under the Plan of Cash, assets, securities or instruments evidencing an obligation under the Plan or other consideration on property of any nature to any holder of an Allowed Claim.

*Distribution Date(s)* means the date or dates, occurring on or as soon as reasonably practicable after the Effective Date, upon which Distributions are made pursuant to the terms of the Plan to holders of Allowed Claims.

*Effective Date* means a Business Day selected by the Debtors after which all conditions to the occurrence of the Effective Date set forth in Section 9.1 have been satisfied or duly waived.

*Entity* means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, entity, trust, trustee, United

States Trustee, unincorporated organization, government, Governmental Unit, agency or political subdivision thereof.

*Escrow Agent* means Ropes & Gray LLP, as escrow agent under the Escrow Agreement.

*Escrow Agreement* means the Escrow Agreement, dated as of September 15, 2015, among GMI USA, Francolin, and the Escrow Agent (as amended, restated, supplemented, or otherwise modified from time to time).

*Escrowed Funds* means the "Escrow Funds" (as defined in the Escrow Agreement).

*Estate* means, as to each Debtor, the estate of a Debtor created pursuant to § 541 upon the Petition Date.

*Exculpated Persons* shall have the meaning set forth in Section 11.12.

*Executory Contracts* mean executory contracts and unexpired leases (to which any Debtor is a party) as such terms are used in § 365, including any amendments, supplements, modifications or restatements thereof or thereto.

*Face Amount* means: (a) with respect to a particular Claim, (i) if the Claim is listed in the Schedules and the holder of such Claim has not timely Filed a proof of Claim, the amount of such Claim that is listed in the Schedules as not disputed, contingent or unliquidated; or (ii) if the holder of such Claim has timely Filed a proof of Claim, the liquidated amount stated in such proof of Claim, or such amount as is determined by the Final Order of the Bankruptcy Court; (b) in the case of an Administrative Expense, the liquidated amount set forth in any application Filed with respect thereto, or the amount set forth in the Debtors' books and records or such amount as is determined pursuant to a Final Order; or (c) in all other Chapter 11 Cases, zero or such amount as shall be fixed or estimated pursuant to a Final Order.

*Fee Application* means an application to the Bankruptcy Court for allowance of a Professional Fee Claim pursuant to §§ 328 or 330 of the Bankruptcy Code and Bankruptcy Rule 2016(a).

*File, Filed or Filing* means file, filed or filing with the Bankruptcy Court in the Chapter 11 Case.

*Final Order* means an order or judgment of the Bankruptcy Court, which has not been reversed, amended, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari,* new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion

under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order, shall not cause such order not to be a Final Order.

*Francolin* means Francolin, whether in its role as DIP Lender or as prepetition lender, a limited liability company incorporated under the laws of the Cayman Islands.

*Francolin Prepetition Claim* means Francolin's Allowed General Unsecured Claim in the amount of $105,383,865.34, as described in the Settlement Agreement (as hereinafter defined).

*General Unsecured Claim* means any Claim against a Debtor that is not (i) a Secured Claim; (ii) entitled to priority under §§ 503 or 507; or (iii) an Administrative Expense, a DIP Claim, Priority Tax Claim, Priority Non-Tax Claim, a Miscellaneous Secured Claim, or a Subordinated Claim.

*GMI Cayman* means Global Maritime Investments Limited, a Cayman Islands limited company and a non-debtor subsidiary of GMI Tradeco.

*GMI Tradeco* means Global Maritime Investments Cyprus Limited.

*GMI USA* means GMI USA Management, Inc.

*GMI Ventures* means GMI Ventures LLP, a limited liability partnership.

*Governance Documents* means any charter, certificate of incorporation, certificate of formation, bylaws, limited liability company agreements (or any other formation and organizational documents) of the Debtors in effect as of the Petition Date, as such documents may be amended from time to time, and any such documents put into effect subsequent to the Petition Date.

*Impaired* means with respect to a Claim, impaired within the meaning of § 1124.

*Intercompany Claim* means a Claim held by any Debtor against any other Debtor based on any fact, action, omission, occurrence or transaction that occurred or came into existence prior to or after the Petition Date, including without limitation, any Administrative Expenses or other account receivable, account payable, contribution claim, or Cause of Action asserted by one Debtor against another Debtor.

*Interests* means an (a) ownership interest in a corporation, whether or not transferable or denominated "stock" or similar security; (b) ownership interest of a limited partner in a limited partnership; (c) ownership interest of a general partner in a partnership; (d) ownership interest of a joint venture partner in a joint venture; (e) ownership interest of a member in a limited liability company; (f) ownership interest in an entity not covered by (a) through (e) above; or (g) any warrant, option, or right, contractual or otherwise, to acquire or receive the interests in (a) through (f) above.

*Lien* means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest in respect of such asset.

*Liquidating Debtor* means GMI USA post confirmation until such time as the articles of dissolution are filed.

*Liquidating Trust* means the liquidating trust created as provided in the Plan pursuant to the Liquidating Trust Agreement for the benefit of the Liquidating Trust Beneficiaries.

*Liquidating Trust Agreement* means that certain liquidating trust agreement, dated _____, as may be amended or supplemented (x) prior to the Effective Date, among the Debtors, the Creditors' Committee, Francolin, and the trustee designated by the Creditors' Committee establishing the Liquidating Trust, and (y) after the Effective Date, in accordance with the terms thereof.

*Liquidating Trust Assets* means all property of the Estates, including Causes of Action, not otherwise released or settled under the Plan herein.

*Liquidating Trust Beneficiaries* (each a "*Liquidating Trust Beneficiary*") means all holders of Allowed General Unsecured Claims and, until such Claims are satisfied, the holders of other Allowed Claims to be paid by the Liquidating Trust under the Plan.

*Liquidating Trust Advisory Committee* means the committee established upon the Effective Date in accordance with the Liquidating Trust Agreement to monitor and supervise the Liquidating Trustee's administration of the Liquidating Trust and to perform such other duties as are set forth in this Plan, the Liquidating Trust Agreement and the Confirmation Order or as may be approved by the Bankruptcy Court.

*Liquidating Trust Administrative Expenses Reserve* means an amount reserved as provided in Section 6.4 of the Plan to pay any Administrative Expenses, Priority Tax Claims, or Other Priority Claims in accordance with the Plan and expenses of the Liquidating Trust; provided, however, that the Liquidating Trust Administrative Expenses Reserve shall be increased in an amount equal to the unused portion of the Professional Fee Reserve.

*Liquidating Trust Interests* means, with respect to the Liquidating Trust, the interests created in the Liquidating Trust which entitles Liquidating Trust Beneficiaries to receive Distributions in accordance with the Liquidating Trust Agreement.

*Liquidating Trustee* means the trustee of the Liquidating Trust and any successor to that trustee.

*Miscellaneous Secured Claim* means a Secured Claim that is not a secured Priority Tax Claim, Priority Non-Tax Claim, Administrative Expense, or DIP Claim.

*Person* means person as defined in section 101(41) of the Bankruptcy Code.

*Petition Date* means September 15, 2015, the date on which the Debtors commenced the Chapter 11 Cases.

*Plan* means the *Debtors' Joint Chapter 11 Plan of Liquidation*, dated as of August ___, 2016, including, without limitation, the annexes, exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the Confirmation Order, the provisions of the Bankruptcy Code and the terms hereof.

*Plan Documents* means, collectively, the documents and agreements (and the exhibits, schedules, annexes and supplements thereto) necessary to implement, or entered into in connection with, the Plan, including, without limitation, the Disclosure Statement, the Disclosure Statement Order, the Plan, the Plan Supplement(s), the Liquidating Trust Agreement, and each of the exhibits and schedules to the Plan.

*Plan Supplement* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed at least ten (10) calendar days before the Confirmation Hearing, and any additional documents or schedules Filed before the Effective Date as supplements or amendments to the Plan Supplement, including, without limitation, the Liquidating Trust Agreement. Any reference to the Plan Supplement in this Plan, including, without limitation, the Liquidating Trust Agreement, shall include each of the documents identified above. The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date; provided that the Liquidating Trust Agreement may only be amended or supplemented through the Effective Date with the consent of the Creditors; Committee, Francolin, and the trustee designated by the Creditors' Committee establishing the Liquidating Trust.

*Poolco* means Bulk Panamax Pool Limited f/k/a GMI Panamax Pool Limited, a limited company incorporated under the laws of the Cayman Islands and a non-Debtor subsidiary of GMI Tradeco.

*Priority Non-Tax Claim* means any Claim entitled to priority in payment under § 507(a), other than an Administrative Expense or a Priority Tax Claim.

*Priority Tax Claim* means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in §§ 502(i) and 507(a)(8), including any Secured Claim which would otherwise meet the description of an unsecured Claim of a Governmental Unit under § 507(a)(8) but for the secured status of that Claim.

*Professional* means any Entity employed pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 and to be compensated for services rendered on or prior to the Effective Date pursuant to §§ 327, 328, 329, 330 and 331.

*Professional Fee Bar Date* means the first business day that is sixty (60) days after the Effective Date or such other date as approved by Final Order of the Bankruptcy Court.

*Professional Fee Claim* means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the Petition Date through the Effective Date.

*Professional Fee Reserve* means, collectively the Debtor Professional Fee Reserve and the Creditors' Committee Professional Fee Reserve.

*Ratable Proportion* means, with reference to any Distribution on account of an Allowed Claim in a given Class, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Claim bears to the aggregate amount of all Allowed Claims in such Class.

*Rejected Contract* means an Executory Contract (i) previously rejected by the Debtors or (ii) deemed rejected effective as of the Effective Date or (iii) such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

*Rejection Claim* means any Claim arising from a Rejected Contract, including any Claim of (a) a lessor for damages resulting from the rejection of a lease of real property as any such Claim shall be calculated in accordance with § 502(b)(6) or (b) an employee for damages resulting from the rejection of an employment agreement as any such Claim shall be calculated in accordance with § 502(b)(7).  A Rejection Claim shall constitute a General Unsecured Claim.

*Rejection Claims Bar Date* means the deadline to File a proof of Claim for damages under a Rejected Contract and such deadline is thirty (30) days after the entry of an order by the Bankruptcy Court rejecting such contract or thirty (30) days after entry of the Confirmation Order, whichever occurs first.

*Released Parties* means the beneficiaries of the various releases granted pursuant to Section 8.1 of the Plan, each being a "Released Party".

*Schedules* means the *Schedules of Assets and Liabilities* Filed by the Debtors under § 521 and Bankruptcy Rule 1007 in the Chapter 11 Cases, as amended from time to time.

*Secured* means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

*Settlement Agreement* means that certain Settlement Agreement, dated as of March 2, 2016 approved pursuant to the Order Approving Settlement Agreement Among the Debtors, the Official Committee of Unsecured Creditors, and Francolin, entered on the Bankruptcy Court's docket on February 16, 2016 [Docket No. 274].

*Settlement Documents* means the Settlement Agreement, the Settlement Releases, and the Order Approving Settlement Agreement Among the Debtors, the Official Committee of Unsecured Creditors, and Francolin, entered on the Bankruptcy Court's docket on February 16, 2016 [Docket No. 274].

*Settlement Releases* means the "DIP Order Release", "Closing Date Release", and the "Poolco Release" (as each is defined in the Settlement Agreement).

*Singapore Tradeco* means Global Maritime Investments Resources (Singapore) Pte. Limited.

*Singapore Vessel Holdings* means Global Maritime Investments Vessel Holdings Pte. Limited.

*Slipway* means Global Maritime Investments Holding Cyprus Limited.

*Stamp or Similar Tax* means any stamp tax, recording tax, conveyance fee, intangible or similar tax, mortgage tax, personal or real property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any governmental unit.

*Statement of Financial Affairs* means the *Statement of Financial Affairs* Filed by the Debtors under § 521 and Bankruptcy Rule 1007 in the Chapter 11 Cases, as amended from time to time.

*Subordinated Claim* means any Claim which by its terms or by Final Order of the Bankruptcy Court is subordinated to the payment of General Unsecured Claims, including any Claim which is subordinated to the payment of another Claim pursuant to any applicable provision of the Bankruptcy Code (including § 510 thereof) or applicable non-bankruptcy law.

*UK Brokerage* means GMI Resources UK LLP, the United Kingdom limited liability company formed by the equity owners in Slipway and certain of their affiliates that served as third party managers and brokers for Slipway.

*Unimpaired* means a Claim that is not Impaired.

2.2     *Interpretation, Rules of Construction, Computation of Time, and Choice of Law*.

(a)     The provisions of the Plan shall control over any descriptions thereof contained in the Disclosure Statement.

(b)     Any term used in the Plan that is not defined in the Plan, either in this Article II or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the rules of construction set forth in § 102 shall apply to the Plan, unless superseded herein.

(c)       Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and Exhibits are references to Articles, Sections and Exhibits of or to the Plan.

(d)       Any reference in the Plan to a contract, document, instrument, release, bylaw, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

(e)       Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date without limitation to the provisions set forth in this Plan.

(f)       Captions and headings to Articles and Sections in the Plan are inserted for convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provisions hereof.

(g)       In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(h)       All exhibits, annexes and schedules to the Plan are incorporated into and constituted a part of the Plan, and shall be deemed to be included in the Plan, regardless of when Filed.

(i)       Subject to the provisions of any contract, certificate, bylaws, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

(j)       Where applicable, references to the singular shall include the plural, and *vice versa*.

## ARTICLE III
## TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III hereof. These unclassified Claims are unimpaired and treated as follows:

3.1       *Treatment of Allowed Administrative Expenses.*

(a)       Administrative Expenses.  Subject to the deadlines set forth herein, each holder of an Allowed Administrative Expense against a Debtor shall receive Cash equal to the unpaid portion of such Allowed Administrative Expense on or as soon as reasonably practicable after the later of: (i) the Effective Date; and (ii) the date on which such Administrative Expense becomes Allowed; *provided*, *however*, that, holders of Administrative Expenses pursuant to

section 503(b)(9) of the Bankruptcy Code must have filed an application for such expenses by the Bar Date, as provided in the Amended Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Dkt. No. 331]; and *provided further*, a Governmental Unit shall not be required to file a request for the payment of an Administrative Expense of the kind described in sections 503(b)(1)(B) or 503(b)(1)(C). Notwithstanding the foregoing, an Allowed Administrative Expense may be paid on such other terms and conditions as are agreed to between the Liquidating Debtor or Liquidating Trust and the holder of such Allowed Administrative Expense.

(b)    Professional Fee Claims.    Each Professional who holds or asserts an Administrative Expense that is a Professional Fee Claim shall be required to file with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Professional Fee Bar Date. The failure to timely file the Fee Application shall result in the Professional Fee Claim being forever barred and discharged. A Professional Fee Claim with respect to which a Fee Application has been properly and timely filed pursuant to this Section 3.1 shall be treated and paid only to the extent allowed by Final Order. All Professional Fee Claims shall be paid solely from the Creditors' Committee Professional Fee Reserve or the Debtor Professional Fee Reserve, as applicable; *provided, however*, that to the extent any holder of an Allowed Professional Fee Claim holds a retainer regarding such Claim, the retainer shall be applied first to such Claim with the balance of such Claim to be paid from the Creditors' Committee Professional Fee Reserve or the Debtor Professional Fee Reserve, as applicable. To the extent the Allowed Professional Fee Claims to be paid from the Debtor Professional Fee Reserve (after application of any amounts held in retainer) exceeds the sum of the Debtor Professional Fee Reserve, such Claims shall be paid on a pro rata basis, with any unpaid portion of such Allowed Professional Fee Claim being waived by such holder. To the extent the Allowed Professional Fee Claims payable from the Creditors' Committee Professional Fee Reserve exceeds the sum of the Creditors' Committee Professional Fee Reserve, such Claims shall be paid on a pro rata basis, with any unpaid portion of such Allowed Professional Fee Claim being waived by such holder. Except as provided elsewhere in this Plan, any funds remaining in the applicable Professional Fee Reserve after the payment of all Allowed Professional Fee Claims payable from such reserve shall become part of the Liquidating Trust Administrative Expenses Reserve. No Professional Fee Claims shall be allowed on account of any services rendered by a Professional whose retention with respect to the Chapter 11 Cases has not been approved by the Bankruptcy Court.

(c)    Statutory Fees.    All fees payable on or before the Effective Date (i) pursuant to 28 U.S.C. § 1930, and (ii) to the United States Trustee, shall be paid by the Debtors on or before the Effective Date.  All such fees payable after the Effective Date shall be paid by the Liquidating Trust.

(d)    Administrative Expense Bar Dates.

(i)    Except as provided in Section 3.1(b) and (c), requests for payment of Administrative Expenses must be Filed no later than sixty (60) days after the Effective Date (the "Administrative Expense Bar Date").  Holders of Administrative Expenses that do not File such requests by the Administrative Expense Bar Date shall be forever barred from asserting

such Administrative Expenses against the Debtors, the Liquidating Debtor, the Liquidating Trust or any of their property.

(ii)      All Professionals asserting a Professional Fee Claim pursuant to §§ 327, 328, 330, 331 or 503(b) for services rendered prior to the Effective Date shall File and serve on the Liquidating Trust an application for final allowance of compensation and reimbursement of expenses no later than the Professional Fee Bar Date.  Unless otherwise directed by the Liquidating Trust Advisory Committee, the Liquidating Trustee shall not be obligated to review, investigate, evaluate, analyze, or object to Professional Fee Claims relating to services rendered and expenses incurred prior to the Effective Date.  To the extent allowed by the Bankruptcy Court, pre-Effective Date fees for services rendered and expenses incurred will be paid by the Liquidating Trust.

(iii)      Any professional fees and reimbursements or expenses incurred by the Liquidating Debtor or Liquidating Trust subsequent to the Effective Date may be paid without application to the Bankruptcy Court and subject to the approval of the Liquidating Trustee.  These post-Effective Date fees and expenses will be paid by the Liquidating Trust.

3.2      *Treatment of Other Allowed Priority Claims.*

(a)      Allowed Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim payment in full in Cash of such Allowed Priority Tax Claim on or as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (ii) such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtors, Liquidating Debtor, or Liquidating Trust, as applicable.  To the extent interest is required to be paid on any Allowed Priority Tax Claim, the rate of such interest shall be the rate determined under applicable non-bankruptcy law.

3.3      *Treatment of Allowed DIP Claims.*

The DIP Claims are Allowed in full; provided, that, pursuant to the Settlement Agreement, the DIP Lender has agreed to waive any claim under the DIP Credit Agreement for reimbursement of attorneys' fees, expenses or costs incurred through the date of the Settlement Agreement in connection with the negotiation, documentation, and administration of the DIP Credit Agreement.  The DIP Lender has further agreed that if, as of the Effective Date, no request has been made for the DIP Loan to be advanced and no claims have been made against the DIP Lender, the amount of the DIP Claims shall be zero.  On or about the Effective Date, unless otherwise agreed by the DIP Lender, the DIP Lender shall receive on account of such Allowed DIP Claims payment in full in Cash of its Allowed DIP Claims.

**ARTICLE IV**
**VOTING AND SUBSTANTIVE CONSOLIDATION**

4.1 *Voting; Presumptions.*

(a) Acceptance by Impaired Classes. Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

(b) Voting Presumptions. Claims in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. Claims and Interests in Classes that do not entitle the holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

4.2 *Substantive Consolidation; Merger.*

(a) As of the Effective Date, the assets, Claims and affairs of the Debtors and their respective Estates shall be substantively consolidated into the Estate of GMI USA pursuant to § 105(a) for all purposes, including for purposes of voting and Distribution. As a result of the substantive consolidation, on the Effective Date, all assets and liabilities of the Debtors and their Estates shall be deemed pooled for voting and Distribution purposes. All assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of GMI USA.

(b) Substantive consolidation of the Debtors shall constitute the *de facto* merger of the other Debtors into GMI USA. Substantive consolidation shall not affect distributions from any insurance policies or the proceeds of such policies.

(c) In the event that the Bankruptcy Court does not order substantive consolidation, the Debtors reserve the right to seek Confirmation of the Plan as to each Debtor individually or to withdraw as to any Debtor. Subject to the requirements of § 1129, neither the inability of the Debtors to obtain Confirmation of the Plan as to any Debtor nor the election of the Debtors to withdraw the Plan as to any Debtor shall impair the Confirmation or consummation of the Plan as to any other Debtor.

4.3 *Request for Substantive Consolidation; Merger.*

(a) Substantive Consolidation. The Plan shall serve as a motion by the Debtors seeking entry of an order by the Bankruptcy Court substantively consolidating the Debtors and their Estates, and the Confirmation Order shall constitute an order of the Bankruptcy

Court approving the substantive consolidation of the Debtors and their Estates.  In the event that the Bankruptcy Court substantively consolidates some but not all of the Debtors, the Debtors reserve the right to proceed with Confirmation with no or partial substantive consolidation consistent with the Bankruptcy Court's order.

(b)      Merger of GMI Cayman. This Plan shall constitute a request, pursuant to § 1123(a)(5)(C), for approval of the merger of GMI Cayman into GMI USA.

4.4      *Intercompany Claims and Interests Among Debtors.*

(a)      If Substantively Consolidated.  If substantive consolidation is ordered pursuant to this Article IV, (i) no distributions shall be made under the Plan on account of any Intercompany Claims, Administrative Expenses, or Interests between and among any of the Debtors, (ii) for all purposes associated with Confirmation, including, without limitation, for purposes of tallying acceptances and rejections of the Plan, the Estates of the Debtors shall be deemed to be one consolidated Estate of GMI USA, and (iii) all guarantees of any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint and several liability of any Debtor shall be one obligation of the Debtors.

(b)      If Not Substantively Consolidated.  If substantive consolidation is not ordered pursuant to this Article IV, there shall be no Distributions made on account of any Intercompany Claims, Administrative Expenses, or Interests between and among any of the Debtors.  Pursuant to §§ 1126(f) and 1126(g) of the Bankruptcy Code, holders of Intercompany Claims or Interests shall not be entitled to vote to accept or reject the Plan.

4.5      *Claims Between Debtors and Non Debtors.*

No Distribution shall be made under the Plan on account of any Intercompany Claim of the Debtors or any non-Debtor affiliate regardless of whether the substantive consolidation and merger requested in Section 4.3 are approved or not; *provided, however*, that any and all claims by the Debtors against any non-Debtor affiliate are expressly preserved and may be asserted after the Effective Date by the Liquidating Trust.  For all purposes associated with Confirmation, including without limitation, for purposes of tallying acceptances and rejections of the Plan all guarantees or Claims for contribution or subrogation between the Debtors, individually or collectively, and their affiliates shall be eliminated.

4.6      *Tabulation of Votes.*

(a)      If Substantively Consolidated.  If the Debtors are substantively consolidated, the Debtors will tabulate votes on the Plan on a consolidated basis by Class for the purpose of determining whether the Plan satisfies §§ 1129(a)(8) or (10), as applicable, for the consolidated Debtor.  In that event, the Claims against the Debtors shall be voted in a single consolidated Class (*e.g.*, holders of Class 3 Claims) against any consolidated Debtor and shall be deemed to have voted in a single, consolidated class for purposes of determining whether the Plan satisfies §§ 1129(a)(8) or (10), as applicable, with respect to each consolidated Debtor.

Page 16

(b)     If Not Substantively Consolidated. If the Debtors are not substantively consolidated, the Debtors will tabulate all votes on the Plan on a non-consolidated basis by Class for the purpose of determining whether the Plan satisfies §§ 1129(a)(8) or (10), as applicable, with respect to each Debtor. For each Debtor that satisfies §§ 1129(a)(8) or (10), as applicable, and provided that all other requirements to Confirmation of the Plan are met, the Confirmation of this Plan as to such Debtor shall be deemed to occur by operation of the Plan.

4.7     *Reservation of Rights.*

In the event that the Bankruptcy Court does not order substantive consolidation of the Debtors, then except as specifically set forth in the Plan: (a) nothing in the Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that one of the Debtors is subject to or liable for any Claim against any other Debtor; (b) Claims against multiple Debtors shall be treated as separate Claims with respect to each Debtor's Estate for all purposes (including, without limitation, Distributions and voting), and such Claims shall be administered as provided in the Plan; and (c) the Debtors shall not, nor shall they be required to, resolicit votes with respect to the Plan, nor will the failure of the Bankruptcy Court to approve substantive consolidation of the Debtors alter the Distributions set forth in the Plan. In the event that the Bankruptcy Court does not order substantive consolidation, the Plan comprises a separate plan for each Debtor and the Confirmation requirements of § 1129 must be satisfied separately for each Debtor under the Plan.

**ARTICLE V**
**TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**

The categories of Classes, Claims and Interests listed below classify Claims and Interests (other than Administrative Expenses dealt with in Article III) in or against the Debtors for all purposes, including voting, Confirmation, and Distribution, pursuant to the Plan and pursuant to §§ 1122 and 1123(a)(1). If substantive consolidation is ordered pursuant to Article IV of the Plan, each Class listed below will vote as set forth in Article IV of the Plan. If substantive consolidation is not ordered, each Class listed below shall vote as a single separate Class for each Debtor, including with respect to the Confirmation requirements under § 1129(b). A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and the remaining portion of such Claim or Interest, if any, shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date. Section 3.1 of the Plan deals with payment of unclassified Administrative Expenses and Priority Claims.

5.1     *Treatment of Allowed Class 1 Claims (Priority Non-Tax Claims).*

(a)     Unless otherwise agreed by the holder of an Allowed Priority Non-Tax Claim and the Debtors or, following the Effective Date, the Liquidating Trust, each holder of an Allowed Priority Non-Tax Claim shall receive an amount in Cash equal to 100% of the Allowed amount of such Allowed Priority Non-Tax Claims on or as soon as practicable after the later of:

(i) the Effective Date or (ii) the date on which such Priority Non-Tax Claims becomes an Allowed Priority Non-Tax Claims.

(b)     Class 1 is Unimpaired, and holders of Class 1 Claims shall be deemed to have accepted the Plan.

5.2     *Treatment of Allowed Class 2 Claims (Miscellaneous Secured Claims).*

(a)     On or as soon as practical after the later of (i) the Effective Date, or (ii) the date on which such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, each holder of an Allowed Miscellaneous Secured Claim shall receive on account of its Allowed Miscellaneous Secured Claim one of the following alternatives at the option of the Liquidating Trustee:

(i)     payment in full in Cash of its Allowed Miscellaneous Secured Claim;

(ii)     the Distribution of the Collateral securing such Allowed Miscellaneous Secured Claim, in which event such holder shall be entitled within thirty (30) days of such election to File a proof of Claim for any deficiency entitled to treatment as a Deficiency Claim in Class 3 or be forever barred from thereafter asserting a Deficiency Claim; or

(iii)     such other treatment, including deferred Cash payments, as shall be consistent with § 1129(b).

(b)     Class 2 is impaired, and holders of Class 2 Claims shall be entitled to vote to accept or reject the Plan. Each Miscellaneous Secured Claim receiving treatment under this Section 5.2 shall be deemed to be in a separate Class for classification, voting and Distribution purposes.

5.3     *Treatment of Allowed Class 3 Claims (General Unsecured Claims).*

(a)     Class 3 – Allowed General Unsecured Claims. On the Effective Date, unless otherwise agreed by a holder of an Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall become entitled to receive, on account of such Allowed General Unsecured Claim, its Ratable Proportion of distributions from the Liquidating Trust as provided by this Plan, the Liquidating Trust Agreement, and the Settlement Agreement. Pursuant to the Settlement Agreement, Francolin has agreed that (1) one-half of the distributions from the Liquidating Trust shall be distributed ratably on account of all Allowed General Unsecured Claims, excluding the Francolin Prepetition Claim, and (2) one-half of the distributions from the Liquidating Trust shall be distributed ratably on account of all Allowed General Unsecured Claims, including the Francolin Prepetition Claim.

(b)     Class 3 is Impaired under the Plan, and holders of Class 3 General Unsecured Claims shall be entitled to vote to accept or reject the Plan.

5.4      *Treatment of Allowed Class 4 Interests.*

(a)      The holders of Interests shall receive no Distributions of any kind under the Plan in respect of those Interests.  The Interests in each of the Debtors shall be deemed cancelled and extinguished on the Effective Date.

(b)      Class 4 is Impaired under the Plan, and holders of Class 4 Interests shall be deemed to have rejected the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means for implementation of this Plan.

6.1      *The Liquidating Debtor*

(a)      <u>Existence of Liquidating Debtor</u>. Except as otherwise provided in the Plan, the Liquidating Debtor will exist after the Effective Date as a consolidated entity, with all of the powers of a corporation or other business form under applicable law in the jurisdiction in which the Liquidating Debtor is incorporated or otherwise formed and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan only until the filing of articles of dissolution with the appropriate filing authority.  To the extent that GMI Tradeco or any other Debtor organized under a foreign jurisdiction requires a formal wind-down under the laws of Cyprus or such other foreign jurisdiction, the Liquidating Debtor will do so.

(b)      <u>Debtors' Board of Directors; Wind-Down and Dissolution</u>. The members of the Board of Directors existing immediately prior to the Effective Date shall be deemed terminated without cause as of the Effective Date. The Liquidating Trustee shall be elected to act in the stead of the Board of Directors post-Effective Date to ensure that the Liquidating Debtor winds-down its operations in the most effective and efficient manner and complies with its obligations and duties under the Plan. Once the Liquidating Debtor has completed the wind-down of its business, the Liquidating Trustee shall dissolve the Liquidating Debtor under applicable non-bankruptcy law. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust as provided in Section 6.4 of this Plan, the Liquidating Debtor shall be deemed dissolved, all Securities of and equity Interests in the Liquidating Debtor shall be fully, finally and irrevocably cancelled for no consideration, and its business shall be wound up without any further action by its former or existing shareholders, officers, employers or directors and the Liquidating Trustee is authorized on behalf of the Liquidating Debtor, to make, execute, acknowledge and file all necessary or appropriate certificates or other documents with the appropriate governmental unit or agency and take any other action necessary or appropriate to effect such dissolution and wind-up the Liquidating Debtor and to withdraw the Liquidating Debtor from qualification in any state where it is qualified to do business, including without limitation the execution and filing of certifications of dissolution and payment of any associated filing fees and state taxes and the filing of any tax returns deemed necessary or appropriate (and

the payment of related taxes) on behalf of the Liquidating Debtor. In this regard, the notices of the filing of these Chapter 11 Cases and this Plan to creditors, the opportunity provided to creditors to file proofs of claims in these bankruptcy Chapter 11 Cases and the provisions for payments to creditors provided under this Plan shall be deemed to constitute and effectuate the dissolution and winding-up of the Liquidating Debtor's business as contemplated under applicable non-bankruptcy law for dissolved corporations without any further action or notice by (i) the Debtors or the Liquidating Debtor, their former or existing shareholders, officers, directors, representatives or employees, or (ii) the Liquidating Trustee. All applicable regulatory or governmental units or agencies shall accept any such certificates or other documents filed by the Liquidating Trustee and shall take all steps necessary or appropriate to allow and effect the prompt dissolution and/or winding-up of the Liquidating Debtor as herein provided.

### 6.2    *Matters Relating to the Liquidating Trust*

The Liquidating Trust will be created and governed as of the Effective Date, or as soon as reasonably practical thereafter.

### 6.3    *Execution and Ratification of Trust Agreement*

The Liquidating Trust Agreement, once executed by all necessary parties thereto, shall be deemed to have been ratified by each holder of a Claim and such holders shall be bound by the terms of the Liquidating Trust Agreement.

### 6.4    *Transfer of Liquidating Trust Assets*

(a)    All property of the Estates constituting the Liquidating Trust Assets shall be conveyed and transferred by the Debtors or Liquidating Debtor to the Liquidating Trust on the Effective Date, free and clear of all interests, Claims, Liens and encumbrances. The proceeds of the Liquidating Trust Assets shall be shared with holders of Allowed Claims as set forth in the Plan, the Liquidating Trust Agreement, and the Settlement Agreement.

(b)    Professional Fee Reserve. The Professional Fee Reserve will be in an amount not to exceed $960,000, of which $680,000 shall be allocated to the Debtor Professional Fee Reserve and $280,000 shall be allocated to the Creditors' Committee Professional Fee Reserve, as applicable; provided, however, that the foregoing amounts funded in the Professional Fee Reserve shall each be reduced by any amounts paid to such professionals during the pendency of the Chapter 11 Cases under any interim compensation orders of the Court or otherwise, and in addition to amounts funded by the Debtors held in retainer by such professionals.

(c)    Liquidating Trust Administrative Expenses Reserve. The Liquidating Trustee shall establish the Liquidating Trust Administrative Expenses Reserve in an amount, with adjustment from time to time, in the Liquidating Trustee's discretion, with the consent of the Liquidating Trust Advisory Committee.  If not all of the Creditors' Committee Professional Fee Reserve or Debtor Professional Fee Reserve is utilized, any unused portions of the Creditors' Committee Professional Fee Reserve or Debtor Professional Fee Reserve shall be transferred to the Liquidating Trust Administrative Expenses Reserve; provided, further, that if not all of the

Liquidating Trust Administrative Expenses Reserve is utilized, any unused portions of the Liquidating Trust Administrative Expenses Reserve shall be distributed to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan, the Liquidating Trust Agreement, and the Settlement Agreement.

### 6.5     *Execution of Documents and Corporate Action*

The Debtors shall deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Plan on the Effective Date (or as soon as reasonably practicable thereafter). The Liquidating Trustee, or the respective designees of the Debtors, are authorized (i) to execute on behalf of the Debtors, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or on the Effective Date that may be necessary to consummate the Plan, and (ii) to undertake any other action on behalf of the Debtors to consummate the Plan. Each of the matters provided for under the Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of any Debtors will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtors.

### 6.6     *Amendment of the Debtors' Governance Documents*

The Debtors' articles of incorporation and bylaws (or analogous governance documents) shall, to the extent required under Bankruptcy Code section 1123(a)(6), be amended consistent with the Plan and all necessary action shall be taken to provide for such provisions, terms, and conditions necessary to comply, conform with, and implement the terms, conditions, and requirements of the Plan.

### 6.7     *Termination of the Creditors' Committee*

Upon the Effective Date, the Creditors' Committee shall dissolve, and their members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases. The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date. The Creditors' Committee Professionals may be retained by the Liquidating Trust.

### 6.8     *Implementation of Settlement Agreement; Rejected Contracts.*

(a)     Implementation of Settlement Agreement.     The Settlement Agreement and the other Settlement Documents which resolved the Claims and Causes of Action between Francolin, affiliates of Francolin, and the Debtors' estates are incorporated herein in their entirety and made a part of the Plan. The Debtors' Claims and Causes of Action against Francolin were investigated and fully resolved by the Creditors' Committee, acting on behalf of the Debtors' estates, and Francolin. The Settlement Agreement prescribes the treatment of Francolin Prepetition Claim and other General Unsecured Claims in these Chapter 11 Cases and includes the Settlement Releases, which were executed and effective as of March 2, 2016. The

Francolin Prepetition Claim and the other General Unsecured Claims are treated hereunder in a manner consistent with the Settlement Agreement.

(b)   Treatment of Rejected Contracts.   All Executory Contracts (other than those previously rejected pursuant to an order of the Bankruptcy Court) shall be deemed rejected on the Effective Date or such other date as may be agreed to by the Debtors or Liquidating Debtor and the counterparties thereto or ordered by the Bankruptcy Court, and the Debtors or Liquidating Debtor and respective counterparties shall be relieved of any further obligation to perform under such agreements.   Rejected Contract counterparties who do not oppose this proposed treatment by opposing confirmation of the Debtors' Plan by filing and serving a written objection with the Bankruptcy Court in accordance with the Bankruptcy Code, Bankruptcy Rules and local rules and/or orders of the Bankruptcy Court shall be deemed to have consented to rejection of such Executory Contract.

(c)   Approval of Rejections.   This Plan shall constitute a request pursuant to Bankruptcy Code §§1123(b)(2) and 365(a) and the Confirmation Order (except as otherwise provided therein) shall constitute an order of the Bankruptcy Court approving the rejection by the Debtors or Liquidating Debtor of all Executory Contracts that have not otherwise been rejected or assumed by order of the Court.

(d)   Bar Date for Rejection Damages.   If the rejection of a Rejected Contract gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be classified as a Class 3 General Unsecured Claim; provided, however, that any Claim arising from the rejection of a Rejected Contract pursuant to this Section 6.8 herein shall be forever barred and shall not be enforceable against the Debtors, the Liquidating Debtor, the Liquidating Trust, their affiliates, their successors, estates, or their properties, unless a proof of Claim is Filed and served on the Debtors or the Liquidating Debtor by the Rejection Claims Bar Date.

6.9     *Approval of Agreements.*

The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Documents, Liquidating Trust Agreement, and all transactions contemplated by this Plan. Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions and authorization for the Debtors or the Liquidating Debtor, as appropriate, to execute and deliver each of the Plan Documents.

6.10    *Distributions.*

(a)   The Liquidating Trust shall make Distributions, as applicable, to the holders of Allowed Claims on the terms set forth in Articles III-VI of the Plan and the Liquidating Trust Agreement.

(b)   The Liquidating Trustee shall not be required to make any interim Distributions in an amount less than $100.00; provided that any such payments shall be withheld until the final Distribution. Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be required to make any final distributions in an amount less than $25.00.

(c)      At the election of the Liquidating Trust, any Cash payment to be made pursuant to this Plan may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(d)      If, immediately prior to the dissolution of the Liquidating Trust, there remains an undistributable balance, such remaining funds shall be donated to The Mission to Seafarers, NYC Bankruptcy Assistance Project, or the Anne Moore Foundation.

6.11      *Cancellation and Surrender of Existing Debt Instruments, Interests and other Securities.*

Upon the Effective Date, all funded debt instruments, the Interests and any options, warrants, calls, subscriptions, or other similar rights or other agreements or commitments, contractual or otherwise, obligating the Debtors or Liquidating Debtor to issue, transfer, or sell any Interest, shall be canceled and the holders thereof shall have no rights by reason thereof, and such instruments shall evidence no rights, except the right to receive the Distributions, if any, to be made to holders of such instruments under this Plan.

Upon the Effective Date and the repayment in full of all then outstanding DIP Claims in accordance with Section 3.3, (a) the DIP Loan Documents and all of the commitments, obligations, liabilities, covenants and agreements under the DIP Loan Documents shall be automatically terminated and canceled and have no further force and effect, and (b) the DIP Lender shall have no further duties, obligations or liabilities owing to the Debtors arising out of or relating to the DIP Loan Documents.

Upon the Effective Date, to the extent that the Escrowed Funds have not previously been disbursed, the Escrow Agent shall be authorized to disburse the entire amount of the Escrowed Funds to the DIP Lender.  Upon the disbursement of the entire amount of the Escrowed Funds by the Escrow Agent, the Escrow Agreement shall automatically terminate, and the Escrow Agent shall be (i) deemed to have fulfilled all of its obligations under the Escrow Agreement, and (ii) released of and from any and all liability under the Escrow Agreement; provided, however, that the provisions of Section 4 of the Escrow Agreement shall survive the termination of the Escrow Agreement.

6.12      *Release of Liens and Perfection of Liens.*

Except as otherwise provided in the Plan, any Plan Document or the Confirmation Order, each holder of a DIP Claim Lien, a Miscellaneous Secured Claim Lien or any other Secured Claim Lien or judgment Lien shall be deemed to release such Liens and shall execute such documents and instruments as the Liquidating Debtor or Liquidating Trustee reasonably requests to evidence such Claim holder's release of such property or Lien; provided, that the Liquidating Debtor or the Liquidating Trust shall bear all out-of-pocket fees, costs, and expenses, including all filing and recording fees and fees of local counsel, related to the release of such property or Lien.

On or prior to the Effective Date or as soon as reasonably practicable thereafter, the Debtors, Liquidating Debtor, or Liquidating Trustee, as applicable, may take all actions as may

be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

6.13 *Objections.*

Objections, if any, to the allowance of Claims (excluding objections to the allowance of Administrative Expenses), other than Claims that have been previously Allowed or are Allowed pursuant to this Plan may be Filed by the Liquidating Debtor or the Liquidating Trust, at any time on or before the Claim Objection Deadline. The "Claim Objection Deadline" shall be the later of (a) the 120th day following the Effective Date, unless such period is extended by order of the Bankruptcy Court, (b) thirty (30) days after the Filing of the proof of such Claim to which the objection is directed or (c) such other date set by order of the Bankruptcy Court (the application for which may be made on an *ex parte* basis). Any such objection shall be filed and served in accordance with the Bankruptcy Code, the Bankruptcy Rules and the local rules of the Bankruptcy Court.

6.14 *Amendments to Claims; Claims Filed After the Confirmation Date.*

Except as otherwise provided in this Plan or an order of the Bankruptcy Court, after the Confirmation Date, no proof of Claim may be Filed or amended except to decrease the Face Amount thereof of such Claim. Unless otherwise provided for herein or order of the Bankruptcy Court, any new or amended Claim Filed after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtors, Liquidating Debtor, or Liquidating Trust.

6.15 *Reserves and Estimations.*

(a) Disputed Claims Reserve.

(i) In determining the amount of Distributions to be made under the Plan to the holders of Allowed Claims, the Liquidating Trustee shall establish the Disputed Claims Reserve. The Liquidating Trustee shall distribute to and maintain in the Disputed Claims Reserve Cash that would otherwise be distributable to holders of Disputed Claims, assuming such Disputed Claims would be Allowed in the Face Amount of such Claims. Disputed Claims rendered duplicative as a result of the consolidation of the Debtors shall only be counted once for purposes of establishing the Disputed Claims Reserve.

(ii) In determining the Face Amount of Disputed Claims in accordance with the Plan, the Liquidating Trustee may rely on the Debtors' estimates as to Disputed Claims and will have no liability therefor in the absence of bad faith or gross negligence. As Disputed Claims are resolved, the Liquidating Trustee shall make adjustments to the Disputed Claims Reserve. Except as otherwise agreed by the relevant parties, the Liquidating Trustee shall not be required to (a) make any partial payments or partial distributions on account of a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order or (b) make any distributions on account of an Allowed Claim of any Liquidating Trust Beneficiary that holds both an Allowed Claim and a Disputed Claim, unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order.

(b)    Claim Estimates.

Upon a request for estimation by the Debtors, the Liquidating Debtor, or Liquidating Trust, the Bankruptcy Court will determine what amount of Cash from the initial and subsequent Distributions is sufficient to reserve on account of any Disputed Claim not otherwise treated in the Plan, pursuant to § 502 or other applicable law, in which event the amount so determined will be deemed the Allowed amount of such Disputed Claim for purposes of this Plan, or, in lieu thereof, the Bankruptcy Court will determine the maximum amount for such Disputed Claim, which amount will be the maximum amount in which such Claim may ultimately be Allowed, if such Claim is Allowed in whole or in part.   If the Debtors, the Liquidating Debtor, or the Liquidating Trust elect not to request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is liquidated, the Liquidating Debtor or the Liquidating Trust, as applicable, will reserve Cash based on the Face Amount of such Claim until the Claim is Allowed by an order of the Bankruptcy Court, at which time the reserve amount pending a Final Order may be the amount so Allowed.

6.16    *Undeliverable or Unclaimed Distributions.*

(a)    If a holder of an Allowed Claim fails to negotiate a check issued to such holder pursuant to this Plan within ninety (90) days of the date such check was forwarded to such holder, the Liquidating Trust shall issue a "stop payment order" for that non-negotiated check. The amount attributable to that non-negotiated check shall be deemed vested in the Liquidating Trust, and the payee of such check and holder of such Claim shall be deemed to have no further Claim and will not participate in any further Distributions under this Plan.

(b)    If a Distribution under this Plan to any holder of an Allowed Claim is returned to the Liquidating Trust due to an incorrect address and such holder does not present itself within ninety (90) days of the date such check was forwarded to said holder (if the Liquidating Trustee with reasonable diligence can identify a correct address), the amount of Cash attributable to such check will be deemed vested in the Liquidating Trust, and the payee of such check and holder of such Claim shall be deemed to have no further Claim and will not participate in any further Distributions under this Plan

6.17    *Transmittal of Distributions and Notices.*

(a)    Any property or notice other than Cash Distributions which an Entity is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity at the address indicated on any notice of appearance Filed by that Entity or his authorized agent prior to the Effective Date.   If no notice of appearance has been Filed, notice shall be sent to the address indicated on a properly Filed proof of Claim or, absent such a proof of Claim, the address that is listed on the Schedules for that Entity.   The date of Distribution shall be the date of mailing, and property distributed in accordance with this Section shall be deemed delivered to such Entity regardless of whether such property is actually received by that Entity.

(b)    A holder of a Claim or Interest may designate a different address for notices and Distributions by notifying the Liquidating Trustee of that address in writing.   The

Page 25

new address shall be effective upon receipt by the Debtors or the Liquidating Debtor, as applicable.

6.18    *Withholding Taxes.*

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.   All Entities holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

6.19    *Retention of Rights to Pursue Causes of Action.*

Pursuant to § 1123(b)(3), the Liquidating Trust (as successor to the Debtors' and Liquidating Debtor's Estates) shall retain and have the exclusive right to enforce against any Entity any and all Causes of Action of the Debtors or their Estates (including, without limitation, all Chapter 5 Causes of Action) that arose before the Effective Date, including all Causes of Action of a trustee and a debtor in possession under the Bankruptcy Code, other than those expressly released or compromised as part of or pursuant to the Settlement Agreement, the Settlement Documents, the Plan, the Confirmation Order, or other order of the Bankruptcy Court.  The Causes of Action retained by the Liquidating Debtor include, without limitation, all Causes of Action listed on Exhibit C to the Disclosure Statement.

**ARTICLE VII**
**THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE**

7.1    *The Liquidating Trust*

(a)    The Liquidating Trust, duly organized under the laws of the State of New York, is created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making the Distributions pursuant to provisions of the Plan and the Liquidating Trust Agreement, and the Liquidating Trust is not otherwise authorized to engage in any trade or business. The beneficiaries of the Liquidating Trust, who will be treated as the grantors and deemed owners for federal income tax purposes, are the holders of Allowed Claims in Classes 1, 2, and 3. The Liquidating Trustee shall file federal income tax returns for the Liquidating Trust as a grantor trust pursuant to § 671 of the Internal Revenue Code of 1986, as amended, and the Treasury Tax Regulations promulgated thereunder.

(b)    The parties shall not take any position on their respective tax returns or with respect to any other matter related to taxes that is inconsistent with treating the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance to the contrary from the Internal Revenue Service.

7.2    *Funding of Res of Trust*

(a)    To fund the Liquidating Trust, all of the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust, and the Liquidating Trust shall be in possession of, and have title to, all the Liquidating Trust Assets, as of the Effective Date. The

Liquidating Trustee, as trustee of the Liquidating Trust shall be substituted as the plaintiff, defendant, or other party in all lawsuits regarding Causes of Action pending in which any of the Debtors or the Creditors' Committee is the plaintiff as of the Effective Date. The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to this Plan and the Confirmation Order and shall be effective upon the Effective Date. The conveyance of the Liquidating Trust Assets to the Liquidating Trust shall be free and clear of all Liens, Claims or other encumbrances. Upon the Effective Date, the Liquidating Trust shall also be deemed to have taken (a) an assignment of all Causes of Action against third parties for obligations or claims existing on or created by virtue of the Effective Date, unless expressly released in this Plan, and (b) an assignment, bill of sale, deed and/or release covering all other Liquidating Trust Assets to the extent necessary to effect the transfer and assignment of such Liquidating Trust Assets. The Liquidating Trustee may present such orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Liquidating Trust. Such Orders may be presented without further notice other than as has been given in this Plan.

(b)     For all federal and applicable state and local income tax purposes, all Persons (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries as (a) a transfer of the Liquidating Trust Assets directly to the Liquidating Trust Beneficiaries followed by (b) the transfer of the Liquidating Trust Assets by the Liquidating Trust Beneficiaries to the Liquidating Trust. The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Liquidating Trust Beneficiaries will be treated as the grantors and deemed owners of their allocable portion of the Liquidating Trust Assets for the federal income tax purposes. The fair market value of the portion of the Liquidating Trust Assets that is treated for U.S. federal income tax purposes as having been transferred to each Liquidating Trust Beneficiary, as described in the preceding paragraph, will be determined by the Liquidating Trustee, and all parties (including, without limitation, the Liquidating Trustee and the Liquidating Trust Beneficiaries) must utilize such fair market values determined by the Liquidating Trustee for federal and applicable state and local income tax purposes.

(c)     The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidating Trust Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust during the applicable taxable period. Such allocation will be binding on all parties for federal and applicable state and local income tax purposes, and the parties will be responsible for the payment of any federal, state and local income tax due on the income and gain so allocated to them.

7.3     *Execution and Ratification of Trust Agreement*

The Liquidating Trust Agreement shall be deemed to have ratified by each holder of Allowed Claims in Classes 1, 2, and 3 and such holders shall and become bound by the terms of the Liquidating Trust Agreement.

7.4      *The Liquidating Trustee*

The Liquidating Trustee shall be appointed in agreement among the Creditors' Committee (or the Bankruptcy Court if such parties cannot mutually agree on the appointment of the Liquidating Trustee), and shall be subject to approval by the Bankruptcy Court. The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B). Matters relating to the appointment, removal and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee shall be set forth in the Liquidating Trust Agreement, provided that the Liquidating Trust Agreement shall authorize the Liquidating Trust Advisory Committee, in its sole discretion, to remove the Liquidating Trustee at any time. The Liquidating Trustee shall be required to perform his or her duties as set forth in this Plan and the Liquidating Trust Agreement.

7.5      *Liquidating Trust Advisory Committee*

The initial members of the Liquidating Trust Advisory Committee shall be appointed in accordance with the Liquidating Trust Agreement.  Francolin shall have the right to appoint one representative to the Liquidating Trust Advisory Committee.

7.6      *Retention of Professionals*

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties, in accordance with the Plan, the Liquidating Trust Agreement, and the Confirmation Order. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business, first, from the Liquidating Trust Administrative Expenses Reserve and, second, upon approval of the Liquidating Trust Advisory Committee, from the Liquidating Trust Assets, and shall not be subject to the approval of the Bankruptcy Court. Professionals of, among others, the Debtors and the Creditors' Committee, shall be eligible for retention by the Liquidating Trustee, and former employees of the Debtors shall be eligible for retention by the Liquidating Trust and Liquidating Trustee.

7.7      *Compensation of the Liquidating Trustee*

The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be as provided in the Liquidating Trust Agreement. The payment of the fees of the Liquidating Trustee shall be made by the Liquidating Trust, first, from the Liquidating Trust Administrative Expenses Reserve and, second, upon approval of the Liquidating Trust Advisory Committee, from the Liquidating Trust Assets.

7.8     *Liquidating Trust Expenses*

Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from the Liquidating Trust thereunder (including the reimbursement of reasonable expenses) shall be a charge against the Liquidating Trust Administrative Expenses Reserve remaining from time to time in the hands of the Liquidating Trustee and second, upon approval of the Liquidating Trust Advisory Committee, from the Liquidating Trust Assets. Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval.

7.9     *Liability; Indemnification*

The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

7.10    *Preparation of Final Tax Returns*

The Liquidating Trustee shall be responsible for preparing and filing all tax returns required to be filed by any of the Debtors.

7.11    *Termination*

The Liquidating Trust shall terminate on the earliest of the following dates:

(a)     the date that all of the Liquidating Trust Assets have been liquidated and the proceeds distributed to the Liquidating Trust Beneficiaries as provided in the Plan and the Liquidating Trust Agreement;

(b)     the date that the Bankruptcy Court or another court of competent jurisdiction enters a final order authorizing the termination of such Liquidating Trust; or

(c)      three (3) years after the Effective Date.

Notwithstanding the foregoing, in the event the Liquidating Trustee shall have been unable, after reasonable efforts, to liquidate or otherwise dispose of the assets of the Liquidating Trust within the initial three (3) year term after the Effective Date, then the Liquidating Trustee shall have the right, upon the approval of the Liquidating Trust Advisory Committee, to extend the term of such Liquidating Trust, subject to the Bankruptcy Court entering an order approving such extension no later than six (6) months from the beginning of each such extended term, for successive three (3) year renewal terms until the assets of such Liquidating Trust have been sold or otherwise disposed of in fulfillment of the purpose of such Liquidating Trust.  The term of the Liquidating Trust shall in no event exceed fifteen (15) years after the Effective Date.

7.12      *Register of Liquidating Trust Interest*

The Liquidating Trust will not issue certificates or other instruments as evidence of ownership of beneficial interests in the Liquidating Trust. The Liquidating Trustee shall maintain a registry of the beneficial interests in the Liquidating Trust.

7.13      *Transferability of Interests in Liquidating Trust*

In accordance with the terms of the Liquidating Trust, the Liquidating Trust Interests shall be uncertificated and shall be non-transferable except upon death or by operation of law. holders of Liquidating Trust Interests shall have no voting rights with respect to such Liquidating Trust Interests.

7.14      *Exclusive Jurisdiction of the Bankruptcy Court to Hear Matters Relating to the Liquidating Trust*

Notwithstanding anything to the contrary herein, the Liquidating Trust Beneficiaries are deemed to irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court with respect to any action or proceeding arising out of or relating to the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust Agreement and is further deemed to unconditionally waive any right to a trial by jury in any such action or proceeding.

### ARTICLE VIII
### RELEASES AND INDEMNIFICATION

8.1      *Releases*.

(a)      *Except as otherwise specifically provided by the Plan, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date) of (i) all Claims and Causes of Action against, liabilities of, liens on, obligations of and Interests in the Debtors, the Liquidating Debtor, the Liquidating Trust and the assets and properties of the Debtors, the Liquidating Debtor or the Liquidating Trust, whether known or unknown, and (ii) all Causes of Action (whether known or unknown, either directly or derivatively through any Debtor or the Liquidating Debtor) against, Claims (as defined in § 101 of the Bankruptcy Code) against,*

Page 30

*liabilities (as guarantor of a Claim or otherwise) of, Liens on the direct or indirect assets and properties of, and obligations of successors and assigns of, the Debtors, the Liquidating Debtor, the Liquidating Trust based on the same subject matter as any Claim or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any Claim, in each case regardless of whether a proof of Claim or Interest was Filed, whether or not Allowed and whether or not the holder of the Claim has voted on the Plan.*

(b)      *On the Effective Date, the Debtors and the Liquidating Debtor shall be deemed to release unconditionally, and hereby are deemed to release unconditionally on such date (i) each officer, director, employee, consultant, financial advisor, crisis and turnaround manager, attorney, accountant and other representatives of the Debtors who served in such capacities following the Petition Date and in the case of a professional, whose retention was authorized and approved by the Bankruptcy Court, and their respective directors, officers, members, owners, agents, employees and subcontractors, (ii) the Entities serving on the Creditors' Committee and, solely in their capacity as members or representatives of the Creditors' Committee, each consultant, attorney, accountant or other representative or member of the Creditors' Committee, and (iii) the DIP Lender and the Escrow Agent, and solely in their capacity as representatives of such, each of their respective current and former officers, directors, trustees, partners, employees, members, agents, advisors, managers, affiliates, attorneys, shareholders, controlling persons, underwriters or investment bankers, accountants, consultants, or any other professional persons or representatives (the Entities specified in clauses (i) through (iii) are referred to collectively as the "Released Parties"), from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon or related to any act or omission, transaction, event or other occurrence taking place on or at any time prior to the Effective Date in any way relating to the Debtors, the Liquidating Debtor, the Chapter 11 Cases, the Plan, the Disclosure Statement, the Confirmation Order, any Plan Document, the DIP Loan Documents, the Settlement Documents, or the Escrow Agreement, except that (i) this release is not intended to and shall not, release any party that was an officer, director, employee, or accountant of the Debtors prior to the Petition Date and who resigned their position or terminated their employment prior to or shortly after the Petition Date, or was not retained as a Professional and (ii) no Released Party shall be released from acts or omissions which are (x) the direct result of such Released Party's criminal misconduct, intentional fraud, or gross negligence as determined by Final Order of a court of competent jurisdiction or (y) covered claims under any errors or omissions, or director and officer insurance policies.*

(c)      The foregoing release provisions are an integral part of this Plan and are essential to the Plan's implementation.  If and to the extent that the Bankruptcy Court concludes that the Plan cannot be confirmed with any portion of the foregoing releases, the Debtors, with the consent of the Creditors' Committee and Francolin, reserve the right to amend the Plan so as to give effect as much as possible to the foregoing releases, or to delete them.

8.2     *Indemnification.*

*The Debtors and their Estates shall, to the fullest extent permitted by law, indemnify and hold harmless their managers, officers, agents, representatives, attorneys, crisis and turnaround managers, professionals and employees that are Released Parties under Section 8.1 (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to, attorneys' fees and costs, arising out of or due to their actions or omissions with respect to the implementation or administration of the Plan; provided, however, the foregoing provisions of this Section 8.2 shall have no effect on the liability of any Entity that results from such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.*

## ARTICLE IX
## CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE

9.1     *Conditions to Occurrence of the Effective Date.*

For each Debtor, the following are conditions precedent to the occurrence of the Effective Date:

(a)     The Confirmation Order shall have been entered in form and substance satisfactory to the Debtors, Liquidating Debtor, Francolin, and the Creditors' Committee and, unless waived by the Debtors or Liquidating Debtor, shall have become a Final Order.

(b)     All authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained.

(c)     The Debtors, Liquidating Debtor, and the Creditors' Committee shall have approved each of the Plan Documents, and such Plan Documents shall have been executed in accordance with their terms.

(d)     The Liquidating Trust Agreement shall have been executed and the Liquidating Trust shall have been formed;

(e)     No injunction or regulatory order shall exist which could prohibit or interfere in any manner with the transfer to or assumption by the Liquidating Debtor of any franchises or licenses.

9.2     *Waiver of Conditions to Occurrence of the Effective Date.*

The Debtors or the Liquidating Debtor may waive one or more of the conditions to the occurrence of the Effective Date with the consent of the Creditors' Committee and Francolin.

**ARTICLE X**
**EFFECTS OF PLAN CONFIRMATION**

10.1     *Binding Effect.*

Upon Confirmation and pursuant to § 1141(a), the provisions of the Plan shall bind the Debtors, Liquidating Debtor, the Creditors' Committee, Francolin, and all Creditors and Interest holders, including their successors and assigns, whether or not they vote to accept the Plan.  The Claims and Distributions under the Plan are in full and complete settlement of all Claims and Interests.

10.2     *Injunction*.

*Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that all Entities who have held, hold or may hold Claims against or Interests in any Debtors are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidating Debtor, the Liquidating Trust, the Creditors' Committee, any member of the Creditors' Committee, the DIP Lender, the Escrow Agent, any of their respective professionals, or any direct or indirect successor in interest to the Debtors; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtors, the Liquidating Debtor, the Liquidating Trust, the Creditors' Committee, any member of the Creditors' Committee, the DIP Lender, the Escrow Agent, any of their respective professionals, or any direct or indirect successor in interest to, the Debtors; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidating Debtor, the Liquidating Trust, the Creditors' Committee, any member of the Creditors' Committee, the DIP Lender, the Escrow Agent, any of their respective professionals, or any successor in interest to, any of the foregoing Entities; (d) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any obligation due the Debtors, the Liquidating Debtor, the Liquidating Trust, the Creditors' Committee, any member of the Creditors' Committee, the DIP Lender, the Escrow Agent, any of their respective professionals, or any successor in interest to the Debtors; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan or Confirmation Order.  Furthermore, except as otherwise expressly provided in the Plan or Confirmation Order, for the consideration described in the Plan, as of the Effective Date, all Entities who have held, hold or may hold claims released pursuant to Section 8.1 above or the Settlement Documents, whether known or unknown, and their respective agents, attorneys, representatives and all others acting for or on their behalf, shall be permanently enjoined on and after the Effective Date, with respect to any claim released pursuant to Section 8.1 above or the Settlement Documents, from (a) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any claim against any Released Party or the property of any Released Party; (b) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against*

*any Released Party or the property of any Released Party; (c) creating, perfecting or enforcing any encumbrance of any kind against any Released Party; (d) asserting any setoff or right of subrogation of any kind against any obligation due to any Released Party; and (e) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan and the Confirmation Order. In the event that any Entity takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this Section or Section 8.1 above or the Settlement Documents, then, upon notice to the Bankruptcy Court, the action or proceeding in which the claim of such Entity is asserted shall automatically be transferred to the Bankruptcy Court for enforcement of the provisions of this Section 10.2 and Section 8.1 above or the Settlement Documents.*

## ARTICLE XI
## ADMINISTRATIVE PROVISIONS

11.1     *Retention of Jurisdiction.*

Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)     to determine (i) any Disputed Claims and all related Claims accruing after the Confirmation Date including rights and liabilities under contracts giving rise to such Claims, (ii) the validity, extent, priority and nonavoidability of consensual and nonconsensual Liens and other encumbrances, (iii) preconfirmation tax liability pursuant to § 505, and (iv) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

(b)     to allow, disallow, estimate, liquidate or determine any Claim against the Debtors and to enter or enforce any order requiring the Filing of any such Claim before a particular date;

(c)     to approve all matters related to the rejection of any executory contract or unexpired lease of the Debtors pursuant to § 365 and Article VI hereof;

(d)     to determine requests for payment of Administrative Expenses entitled to priority under § 507(a)(1), including compensation of parties entitled thereto;

(e)     to resolve controversies and disputes regarding the interpretation and implementation of this Plan, any disputes relating to whether or not a timely and proper proof of Claim was Filed or whether a Disallowed Claim should be reinstated;

(f)     to implement the provisions of this Plan and entry of orders in aid of Confirmation and consummation of this Plan, including any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

(g)     to modify the Plan pursuant to § 1127;

(h)     to adjudicate any and all Causes of Action that arose in these Chapter 11 Cases preconfirmation or in connection with the implementation of this Plan, whether or not pending on the Confirmation Date, including without limitation, any remands of appeals;

(i)     to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(j)     to resolve controversies and disputes regarding the interpretation and implementation of the Settlement Documents consistent with the terms of such agreements and documents;

(k)     to resolve controversies and disputes regarding the interpretation and implementation of the Liquidation Trust Agreement and related documents consistent with the terms of such agreements and documents

(l)     to resolve any disputes concerning whether a person or entity had sufficient notice of the Chapter 11 Cases, the applicable Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(m)     to determine any and all applications, Claims, pending adversary proceedings and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims) in these Chapter 11 Cases;

(n)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(o)     to seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by § 1142;

(p)     to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(q)     to recover all assets of the Debtors and property of the Estate, wherever located, including any Chapter 5 Causes of Action;

(r)     to hear and resolve matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146;

(s)     to hear any other matter not inconsistent with the Bankruptcy Code;

(t)     to resolve any and all disputes or controversies relating to Distributions to be made, and/or reserves or escrows to be established, under this Plan;

(u)     to hear and determine all Causes of Action retained by the Liquidating Trust pursuant to Section 6.19 of the Plan;

(v)   to enter final decrees closing the Chapter 11 Cases;

(w)   to enforce the injunction granted under Section 10.2 of the Plan; and

(x)   to approve settlements relating to the above.

11.2   *Standing*

The jurisdiction retained by the Bankruptcy Court may be invoked by the Liquidating Trust, as successor holder of the property of the Debtors and the Liquidating Debtor and of the property of the Estate, notwithstanding any winding up or dissolution of the Debtors and/or the Liquidating Debtor.

11.3   *Cram Down.*

If all of the applicable requirements for Confirmation of the Plan are met as set forth in § 1129(a) except for subsection (8) thereof, the Debtors may request the Bankruptcy Court to confirm the Plan pursuant to § 1129(b), notwithstanding the requirements of § 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any Impaired Class that does not vote to accept this Plan as described in the Disclosure Statement.

11.4   *Modification of the Plan.*

The Debtors reserve the right to alter, amend or modify the Plan with the consent of the Creditors' Committee and Francolin prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, with the consent of the Creditors' Committee and Francolin, the Debtors may, upon order of the Bankruptcy Court, alter, amend or modify the Plan in accordance with § 1127(b), or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

11.5   *Set-offs.*

Except as otherwise provided in the Plan, agreements entered into in connection with the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Debtors, the Liquidating Debtor, or Liquidating Trust may, but will not be required to, setoff against any Claim and the Distributions made with respect to the Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights and Causes of Action of any nature that the Debtors or the Liquidating Debtor may hold against the holder of such Claim; *provided*, *however*, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtors, Liquidating Debtor, or Liquidating Trust, nor shall any provision of the Plan, constitute a waiver or release by the Debtors, Liquidating Debtor, or Liquidating Trust of any such claims, rights and Causes of Action that the Debtors, Liquidating Debtor, or Liquidating Trust may possess against such holder.  To the extent the Debtors, Liquidating Debtor, or Liquidating Trust fail to offset against a holder of a Claim and seek to collect a claim from the holder of such Claim after a Distribution to the holder of such Claim pursuant to the Plan, the Debtors, Liquidating Debtor, or Liquidating Trust shall be entitled to full recovery on its claim against the holder of such Claim.

11.6     *Compromise of Controversies.*

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of any such compromise or settlement, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Liquidating Debtor and the Estates.

11.7     *Acceptance by Secretary of State.*

The Confirmation Order shall be deemed to satisfy the requirements of any state or federal office or agency pertaining to the amendment, dissolution or termination of any of the Debtors.

11.8     *Withdrawal or Revocation of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan is revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no force or effect.

11.9     *Successors and Assigns.*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and assigns of such Entity.

11.10     *Governing Law.*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York.

11.11     *Notices.*

All notices, requests or demands for payments provided for in this Plan shall be in writing and shall be deemed to have been received, by mail, if addressed to:

(a)     The Debtors:

GMI
c/o Dean Marine Advisers
9 - 10 St. Andrew Square
Edinburgh
United Kingdom
EH2 2AF
Attn: Justin Knowles

Page 37

with copies to its counsel:

Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, TX  77002
Telephone:  (713) 276-5500
Facsimile:  (713) 276-5555
Attn:  John P. Melko

The Liquidating Trust

[Trustee contact information]

with copies to its counsel:

Faegre Baker Daniels LLP
600 E. 96th Street, Suite 600
Indianapolis, Indiana 46240
D: +1 317 569 4687
F: +1 317 237 8587
Attn: Jay Jaffe

Any of the above may, from time to time, change its address for future notices and other communications hereunder by Filing a notice of the change of address with the Bankruptcy Court.  Any and all notices given under this Plan shall be effective when received.

11.12    *No Admissions.*

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

11.13    ***Exculpation***.

*None of the Debtors, the Creditors' Committee, Francolin, the Escrow Agent, nor any of their respective current and former officers, directors, trustees, partners, employees, members, agents, advisors, managers, affiliates, attorneys, shareholders, controlling persons, underwriters or investment bankers, accountants, consultants, nor any other professional persons or representatives employed by any of them (collectively, the "Exculpated Persons"), shall have or incur any liability to any Entity for any act taken or omission made in connection with or related to the Chapter 11 Cases or formulating, negotiating, implementing, confirming or consummating the Plan, the Disclosure Statement, the Confirmation Order, any Plan Document, the DIP Loan Documents, the Settlement Documents, or the Escrow Agreement.  The Exculpated Persons shall have no liability to the Debtors, the Liquidating Debtor, any holder of a Claim, any holder of an Interest, any other party in interest in the Chapter 11 Cases or any other Entity for such actions taken or not taken, in connection herewith or with respect thereto, or arising out of their*

Page 38

*administration of the Plan or the property to be distributed under the Plan, in good faith, including, without limitation, failure to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan;* provided, however, *that that this provision shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.*

By: _____

Name:  Justin Knowles
Title:  Chief Restructuring Officer

8922687v.22

EXHIBIT B – List of Rejected Contracts

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Cape Century* [Dkt. No. 66];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Jia Da* [Dkt. No. 67];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V GMI Jane* [Dkt. No. 135];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Cape Providence* [Dkt. No. 136];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Cape Spencer* [Dkt. No. 137];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Dong-A Artemis* [Dkt. No. 138];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Primrose* [Dkt. No. 139]

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Sunrise* [Dkt. No. 140];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Cape Northville* [Dkt. No. 216];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Ecostar* [Dkt. No. 217];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Athinoula* [Dkt. No. 218];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Infinity* [Dkt. No. 219];

- *Order Approving Rejection of Executory Contract – Time Charter Contract for M/V Istria* [Dkt. No. 220].

List of Rejected New Build Contracts:

- *Order Approving Rejection of Ship Building Contract for M/V Lloyd with Tsuneishi Group (Zhoushan) Shipbuilding Inc.* [Dkt. No. 249];

Page 39

9329706v.7

- *Order Approving Rejection of Ship Building Contract for M/V Patrizia with Tsuneishi Group (Zhoushan) Shipbuilding Inc.* [Dkt. No. 250];

- *Order Approving Rejection of Executory Contract – Time Charter With I.M.S. Maritime S.A., Panama for the Vessel Currently Known as M/V "T.B.N." (Hull No. 1549) to be Constructed by Tsuneishi Shipbuilding Co., Ltd.* [Dkt. No. 251];

- *Order Approving Rejection of Executory Contract – Time Charter With Tangara Shipping, S.A., Panama for for the Vessel Currently Known as Hull No. S1557 to be Constructed by Tsuneishi Shipbuilding Co., Ltd.* [Dkt. No. 252];

- *Order Approving Rejection of Executory Contract – Time Charter For Two Vessels Currently Known as Hull No. 1710 and Hull No. 1711 to be Constructed by Imabari Shipbuilding Co., Ltd.* [Dkt. No. 253];

- *Order Approving Rejection of Executory Contract – Time Charter for M/V Christine With Kambara Kisen Co., Ltd.* [Dkt. No. 254];

- *Order Approving Rejection of Executory Contract – Bareboat Charter for M/V Edward With Pisces Shipping Pte. Ltd.* [Dkt. No. 255];

- *Order Approving Rejection of Executory Contract – Bareboat Charter for M/V Francesca With Draco Shipping Pte. Ltd.* [Dkt. No. 256];

- *Order Approving Rejection of Executory Contract – Bareboat Charter for M/V Stephanie With Cygnus Shipping Pte. Ltd.* [Dkt. No. 257];

- *Order Approving Rejection of Executory Contract – Bareboat Charter for M/V Tarita With Pegasus Shipping Pte. Ltd.* [Dkt. No. 258];

- *Order Approving Rejection of Executory Contract – Time Charter With Kumiai Navigation (Pte.) Ltd. for the Vessel Currently Known as NACKS 209BC Unit I* [Dkt. No. 259];  and

- *Order Approving Rejection of Executory Contract – Time Charter With Kumiai Navigation (Pte.) Ltd. for the Vessel Currently Known as NACKS 209BC Unit II* [Dkt. No. 260].

9329706v.7

EXHIBIT C – PRESERVATION OF CAUSES OF ACTION

The Plan preserves the following Causes of Action:

(a)      Preferences Under Section 547 of the Bankruptcy Code

Pursuant to section 547 of the Bankruptcy Code, a debtor may recover certain preferential transfers of property, including Cash, made while insolvent during the ninety days immediately prior to the filing of its bankruptcy petition with respect to preexisting debts to the extent the transferee received more than it would have in respect of the preexisting debt had the transferee not received the payment and had the debtor been liquidated under chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for a one-year preference period.

The Debtors have filed as part of their Statements of Financial Affairs a list of payments made to third parties and insiders during the applicable preferential payment time period, which are incorporated herein by reference for all purposes.

(b)      Fraudulent Transfers Under the Bankruptcy Code and Other Laws

Under sections 544 and 548 of the Bankruptcy Code and various state laws, a debtor may recover certain prepetition transfers of property, including the grant of a security interest in property, made while insolvent to the extent the debtor receives less than fair value for such property. In addition, avoidance actions exist under sections 544, 545, 549 and 553(b) of the Bankruptcy Code that allow a debtor to avoid and/or recover certain property.

(c)      Other Known Causes of Action

(i)      Claims Against Tsuneishi Group:  Any and all claims and Causes of Action, including, but not limited, to breach of contract, turnover, willful and knowing violations of the automatic stay and the Bankruptcy Court's stay order, with respect to the failure to return deposits in the amount of $6 million for the M/V Patrizia and $6 million for M/V Lloyd under certain New Build Contracts.

(ii)      Claims Against Kumiai Navigation (PTE) Ltd.:  Any and all claims and Causes of Action, including, but not limited to, breach of contract, willful and knowing violations of the automatic stay and the Bankruptcy Court's stay order, with respect to refusing to pay for the bunkers that remained on board after the vessel was "re-delivered" to Kumiai on September 21, 2015 in the amount of $409,563.90; improperly asserting a setoff right for its contract rejection damages claim; and improperly asserting a setoff right for administrative expenses claim.

(iii)      Claims Against Itiro Corporation:  A compromise, subject to Bankruptcy Court approval, has been negotiated; but, to date, Itiro has not provided comments or signed the settlement agreement.  If Itiro does not execute the settlement agreement to allow the Debtors sufficient time to obtain court approval of such settlement prior to the Effective Date of the Plan, any and all claims and Causes of Action that GMI has against Itiro, including, but not

Page 41

limited to, breach of contract, willful and knowing violations of the automatic stay and the Bankruptcy Court's stay order, with respect to Itiro's failure or refusal to pay charter hire in the amount of $270,000, will be transferred to the Liquidating Trust.

(d)     Other Causes of Action

The following types of Causes of Action, whether arising under or based on United States laws or any non-United States laws (including, but not limited to, English law):

- Any lawsuits for, or in any way involving, the collection of accounts receivable, lien foreclosures or any matter related to the Plan;

- Any actions against vessel owners, subcharterers, or assignees arising from various charter agreements relating thereto, including, but not limited to, actions relating to charterhire, freight, payment for bunker fuel or other vessel supplies, and other similar issues;

- Any litigation or lawsuit initiated by any of the Debtors that is currently pending, whether in the Bankruptcy Court, in arbitration or mediation, or any other court or tribunal;

- Any and all Causes of Action against any charter counterparty, vendor, or other party who has improperly asserted or taken action through setoff or recoupment; and

- Any and all actions, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtors' business operations.

Unless expressly released by the Plan, the Settlement Documents, the Confirmation Order, or by other order of the Bankruptcy Court, any and all such claims or Causes of Action against third parties are specifically reserved and will vest in or be transferred to the Liquidating Trust, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, preference actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignments of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt recharacterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of

Page 42

good faith, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.

For the avoidance of doubt, the Claims and Causes of Action set forth and preserved in this Exhibit C shall not include any Claims and Causes of Action released pursuant to the Settlement Agreement, the other Settlement Documents, the Plan, or the Confirmation Order.

9329706v.7

Exhibit D – Liquidating Trust Agreement

**GMI USA MANAGEMENT, INC. AND ITS AFFILIATED DEBTORS
LIQUIDATING TRUST AGREEMENT**

**Dated as of [_____] [__], 2016**

**TABLE OF CONTENTS**

ARTICLE I CREATION AND PURPOSE................................................................2
    **1.1**    **Creation.** ..............................................................................2
    **1.2**    **Purpose**...............................................................................2
    **1.3**    **Beneficiaries**......................................................................2

ARTICLE II LIQUIDATING TRUST ADVISORY COMMITTEE .......................2
    **2.1**    **Appointment; Composition**..............................................2
    **2.2**    **Duties**..................................................................................2
    **2.3**    **Powers**................................................................................3
    **2.4**    **Resignation**........................................................................3
    **2.5**    **Compensation and Expenses**............................................3
    **2.6**    **Lien**.....................................................................................3

ARTICLE III LIQUIDATING TRUSTEE............................................................4
    **3.1**    **Appointment**......................................................................4
    **3.2**    **Duties**..................................................................................4
    **3.3**    **Powers**................................................................................4
    **3.4**    **Consent of Advisory Committee**......................................5
    **3.5**    **Compensation**...................................................................5
    **3.6**    **Liquidating Trustee's Lien**...............................................5
    **3.7**    **Co-Liquidating Trustees or Separate Liquidating Trustees**. ...........................5

ARTICLE IV CONDUCT OF THE LIQUIDATING TRUSTEE AND ADVISORY
    COMMITTEE.................................................................................6
    **4.1**    **Exercise of Duties and Responsibilities**..........................6
    **4.2**    **Reliance on Documents, Statements, etc**..........................6
    **4.3**    **Indemnification of the Liquidating Trustee and the Advisory
        Committee**.........................................................................7

ARTICLE V NON-TRANSFERABILITY OF BENEFICIAL INTERESTS;
    INTERESTS BENEFICIAL ONLY; NO VOTING RIGHTS; SUCCESSORS .................7

ARTICLE VI ADMINISTRATION OF THE LIQUIDATING TRUST....................8
    **6.1**    **Right to Bring Causes of Action**. .....................................8
    **6.2**    **Settlement of Causes of Action and Disputed Claims**.....8
    **6.3**    **Right to File Claims**..........................................................9
    **6.4**    **Investment of Moneys**......................................................9
    **6.5**    **Fees and Expenses**............................................................9
    **6.6**    **Reports to Beneficiaries**...................................................9
    **6.7**    **Books and Records**...........................................................9
    **6.8**    **Compliance with Securities Laws**....................................9

ARTICLE VII TAX MATTERS .........................................................................10
    **7.1**    **Purpose and Intent of Liquidating Trust**.......................10
    **7.2**    **Tax Characterization**.....................................................10
    **7.3**    **Tax Reporting**.................................................................11

**7.4**    **Compliance with Tax Withholding Requirements.** ........................................12

ARTICLE VIII APPLICATION AND PRIORITY OF DISTRIBUTION OF
    LIQUIDATING TRUST FUNDS ...................................................................13
    **8.1**    **Money Held in Trust.** ..............................................................13
    **8.2**    **Right to Receive Distributions from the Liquidating Trust.** ...........13
    **8.3**    **Priority of Payment from the Liquidating Trust.** .............................14
    **8.4**    **Distribution Dates.** ...................................................................14
    **8.5**    **Interim Distributions.** ..............................................................14
    **8.6**    **Final Distribution.** ...................................................................14
    **8.7**    **Disputed Claims.** ......................................................................14
    **8.8**    **Unclaimed Distributions.** ..........................................................15
    **8.9**    **Delivery of Distributions:** .........................................................15
    **8.10**    **Third Party Disbursing Agent.** .................................................16

ARTICLE IX RESIGNATION AND REMOVAL OF THE LIQUIDATING
    TRUSTEE .................................................................................................16
    **9.1**    **Resignation.** ............................................................................16
    **9.2**    **Removal.** .................................................................................17
    **9.3**    **Successor Liquidating Trustee.** .................................................17

ARTICLE X TERMINATION AND DISCHARGE ...............................................17
    **10.1**    **Termination.** ..........................................................................17
    **10.2**    **Discharge.** .............................................................................17
    **10.3**    **De Minimus Balances Upon Trust Dissolution.** ............................17

ARTICLE XI MISCELLANEOUS ....................................................................18
    **11.1**    **No Third-Party Beneficiaries.** ..................................................18
    **11.2**    **Notices.** .................................................................................18
    **11.3**    **Execution of Documents.** ..........................................................18
    **11.4**    **Modification.** ..........................................................................18
    **11.5**    **Severability.** ...........................................................................18
    **11.6**    **Headings.** ...............................................................................18
    **11.7**    **Governing Law.** .......................................................................18
    **11.8**    **Conflict with the Plan.** .............................................................19
    **11.9**    **Enforcement and Administration.** ..............................................19
    **11.10**    **Counterparts.** .........................................................................19

ii

## GMI USA MANAGEMENT, INC. AND ITS AFFILIATED DEBTORS
## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the **"Agreement"**) is executed as of **[_____ __, 2016]**, by and among **[_____]**, as liquidating trustee under this Agreement (the **"Liquidating Trustee"**); the Official Committee of Unsecured Creditors duly appointed for these Cases (as defined below) (the **"Committee"**); GMI USA Management, Inc., Global Maritime Investments Cyprus Limited, Global Maritime Investments Holdings Cyprus Limited, GMI Resources (Singapore) Pte Limited, and Global Maritime Investments Vessel Holdings Pte Limited (each a **"Debtor"**, and collectively, the **"Debtors"**). Except as otherwise defined in this Agreement, and except as the context requires otherwise, the capitalized terms in this Agreement shall have the meaning ascribed to them in the Joint Plan of Reorganization of GMI USA Management, Inc. and its Affiliated Debtors and the Official Committee of Unsecured Creditors, dated as of **[_____ ___, 2016]** (as amended, modified or supplemented, the **"Plan"**). This trust may also be referred to as the "GMI USA Management, Inc. Liquidating Trust" or by employing words of similar meaning.

### RECITALS

**WHEREAS**, on September 15, 2015 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**) in United States Bankruptcy Court for the Southern District of New York (the **"Bankruptcy Court"**). The chapter 11 cases of the Debtors (the **"Cases"**) have been jointly administered under Case No. 15-12552;

**WHEREAS**, on October 8, 2015, the Committee was appointed and authorized to act as a representative of the unsecured creditors. The Debtors and the Committee are the proponents of the Plan;

**WHEREAS**, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan;

**WHEREAS**, on **[_____ ___, 2016]**, the Bankruptcy Court entered an order confirming the Plan (the **"Confirmation Order"**). A copy of the Plan and the Confirmation Order are attached hereto as **Exhibits A** and **B**, respectively;

**WHEREAS**, on the Effective Date, the Plan provides that all rights, title and interests of the Debtors and the Debtors' Estates in and to the Liquidating Trust Assets (whether existing as of the Effective Date or as of a later date), with no reversionary interest whatsoever therein of the Debtors shall become and comprise the GMI USA Management Liquidating Estates (the **"GMI USA Management Liquidating Estates"**). The Plan further provides that the Liquidating Trust Assets shall be administered through a liquidating trust established pursuant to the Plan. The Plan authorizes and appoints the Liquidating Trustee to receive, hold, administer and distribute the Liquidating Trust Assets for the benefit of the Beneficiaries (as defined below) and their successors and assigns as permitted for under the Plan and this Agreement; and

1

US.105729861.06

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors, the Committee and the Liquidating Trustee agree as follows:

## ARTICLE I
## CREATION AND PURPOSE

**1.1     Creation.**  The Debtors, pursuant to the terms of the Plan, hereby establish a trust estate (the **"Liquidating Trust"**) to hold, administer and distribute the rights, duties and assets of the GMI USA Management Liquidating Estates and all proceeds and profits therefrom, which are hereby granted to and deposited with the Liquidating Trustee.  The Liquidating Trustee accepts the GMI USA Management Liquidating Estates and shall hold the same in trust and administer the assets of The Liquidating Trust as provided under the Plan and this Agreement.

**1.2     Purpose**.  The Liquidating Trust shall be established solely for the purpose of holding and administering the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), all pursuant to the provisions of the Plan, with no objective to continue to or engage in the conduct of a trade or business.  The purpose of this Agreement is to set forth the rights, powers and duties of the Liquidating Trustee in receiving, holding and administering the Liquidating Trust as provided in this Agreement and in the Plan.  This Agreement also will set forth the rights, powers and duties of the Advisory Committee, as defined below, in administering certain aspects of the Liquidating Trust.

**1.3     Beneficiaries**.  All holders of Allowed General Unsecured Claims and, until such Claims are satisfied, the holders of other Allowed Claims to be paid by the Liquidating Trust under the Plan, are the beneficiaries of the Liquidating Trust (each is referred to as a **"Beneficiary"** and together the **"Beneficiaries"**).  The interest and priority of each Beneficiary shall be as provided in Article II of the Plan.

## ARTICLE II
## LIQUIDATING TRUST ADVISORY COMMITTEE

**2.1     Appointment; Composition**.  As of the Effective Date, pursuant to the Confirmation Order, the following are appointed and authorized under Section [___] of the Plan to act as the advisory committee for the Liquidating Trust (the **"Advisory Committee"**): Philip Wasling, Georgios Karamolegkos and Kate Murtagh.

The Advisory Committee shall have no more than three and no less than two members.  If any member resigns, a replacement shall be appointed pursuant to the procedures set forth in this Agreement.

**2.2     Duties**.  The Advisory Committee shall have the following duties with respect to the Liquidating Trust:

(a)     approve the compromise or settlement of any Disputed Claim, and the compromise, settlement, abandonment or dismissal of any Cause of Action, in each case as provided in the Plan and Section 3.4 of this Agreement;

2

US.105729861.06

(b)      consult with and advise the Liquidating Trustee on the administration of the Liquidating Trust;

(c)      approve amount and date of interim and final distributions of the Liquidating Trust;

(d)      approve retention of professionals; and

(e)      appoint successor trustees and members of the Advisory Committee as provided in the Plan and this Agreement.

**2.3      Powers**.  The Advisory Committee shall have the following powers with respect to the Liquidating Trust:

(a)      consent to certain settlements, transactions, and other actions of the Liquidating Trust as set forth in Section 3.4 of this Agreement;

(b)      authorize the appointment of successor liquidating trustees and members of the Advisory Committee as provided in the Plan and this Agreement;

(c)      approve amount and date of interim and final distributions of the Liquidating Trust; and

(d)      such other powers as are necessary to fulfill its duties as set forth in this Agreement.

Except as otherwise authorized under this Agreement, an affirmative vote from a majority of members present, but no less than a majority of the total members, is necessary for the Advisory Committee to take any action authorized under the Plan and this Agreement.

**2.4      Resignation**.  The members of the Advisory Committee may resign at any time by giving thirty (30) days' written notice to the Liquidating Trustee and other members of the Advisory Committee.  In the event of a resignation, the remaining members of the Advisory Committee shall appoint a successor member.

To qualify for appointment on the Advisory Committee a successor must hold an Allowed General Unsecured Claim and must not have voted to reject the Plan.  A successor member shall be appointed and authorized to act on the Advisory Committee upon accepting such appointment.

**2.5      Compensation and Expenses**.  The members of the Advisory Committee shall be reimbursed, without further order of the Bankruptcy Court, for all actual and necessary reasonable expenses in acting as a member of the Advisory Committee.

**2.6      Lien**.  The members of the Advisory Committee shall have a lien on all assets of the Liquidating Trust to secure reimbursement of their expenses.  The lien also shall secure the indemnification obligation of the Liquidating Trust to the members of the Advisory Committee as set forth in Section 4.3 of this Agreement.  The lien shall be *pari passu* with the first priority lien of the Liquidating Trustee granted under this Agreement.

3

US.105729861.06

## ARTICLE III
## LIQUIDATING TRUSTEE

**3.1    Appointment**.  On the Effective Date of the Plan, pursuant to the Confirmation Order, the Liquidating Trustee shall be appointed and authorized to act as the Liquidating Trustee under this Agreement, and by signing this Agreement, the Liquidating Trustee accepts such appointment all in accordance with the terms of the Plan and this Agreement.

**3.2    Duties**.  The Liquidating Trustee shall have the following duties with respect to the Liquidating Trust:

(a)    receive, hold, deposit and invest funds of the Liquidating Trust;

(b)    liquidate and administer assets of the Liquidating Trust, including, but not limited to, enforcing Causes of Action of the Liquidating Trust and collecting amounts due with respect to such Causes of Action;

(c)    liquidate and administer claims against the Liquidating Trust;

(d)    calculate and implement distributions from the Liquidating Trust in accordance with the Plan and this Agreement;

(e)    maintain a list of holders of Allowed General Unsecured Claims;

(f)    report to the Beneficiaries of the Liquidating Trust; and

(g)    such other duties that are necessary to administer the Liquidating Trust as contemplated under the Plan and this Agreement.

**3.3    Powers**.  Subject to Section 3.4 of this Agreement, the Liquidating Trustee shall have the following powers, with respect to the Liquidating Trust, to:

(a)    open any accounts necessary to maintain and distribute funds in the Liquidating Trust;

(b)    invest and reinvest funds held in the Liquidating Trust as set forth in the Plan and this Agreement;

(c)    take any action on behalf of the Liquidating Trust necessary to administer the Liquidating Trust, including, but not limited to, taking such actions as appropriate (including the commencement of litigation with respect to such Causes of Action) to collect Claims of the Liquidating Trust;

(d)    compromise and settle any Causes of Action of the Liquidating Trust as authorized under the Plan and this Agreement;

(e)    employ professionals to assist in administration of the Liquidating Trust;

4

US.105729861.06

(f)      pay any fees, costs and expenses of administering the Liquidating Trust;

(g)      make distributions to the Beneficiaries of the Liquidating Trust in accordance with the Plan and this Agreement;

(h)      such actions that are necessary to dissolve the Liquidating Trust in accordance with Article XI of this Agreement;

(i)      to utilize Liquidating Trust Assets to pay premiums for any insurance policies that the Liquidating Trustee deems necessary, in its sole discretion, to insure the assets of the Liquidating Trust against loss and/or to insure the Liquidating Trustee and Advisory Committee against liability with respect to third persons; and

(j)      such other powers that are necessary and appropriate, in accordance and consistent with New York law, to fulfill its duties as set forth in the Plan and this Agreement.

**3.4**    **Consent of Advisory Committee**.  The Liquidating Trustee shall obtain the approval of the Advisory Committee before doing any of the following:

(a)      selling or liquidating non-Cash Liquidating Trust Assets for greater than [$_____];

(b)      settling, compromising, abandoning, or withdrawing any Cause of Action with face value greater than [$_____];

(c)      settling or compromising any Disputed Claims with face value greater than [$_____] for an Administrative Expense, or Priority Tax Claim or Priority Non-Tax Claim, or greater than [$_____] for a General Unsecured Claim;

(d)      retaining and employing professionals by the Liquidating Trust; and

**3.5**    **Compensation**.  The Liquidating Trustee shall be compensated at as set forth in the Liquidating Trustee's engagement letter, without further order of the Bankruptcy Court, for services rendered to or on behalf of the Liquidating Trust.  The Liquidating Trustee also shall be reimbursed, without further order of the Bankruptcy Court, for all reasonable out-of-pocket fees, costs and expenses in acting under the Plan and this Agreement, including, but not limited to, reimbursement of reasonable fees of attorneys and consultants retained by the Liquidating Trustee (the **"Professionals"**).

**3.6**    **Liquidating Trustee's Lien**. The Liquidating Trustee shall have a first priority lien on all assets of the Liquidating Trust to secure payment of its compensation and reimbursement of its fees, costs and expenses.  The lien also shall secure the indemnification obligation of the Liquidating Trust to the Liquidating Trustee as set forth in Section 4.3 of this Agreement.

**3.7**    **Co-Liquidating Trustees or Separate Liquidating Trustees**.  To meet any legal requirements of any jurisdiction in which any of the Liquidating Trust Assets may from time to time be located, and if the Liquidating Trustee obtains the consent of the Advisory Committee,

5

the Liquidating Trustee shall have the power to appoint one or more Persons either to act as co-trustee(s) jointly with the Liquidating Trustee of all or any part of the Liquidating Trust Assets or to act as separate trustee(s) of all or any part of the Liquidating Trust Assets and to vest in such Person or Persons, in such capacity, such title to the Liquidating Trust Assets or any part thereof, and such rights, powers, duties, trusts or obligations as the Liquidating Trustee determines may be necessary for the Liquidating Trustee to perform his duties under this Agreement.

## ARTICLE IV
## CONDUCT OF THE LIQUIDATING TRUSTEE AND ADVISORY COMMITTEE

**4.1    Exercise of Duties and Responsibilities**.    The Liquidating Trustee and the Advisory Committee shall exercise the rights and powers vested in them under the Plan and this Agreement, and use the same degree of care and skill in their exercise of such rights and powers as a prudent person would exercise or use under such circumstances in the administration of such person's own affairs.    No provision of the Plan or this Agreement shall be construed to relieve the Liquidating Trustee or the Advisory Committee from liability for their own gross negligence in acting or failing to act, or their own willful misconduct, except that:

(a)      the duties and obligations of the Liquidating Trustee and the Advisory Committee shall be determined solely by the express provisions of the Plan and this Agreement, and they shall not be liable except for the performance of such duties and obligations as are specifically set forth in the Plan and this Agreement, and no implied covenants or obligations shall be read into the Plan or this Agreement against the Liquidating Trustee or the Advisory Committee;

(b)      the Liquidating Trustee and the Advisory Committee shall not be liable for any error of judgment made in good faith by them or any of their officers or employees, unless the Liquidating Trustee or the Advisory Committee is grossly negligent in ascertaining the pertinent facts;

(c)      the Liquidating Trustee shall not be liable for any right, duty or conduct of the Advisory Committee; and

(d)      the Advisory Committee shall not be liable for any right, duty or conduct of the Liquidating Trustee.

The provisions of this Section shall apply to any right, conduct, power, duty or responsibility of the Liquidating Trustee or the Advisory Committee, as the case may be, under the Plan or this Agreement.    None of the provisions in the Plan or this Agreement shall be construed to require the Liquidating Trustee or any member of the Advisory Committee to expend or risk their own funds or otherwise incur personal financial liability in the performance of their duties or in the exercise of their rights and powers, if there is reasonable ground for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured.

**4.2    Reliance on Documents, Statements, etc**.    Except as provided in Section 4.1 of this Agreement, the Liquidating Trustee and the Advisory Committee:

6

US.105729861.06

(a)      may rely upon and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other document believed by them to be genuine and to have been signed or presented by the proper party or parties; and

(b)      may consult with their legal counsel, and any written advice or opinion of their legal counsel shall be full and complete authorization and protection in respect of any action taken or not taken by them in good faith and in accordance with such advice or opinion of counsel; and

(c)      shall not be liable for any action taken or not taken if in good faith and believed by them to be authorized or within their discretion or rights or powers under the Plan and this Agreement; and

(d)      may exercise any of the rights and powers, or perform any of the duties under the Plan and this Agreement either directly or through agents or attorneys, and they shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care.

**4.3      Indemnification of the Liquidating Trustee and the Advisory Committee**. Subject to Section 4.1, the Liquidating Trustee and the Advisory Committee (the **"Indemnified Parties"**) shall not be personally liable to the Liquidating Trust, to any Beneficiary or any other Person (or any predecessor or successor thereto) for any reason whatsoever, except for such of their own acts as shall constitute willful misconduct, or gross negligence.  Except as aforesaid, the Indemnified Parties shall be defended, held harmless and indemnified from time to time, but solely from the Liquidating Trust Assets, against any and all losses, claims, costs, expenses and liabilities to which the Indemnified Parties may be subject by reason of the Indemnified Parties' execution in good faith of the Indemnified Parties' duties under this Agreement. The Indemnified Parties' officers, employees, agents, if any (including, without limitation, the Indemnified Parties' professionals) and any co-trustee(s) appointed pursuant to Section 3.7 of this Agreement, shall be likewise defended, and held harmless and indemnified. Without limiting the generality of the foregoing, the Liquidating Trustee shall have no liability to any Beneficiary on account of the Liquidating Trustee's investment or non-investment of any Liquidating Trust Assets or any losses with respect to any such investments of Liquidating Trust Assets, provided that such investments are made, or the Liquidating Trustee's decision not to invest any Liquidating Trust Assets in any case is made, in accordance with the terms of this Agreement.  The Indemnified Parties shall not be obligated to give any bond or surety or other security for the performance of any of their duties, unless otherwise ordered by the Bankruptcy Court and, if so ordered, all costs and expenses of procuring any such bond shall be deemed Liquidating Trust Expenses.

**ARTICLE V**
**NON-TRANSFERABILITY OF BENEFICIAL INTERESTS; INTERESTS BENEFICIAL ONLY; NO VOTING RIGHTS; SUCCESSORS**

All interests of the Beneficiaries of this Liquidating Trust shall be uncertificated and non-transferable, except by will, intestate succession or operation of law.  The rights to a beneficial interest hereunder shall not entitle any Beneficiary to (a) any title in or to the Liquidating Trust Assets as such (which title is vested in the Liquidating Trustee) or to any right

7

US.105729861.06

to call for a partition or division of Liquidating Trust Assets or to require an accounting, other than as set forth in Section 6.7 of this Agreement, or (b) any voting rights with respect to the administration of the Liquidating Trust and the actions of the Liquidating Trustee in connection therewith. This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and permitted assigns hereunder.

## ARTICLE VI
## ADMINISTRATION OF THE LIQUIDATING TRUST

**6.1    Right to Bring Causes of Action**. The Liquidating Trustee shall be deemed a party in interest for all purposes under the Plan and Bankruptcy Code, including, but not limited to, filing objections to Claims. The Liquidating Trustee shall have the right to bring or assert any Cause of Action of the Liquidating Trust. The Liquidating Trustee also shall have the right to continue to defend or prosecute or commence any case commenced or that could have been commenced prior to the Effective Date. In any Cause of Action brought by the Liquidating Trustee, the Liquidating Trustee shall be deemed to represent all of the Beneficiaries of the Liquidating Trust, and it shall not be necessary to make any Beneficiary a party to such action.

Except as expressly provided in the Plan, no Beneficiary shall have any right to take any action, in law or equity, on account of the property of the Liquidating Trust distributed to the Liquidating Trust.

**6.2    Settlement of Causes of Action and Disputed Claims**. Confirmation of the Plan shall constitute authority for the Liquidating Trustee, without further action or order of the Bankruptcy Court, to settle, compromise or dismiss any Cause of Action or Disputed Claim; provided, however, that the Liquidating Trustee shall first obtain approval of the Advisory Committee if such approval is required under Section 3.4 of this Agreement. Nothing in the Plan or this Agreement shall prohibit the Liquidating Trustee from: (a) seeking an order of the Bankruptcy Court regarding the compromise, settlement, abandonment, or dismissal of any Cause of Action or Disputed Claim, or (b) dismissing any Cause of Action that the Liquidating Trustee, in its sole and absolute discretion, determines may result in personal liability for the Liquidating Trustee.

In considering whether to compromise, dismiss or settle a Cause of Action or Disputed Claim, the Liquidating Trustee or the Advisory Committee, as the case may be, shall consider the following factors:

(a)    the probability of success in the litigation;

(b)    the complexity of litigation;

(c)    the expense, inconvenience and delay necessarily attending the litigation;

(d)    the time value of money; and

(e)    the difficulties, if any, to be encountered in collecting any judgment.

8

US.105729861.06

**6.3**     **Right to File Claims**.  The Liquidating Trustee may file such proofs of claim and other papers as may be necessary or appropriate to have the Causes of Action of the Liquidating Trustee or the Beneficiaries allowed in any judicial proceeding.  Nothing contained in this Section shall be deemed to authorize the Liquidating Trustee to consent to or accept, on behalf of the Beneficiaries, any plan of reorganization, arrangement or adjustment affecting the rights of the Beneficiaries, or to authorize the Liquidating Trustee to vote in respect of the claims or interests of any Beneficiaries in any such proceeding, except as provided in this Agreement.

**6.4**     **Investment of Moneys**.  Except as otherwise provided in this Agreement, the Liquidating Trustee shall hold all moneys of the Liquidating Trust in segregated accounts established on the books of the Liquidating Trustee (the **"Trust Accounts"**), and shall invest moneys in the Trust Accounts in:   (a) demand and time deposits (such as certificates of deposit), (b) other temporary liquid investments (such as U.S. treasury bills), and (c) shares of any investment company registered under the Federal Investment Company Act of 1940 whose shares are registered under the Securities Act of 1933 and whose only investments comprise: (i) obligations issued or guaranteed as to principal and interest by the U.S. government, and thus constitute direct obligations of the U.S. government, or (ii) obligations issued by state or municipal governmental bodies, the interest of which is exempt from federal income taxation and which are rated in the two highest rating categories published by Standard & Poor's Corporation.

**6.5**     **Fees and Expenses**.  Subject to the priority of payment established under Section 8.3 of this Agreement and [_____] of the Plan, the Liquidating Trustee shall pay all fees, costs and expenses of administering the Liquidating Trust (including, without limitation, fees and expenses reimbursed to members of the Advisory Committee, statutory fees, and fees of Professionals) from available moneys of the Liquidating Trust, as and when such fees, costs and expenses become due and owing.

**6.6**     **Reports to Beneficiaries**.  In consideration for the compensation paid to the Liquidating Trustee under Section 3.5 of this Agreement, as soon as practicable after [_____ __, 2016], and every June 30 and every December 31 thereafter, the Liquidating Trustee shall prepare and make available to the Beneficiaries of the Liquidating Trust a report describing in reasonable detail: (a) receipts and disbursements from the Liquidating Trust, (b) unaudited financial statements of the Liquidating Trust, and (c) the status of administering assets distributed to the Liquidating Trust.

**6.7**     **Books and Records**.  The Liquidating Trustee shall maintain complete and accurate records concerning all receipts and distributions to and from the Liquidating Trust, including, but not limited to, the date and amount of each distribution to the Beneficiaries.  The Beneficiaries, shall upon reasonable notice to the Liquidating Trustee, have the right to an accounting of the books, records and accounts relating to the Liquidating Trust within one (1) year following the end of each calendar year.  Any such audit will be completed within twelve (12) months after its commencement.

**6.8**     **Compliance with Securities Laws**.  Under Bankruptcy Code section 1145, the issuance of interests in a liquidating trust pursuant to a chapter 11 plan is exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration or qualification of securities.  If the Liquidating Trustee determines, with

9

the advice of counsel, that the Liquidating Trust is required to comply with the reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file periodic, current and other reports in compliance therewith with the Securities and Exchange Commission.

## ARTICLE VII
## TAX MATTERS

**7.1     Purpose and Intent of Liquidating Trust**.    The primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets in an expeditious and commercially prudent manner, and all activities of the Liquidating Trustee will be limited to those activities reasonably necessary to, and consistent with, the accomplishment of that purpose.    The Liquidating Trustee shall make continuing efforts to dispose of the GMI USA Management Liquidating Estates and shall value the GMI USA Management Liquidating Estates using consistent standards.    There is no intention on the part of any party in interest to carry on a profit-making business or to unreasonably prolong the liquidation process.

**7.2     Tax Characterization**.    The Liquidating Trustee shall take or cause to be taken all reasonable and necessary actions, including without limitation, timely preparation and filing of required Tax Returns, to carry into effect the intent that the Liquidating Trust created by the Plan and this Agreement qualify as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations and to treat the Beneficiaries of the Liquidating Trust as the grantor-owners of the Liquidating Trust within the meaning of sections 671 through 678 of the Internal Revenue Code.    In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to this Agreement intend that the Liquidating Trustee take such action as he shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Internal Revenue Code Section 7704), including, if necessary, creating or converting it into a [Delaware] limited liability partnership or limited liability company.    All of the Liquidating Trust's income is intended to be subject to taxation on a current basis.

For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (a) a deemed transfer by each Debtor of the Liquidating Trust Assets directly to the Beneficiaries in full satisfaction of the Beneficiaries' claims against and interests in the Debtors and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Disputed Claim Reserve, followed by (b) the deemed transfer by such Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed Claim Reserve) in exchange for interests in the Liquidating Trust.    Accordingly, the Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets (other than Liquidating Trust Assets allocable to the Disputed Claim Reserve).    The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes.

10

US.105729861.06

**7.3    Tax Reporting**.  The Liquidating Trustee shall prepare and provide to, or file with, the appropriate taxing authorities and other parties such notices, tax returns and other filings, including all federal, state and local tax returns for the Liquidating Trust, as may be required under the Internal Revenue Code, the Plan or as may be required by applicable law of other jurisdictions including, if required under applicable law, notices required to report interest or dividend income (the **"Tax Reports"**).  The Liquidating Trustee shall treat the Liquidating Trust as a grantor trust for U.S. federal income tax purposes pursuant to Treasury Regulation section 1.671-4(a) and in accordance with the Plan.  The Liquidating Trustee also will annually send to each Beneficiary a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for all U.S. federal income tax purposes and will instruct all such Beneficiaries to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such Beneficiary's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.  If additional tax information is provided at the specific request of a Beneficiary (and not as required by applicable law), then such Beneficiary shall pay a reasonable fee to the Liquidating Trustee, in an amount to be then determined by the Liquidating Trustee, together with all costs and expenses incurred by the Liquidating Trustee in providing such tax information to such Beneficiary.  The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental units in the U.S. and elsewhere.

In connection with the Liquidating Trustee's performance of his duties pursuant to this Section, the Liquidating Trustee may require any Beneficiary to furnish to the Liquidating Trustee its employer or taxpayer identification number as assigned by the Internal Revenue Service, together with such other information, returns or forms as the Liquidating Trustee may determine are required, and the Liquidating Trustee may condition any distribution of Liquidating Trust Assets to any Beneficiary upon such receipt of such identification number, any other information and returns and forms as are required for the Liquidating Trustee to comply with Internal Revenue Service requirements.

The Liquidating Trustee will in good faith value all Liquidating Trust Assets, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee and the Beneficiaries) for all U.S. federal income tax purposes.

Allocations of Liquidating Trust taxable income among the Beneficiaries (other than taxable income allocable to the Disputed Claim Reserve) shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of the Liquidating Trust Assets (valued at their tax book value, and other than assets allocable to the Disputed Claim Reserve) to the holders of the interests in the Liquidating Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in

11

US.105729861.06

accordance with tax accounting principles prescribed by the Internal Revenue Code, the applicable Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (a) timely elect to treat any Disputed Claim Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtors and the Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any U.S., local or foreign taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Disputed Claim Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claim Reserve is insufficient to pay the portion of any such U.S., local or foreign taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such U.S., local or foreign taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Disputed Claim Reserve, or the Debtors under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Liquidating Trust or the Debtors for all taxable periods through the dissolution of the Liquidating Trust.

**7.4     Compliance with Tax Withholding Requirements**. In connection with making distributions under the Plan and this Agreement, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on him by any governmental unit, and all distributions pursuant to the Plan and this Agreement shall be subject to such withholding and reporting requirements. Any property so withheld will then be paid by the Liquidating Trust to the appropriate authority. The Liquidating Trustee shall withhold the entire distribution due any Beneficiary until such time as such Beneficiary provides the necessary information to comply with any withholding requirements of any governmental unit, including an IRS Form W-9 containing its, his or her employer or taxpayer identification number as assigned by the Internal Revenue Service, or (ii) in the case of Beneficiaries that are not U.S. persons for federal income tax purposes, certification of foreign status on IRS Form W-8BEN, W-81MY or W-8ECI. If the Liquidating Trustee requests information necessary to comply with any tax withholding or reporting requirements of any governmental unit of any Beneficiary by certified mail and (i) does not receive a response to such request within forty-five (45) days, sends a second request by certified mail and again receives no response within forty-five (45) days, or (ii) the request is returned to the Liquidating Trustee as undeliverable and the Liquidating Trustee is unable to determine a correct address after reasonable efforts, then no further distributions shall be made to

12

such Beneficiary unless the Liquidating Trustee is notified in writing within six (6) months after the date that the initial request was sent of such Beneficiary's necessary information (subject to the Liquidating Trustee's right to require supporting documents evidencing that the necessary information is that of the rightful Beneficiary), in which case all currently due missed distributions shall be made to such Beneficiary on the next periodic Distribution Date subject to such withholding and reporting requirements, and shall not be supplemented with any interest, dividends or other accruals of any kind.  If the Liquidating Trustee does not receive notice of a Beneficiary's necessary tax information within six (6) months after the date of the initial request, then all distributions to such Beneficiary may be treated as an unclaimed distribution in accordance with Section 8.8 below.

## ARTICLE VIII
## APPLICATION AND PRIORITY OF DISTRIBUTION OF LIQUIDATING TRUST FUNDS

**8.1     Money Held in Trust**.  All moneys and other assets that the Liquidating Trustee receives under this Agreement, until used or applied as provided in this Agreement, shall be held in trust for the purposes for which they were received.  The Liquidating Trustee shall not be obligated to pay interest on any moneys that it receives under this Agreement.  However, except as otherwise provided in this Agreement, the Liquidating Trustee shall promptly invest moneys of the Liquidating Trust as provided in Section 6.4 of this Agreement.

**8.2     Right to Receive Distributions from the Liquidating Trust**.  The amount of each Beneficiary's Allowed Claim shall represent such person's right to receive distributions from the Liquidating Trust in accordance with the priorities set forth in the Plan and this Agreement.

Prior to distribution of any portion of the Liquidating Trust Assets to any Beneficiary, the Liquidating Trustee shall first

(a)     pay to any taxing authorities, as necessary, any taxes of the Liquidating Trust;

(b)     pay to the Office of the U.S. Trustee the statutory fees incurred for the Debtors' Estates after the Effective Date, as may be required;

(c)     pay to the Liquidating Trustee's Professionals, in accordance with Sections 3.5 and 6.5 of this Agreement, for services rendered and expenses incurred;

(d)     pay to the Liquidating Trustee, in accordance with Section 3.5 of this Agreement, the Liquidating Trustee's compensation and reasonable and necessary expenses incurred in fulfilling the Liquidating Trustee's obligations set forth in the Plan and in this Agreement; and

(e)     pay any additional expenses incurred in fulfilling the obligations of the Liquidating Trustee set forth in the Plan and in this Agreement and not specifically identified in this Section 8.2.

13

US.105729861.06

**8.3     Priority of Payment from the Liquidating Trust**.  All proceeds from assets of the Liquidating Trust, and except as otherwise allocated under the Plan or this Agreement, shall be distributed according to the following priorities:

(a)     first, in payment of the amounts listed in Section 8.2 of this Agreement;

(b)     second, to holders of Allowed Administrative Expenses, Allowed Priority Tax Claims or Allowed Priority Non-Tax Claims, and Allowed Professional Fee Claims, to the extent that such Claims have not been previously paid; and finally,

(c)     third, to holders of Allowed General Unsecured Claims as set forth in the Plan, which implements, among other things, the terms of the Settlement Order, based on the value of their Allowed Claims.

**8.4     Distribution Dates**.  Subject to the limitations and restrictions set forth in the Plan, on or as soon as reasonably practicable after the Effective Date, but in no event later than [_____ __, ____] (such date, the **"Initial Distribution Date"**), the Liquidating Trustee shall make initial distributions in accordance with the Plan and Section 8.5 of this Agreement.  After the Initial Distribution Date, a Distribution Date must occur at least once every **[twelve months]** unless otherwise ordered by the Bankruptcy Court.

**8.5     Interim Distributions**.  On each applicable Distribution Date, the Liquidating Trustee will distribute Cash in accordance with the Plan and this Agreement.

**8.6     Final Distribution**.  Upon liquidating the Liquidating Trust, and after payment of all fees, costs and expenses of administration of the Liquidating Trust, the Liquidating Trustee shall make a final distribution of funds to the Beneficiaries (the **"Final Distribution"**) in accordance with the Plan and this Agreement.  The Liquidating Trustee shall have no obligation to invest funds of the Liquidating Trust after the date of Final Distribution.

**8.7     Disputed Claims**.  Prior to making any distributions under the Plan, the Liquidating Trustee shall establish a reserve for the benefit of holders of Disputed Claims (the **"Disputed Claims Reserve"**).  The Liquidating Trustee shall distribute to and maintain in the Disputed Claims Reserve cash that would otherwise be distributable to holders of Disputed Claims, assuming such Disputed Claims would be Allowed in the Face Amount of such Claims.  Disputed Claims rendered duplicative as a result of the consolidation of the Debtors pursuant to Article IV of the Plan shall only be counted once for purposes of establishing the Disputed Claims Reserve.  In determining the Face Amount of Disputed Claims in accordance with the Plan, the Liquidating Trustee may rely on the Debtors' estimates as to Disputed Claims and will have no liability therefore in the absence of bad faith or gross negligence.  As Disputed Claims are resolved, the Liquidating Trustee shall make adjustments to the Disputed Claims Reserve.  Any Cash investment yield in the Disputed Claims Reserve shall be allocated to the account of the holder of Disputed Claims for which the Cash is held, and distributed to such holders based on the amount of their respective Allowed Claims.  Except as otherwise agreed by the relevant parties, the Liquidating Trustee shall not be required to (a) make any partial payments or partial distributions on account of a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order or (b) make any distributions on

14

account of an Allowed Claim of any Beneficiary that holds both an Allowed Claim and a Disputed Claim, unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order.

The distributions held or received by the Liquidating Trustee on account of the Disputed Claims Reserve, along with any Cash investment yield held in the Disputed Claims Reserve, shall (a) be deposited in a segregated bank account in the name of the Liquidating Trustee for the benefit of holders of Allowed Claims and Disputed Claims that become Allowed Claims, (b) be accounted for separately and (c) not constitute property of the Debtors. The Liquidating Trustee shall invest Cash held in the Disputed Claims Reserve in a manner consistent with this Agreement.

On the first Distribution Date that is at least 30 days after a Disputed Claim becomes an Allowed Claim, and subject to the requirements of Section 7.4 of this Agreement, the Liquidating Trustee shall (a) distribute to the holder of such Allowed Claim any property in the Disputed Claims Reserve that would have been distributed to such holder on the Distribution Dates on which distributions previously were made to holders if the Allowed Claim in issue had been an Allowed Claim on such earlier Distribution Dates; and (b) distribute any remaining property held in the Disputed Claim Reserve on account of any resolved Disputed Claim in accordance with the Plan and this Agreement.

After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims, any remaining property held in the Disputed Claims Reserve will return to the Liquidating Trust and be distributed in accordance with the Plan and this Agreement.

**8.8    Unclaimed Distributions**.  If any check paid on account of a distribution from the Liquidating Trust shall not be presented for payment within ninety (90) days of the date it is mailed to the Beneficiary, and the check has not been returned to the Liquidating Trustee by the U.S. Postal Service, the check shall be voided.  In such an event, the distribution at issue will be deemed to be waived or abandoned by the Beneficiary, and the funds payable to such Beneficiary will be available for a subsequent distribution to other Beneficiaries.

In the event that a check is returned by the U.S. Postal Service on account of an incorrect or insufficient address, the Liquidating Trustee or its representative will use reasonable means, in view of the amount of the distribution, to determine the correct address and re-mail the check.  If the correct address cannot be determined or if the second mailing of a check is returned or not presented for payment within ninety (90) days of the date it is re-mailed to the Beneficiary, then the distribution will be deemed to be waived or abandoned and the funds payable to such Beneficiary will be available for a subsequent distribution to other Beneficiaries.

**8.9    Delivery of Distributions**:

**(a)    Distribution Record Date.**  As of the close of business on the date of entry of the Confirmation Order (the **"Distribution Record Date"**), the Claims register shall be closed, and there shall be no further changes as to the record holder of any General Unsecured Claim. The Liquidating Trustee shall not have any obligation to recognize any transfer of any General

15

Unsecured Claim occurring after the Distribution Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan and this Agreement with only those record holders stated on the Claims register as of the close of business on the Distribution Record Date.

**(b)      De Minimis Distributions**.  The Liquidating Trustee shall not be required to make any interim distributions in an amount less than $100.00 provided that any such payments shall be withheld until the Final Distribution.  Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be required to make any final distributions in an amount less than $25.00.

**(c)      Provision of Tax Identification Number**.  If the Liquidating Trustee requests a tax identification number of any Beneficiary by certified mail and (i) does not receive a response to such request within sixty (60) days, sends a second request by certified mail and again receives no response within sixty (60) days or (ii) the request is returned to the Liquidating Trustee as undeliverable and the Liquidating Trustee is unable to determine a correct address after reasonable efforts, then no further distributions shall be made to such Beneficiary unless the Liquidating Trustee is notified in writing within six months after the date that the initial request was sent of such Beneficiary's tax identification number (subject to the Liquidating Trustee's right to require supporting documents evidencing that the tax identification number is that of the rightful Beneficiary), in which case all currently due missed distributions shall be made to such Beneficiary on the next periodic Distribution Date, and shall not be supplemented with any interest, dividends or other accruals of any kind.  If the Liquidating Trustee does not receive notice of a Beneficiary's tax identification number within six months after the date of the initial request for a tax identification number, then all distributions to the Beneficiary that has not provided a tax identification number shall be treated as unclaimed property in accordance with Section 8.8.

**8.10    Third Party Disbursing Agent**.  The Liquidating Trustee may employ, in his/her sole discretion, a third party disbursing agent to make all distributions, and to otherwise perform all necessary action related to such distributions, required under the Plan and this Agreement.

**ARTICLE IX**
**RESIGNATION AND REMOVAL OF THE LIQUIDATING TRUSTEE**

**9.1      Resignation**.  At any time upon sixty (60) days' prior written notice to all Beneficiaries, the Liquidating Trustee may petition the Bankruptcy Court or other court of competent jurisdiction for an order authorizing its resignation.  The petition shall identify a proposed successor liquidating trustee, and generally describe the qualifications of the person to act as Liquidating Trustee under this Agreement.  If the resignation is due to the death or incapacity of the Liquidating Trustee, counsel for the Liquidating Trustee, a member of the Advisory Committee or any party in interest may petition the Bankruptcy Court or other court of competent jurisdiction for the appointment of a successor Liquidating Trustee.  In either case, the resignation shall be effective upon the successor Liquidating Trustee accepting its appointment as Liquidating Trustee under this Agreement.

16

**9.2    Removal**.    At any time upon thirty (30) days' prior written notice to all Beneficiaries of the Liquidating Trust and the Liquidating Trustee, Beneficiaries holding an amount of interest in the Liquidating Trust of at least two-thirds in amount and more than one-half in number may petition the Bankruptcy Court for an order removing the Liquidating Trustee and appointing a successor liquidating trustee.  The petition shall identify a proposed successor liquidating trustee, and generally describe the qualifications of the person to act as Liquidating Trustee.  The removal of the Liquidating Trustee shall not be effective unless and until a successor liquidating trustee is appointed and authorized to act as the Liquidating Trustee under the Plan and this Agreement.

**9.3    Successor Liquidating Trustee**.    Any successor Liquidating Trustee, however appointed, shall execute and deliver to the resigning liquidating trustee a written instrument accepting such appointment, and thereafter, such successor Liquidating Trustee, without further act, shall become vested with all the estates, properties, rights, powers and duties of the resigning or removed Liquidating Trustee.

## ARTICLE X
## TERMINATION AND DISCHARGE

**10.1    Termination**.    The Liquidating Trust shall terminate on the earliest of the following dates:

(a)    the date that all of the Liquidating Trust Assets have been liquidated and the proceeds distributed to the Beneficiaries as provided in the Plan and this Agreement;

(b)    the date that the Bankruptcy Court or another court of competent jurisdiction enters a Final Order authorizing the termination of such Liquidating Trust; and

(c)    three (3) years after the Effective Date.  Notwithstanding the foregoing, in the event the Liquidating Trustee shall have been unable, after reasonable efforts, to liquidate or otherwise dispose of the assets of the Liquidating Trust within the initial three (3) year term of this Agreement, then the Liquidating Trustee shall have the right to extend the term of such Liquidating Trust, subject to the Bankruptcy Court entering an order approving such extension no later than six (6) months from the beginning of each such extended term, for successive three-year renewal terms until the assets of such Liquidating Trust have been sold or otherwise disposed of in fulfillment of the purpose of such Liquidating Trust.  The term of the Liquidating Trust shall in no event exceed fifteen (15) years after the Effective Date.

**10.2    Discharge**.  The Liquidating Trustee shall be discharged of its duties under this Agreement on the earlier of:  (a) the date of termination as provided in Section 10.1, or (b) the date that a successor liquidating trustee accepts its appointment.

**10.3    De Minimus Balances Upon Trust Dissolution**.  If, immediately prior to the dissolution of the Trust, there remains an undistributable balance, such remaining funds shall be donated to The Mission to Seafarers, NYC Bankruptcy Assistance Project, or the Anne Moore Foundation.

17

US.105729861.06

## ARTICLE XI
## MISCELLANEOUS

**11.1    No Third-Party Beneficiaries**.  Notwithstanding anything to the contrary in the Plan or this Agreement, neither the Liquidating Trustee nor any member of the Advisory Committee, their officers, directors, employees, members, agents, counsel or affiliates shall have any duties or responsibilities to, or fiduciary or third-party relationships with, any other person or entity, except as expressly provided in this Agreement or the Plan.  Without limiting the generality of the foregoing, the Liquidating Trustee and the Advisory Committee shall have no obligation to:

(a)    provide information to any person, except as provided in this Agreement or the Plan;

(b)    preserve any right or interest of any other person; or

(c)    collect or realize upon any asset or property distributed under the Plan on account of any claim.  The Liquidating Trustee shall attempt to collect or realize upon such assets in any manner that the Liquidating Trustee and the Advisory Committee, in their sole and absolute discretion, shall deem appropriate, and shall not incur any liability to the Debtors or any claimant of the Debtors in so doing.

**11.2    Notices**.  All communications and notices provided under this Agreement shall be in writing and addressed to (i) the Beneficiaries at their registered addresses, as amended in writing from time to time and (ii) counsel for the Advisory Committee, if any such counsel is then retained.  Any notice, if properly addressed, shall be deemed given upon the first business day after placement in the U.S. mail, first class postage prepaid.

**11.3    Execution of Documents**.  The Liquidating Trustee may execute any and all documents necessary and appropriate to effectuate the purpose of this Agreement.

**11.4    Modification**.  This Agreement shall not be modified without further order of the Bankruptcy Court after notice to the Beneficiaries and a hearing.  Upon a motion of the Liquidating Trustee, the Bankruptcy Court or other court of competent jurisdiction may approve, without notice to the Beneficiaries, technical modifications to this Agreement which do not adversely affect the rights or interests of the Beneficiaries or which conform the terms of this Agreement to the terms of the Plan.

**11.5    Severability**.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent such provision is unenforceable without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

**11.6    Headings**.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.

**11.7    Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

18

**11.8** **Conflict with the Plan**.  In the event that there is any conflict between the terms of this Agreement and the Plan, the terms of the Plan shall govern.

**11.9** **Enforcement and Administration**.  The Bankruptcy Court shall retain jurisdiction to enforce and administer the provisions of this Agreement, as set forth in the Plan and herein.

**11.10** **Counterparts**.  This Agreement may be executed in counterparts, including facsimile or scanned electronic documents, each of which is considered an original.

[Signature Page Follows]

US.105729861.06

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first written above.

**[_____, as Liquidating Trustee]**

_____

**THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS**

By:_____

Printed:_____

Its:_____

**GMI USA MANAGEMENT, INC., on behalf of itself and each of its affiliated Debtors**

By:_____

Printed:_____

Its:_____